# COMPOSITE EXHIBIT "A"

**ORIGINAL**

# CO-OP FIXED RATE NOTE

| March 11, 2003 | Uniondale , | New York |
|---|---|---|
| [Date] | [City] | [State] |

5700 Arlington Ave, Apt 19A, Bronx, NY 10471-1521
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 95,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is CitiMortgage, Inc. 12855 N. Outer 40 Drive, Saint Louis, MO 63141 .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on May 1 , 2003 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on April 01 , 2033 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 15851 Clayton Road, Ballwin, MO 63011 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ 600.46

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURITY FOR THIS NOTE

In addition to the protections given to the Note Holder under this Note, a Security Agreement dated the same day as this Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. The Security Agreement gives the Note Holder a security interest in the shares of stock and proprietary lease or other ownership documents described in said agreement. The Security Agreement describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. If I fail to make full payment, the Note Holder may sell the shares of stock and assign the proprietary lease or otherwise sell my membership or ownership interest and right to occupy the Apartment, and may apply the proceeds in payment of what I owe. Some of the conditions under which I may be required to make immediate payment in full are described as follows:

**No Sale of the Security.** If I sell, transfer, modify or surrender the Security or sublet the Apartment without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of the entire amount due under the Note or this Agreement. However this option shall not be exercised by the Note Holder if exercise is prohibited by federal law as of the date of this Security Agreement.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Pay to the order of

without recourse on us CitiMortgage, Inc.

Janet L. Sims, Vice President
CitiMortgage, Inc.

_Valerie Greig_                                              (Seal)
Valerie Greig                                               -Borrower

_Richard Sabo_                                              (Seal)
Richard Sabo                                               -Borrower

Security Agreement - Co-op

When Recorded Return to:
CitiMortgage, Inc.
P. O. Box 9206
MS 81026
Farmington Hills, MI 48333-9206

ORIGINAL

## SECURITY AGREEMENT CO-OP

Loan No.: [REDACTED]
Apartment No.: Apt 19A
Street Address:  5700 Arlington Ave, Apt 19A, Bronx, NY  10471-1521

This is a Security Agreement (the "Agreement") dated the _____ Eleventh day of March, 2003
between     Valerie Greig and  Richard Sabo
_____ residing at   5700 ARLINGTON AVE, Bronx, NY  10471
(collectively, the "Borrower") and _____ CitiMortgage, Inc.
(the "Lender"), organized and existing under the laws of _____ Delaware _____ having an office at
12855 N. Outer 40 Drive, Saint Louis, MO  63141 _____.

| 1. | Definitions | **I, MINE, ME, MY, MYSELF -** refer to the Borrower.<br>**NOTE -** refers to the instrument which the Borrower signed this day and which evidences the loan (the "Loan") in the amount of up to $  95,000.00 _____ made this day to the Borrower by the Lender. |
|---|---|---|
| 2. | Loan | I agree to repay the loan as required by the terms of the Note. |
| 3. | Ownership | I own   348 _____ shares (the "Shares") of capital stock of _____ Skyview Owners Corp. _____ (the "Corporation") and am the tenant under a proprietary lease (the "Lease") for Apartment _____ Apt 19A _____ (the "Apartment") in the building located at _____ 5700 Arlington Ave, Apt 19A, Bronx, NY , State of ____ New York _____. I represent to the Lender that the shares are all the cooperative shares allocated to the Apartment. |
| 4. | Security | To secure my repayment to the Lender of the loan, I pledge to the Lender all of my right, title and interest in the Shares and assign to the Lender all of my right, title and interest in the Lease and in the proceeds of any sale of the Shares, transfer of the Apartment or subsequent assignment of the Lease. The Shares, Lease, sale proceeds, any replacement and additional Shares and any amendments to and extensions or replacements of the Lease, are referred to as the "Security"; the interest of the Lender in the Security is referred to as the "Security Interest." |
| 5. | Delivery Of Shares And The Lease | I have delivered to the Lender the certificate for the Shares and the duplicate original Lease. I shall immediately deliver to the Lender any and all replacement and/or additional Shares that may be allocated to the Apartment, any new and/or replacement Lease and any amendments or extensions to the Lease, without waiting for Lender to request the delivery of the foregoing items. |
| 6. | End Of Security Interest | The Security Interest shall end and the Lender shall return the Shares and the Lease to me when I have repaid the Loan in full and have made all other payments required under the Note and this Agreement. |
| 7. | Additional Security | I also agree that you have all rights provided under applicable law in certain deposit accounts, pledged or assigned securities in your possession (with the exception of margin stock) and collateral securing your other loans to me. If I am in default under the Note or this Agreement, you can apply any of this collateral to what I owe you. |
| 8. | Additional Documents; Power Of Attorney | Upon the Lender's request, I agree to sign any financing statements and renewals in addition to any other documents that the Lender may require to establish and/or protect its rights in the Security. I also authorize the Lender to sign these documents in my name as my attorney-in-fact and then file and/or record them as is appropriate. This power of attorney is coupled with an interest and shall not lapse due to my incompetency or disability. |
| 9. | Written Statement Of Amount Due | If the Lender requests, in writing, a confirmation of the amount owed by me under the Note and this Agreement, within eight (8) days after such request I will give the Lender a signed statement confirming the amount owed. |
| 10. | Rights In The Security | No one other than the Corporation, myself and, by virtue of this Agreement, the Lender has any interest in or claim against the Security. I agree to defend my ownership of, and the Lender's rights to, the Security as specified in this Agreement against any and all other claims, and I shall keep the Security free of any other liens not expressly approved by the Lender. |

| 11. | Reimbursement | If the Lender has to defend its rights under the Note or this Agreement, then any money which the Lender has to pay (including reasonable attorney's fees) shall be added to the amount I owe the Lender and paid by me promptly at the Lender's request with interest at the then applicable rate provided in the Note. |
|---|---|---|
| 12. | Default | The happening of any of the following events means that I will be in default. The Lender will then have the right to require that all amounts that I owe to the Lender under the Note and this Agreement be paid in full to the Lender with interest at the then applicable rate provided in the Note up to the day the Lender receives payment. I will be in default: |

(A) If any payment required by the Note is not made within fifteen (15) days after it is due or if any terms, conditions or provisions of the Note have been violated; or

(B) If any payment required by the Lease is not made on time or if any terms, conditions or provisions of the Lease have been violated; or

(C) If either I or the Corporation cancel the Lease; or

(D) If I fail to pay or bond any judgement and/or any tax deficiency; or

(E) If I sublet the Apartment or assign the Security without first paying all amounts that I owe under the Note and this Agreement or receiving the Lender's written consent; or

(F) If I do not comply with any term, condition or provision of this Agreement; or

(G) If any statement or representation made by me under this Agreement is not true or correct.

However, the Lender will not exercise its option to require immediate payment in full under (E) if exercise is prohibited by federal law as of the date of this Agreement.

| 13. | The Lender's Rights If I Am In Default | (A) In the event that I am in default and the Lender elects to demand payment of the entire amount I owe under the Note and this Agreement, the Lender will so notify me. If I fail to pay what I owe within fifteen (15) days of notification, the Lender may, in addition to all of its other legal rights, sell the Security at public or private sale, with or without advertisement of the time, place or terms of sale, except that if it is a private sale, it shall occur no less than five (5) days after written notice to me. In the event of any such sale, the Lender may deduct from the proceeds of the sale all expenses of collection, sale and delivery of the Security, and any other expenses including, but not limited to, reasonable attorney's fees and disbursements, costs, broker's commissions, transfer fees and taxes. The Lender may then apply the balance of the sales proceeds to any liability of mine under the Note or this Agreement, and the Lender shall return any surplus to me. The Lender shall determine the terms of any such sale in its sole discretion. A sale conducted according to the usual practice of banks selling similar security will be considered reasonably conducted. The Lender may sell the Security for immediate cash payment or on credit. If the sale is on credit, the Lender shall retain the Security until the sale price is paid in full. The Lender will not be liable if the buyer fails to pay and the Lender may then resell the Security. |
|---|---|---|

(B) The Lender may elect to continue to hold the Shares and the Lease if it determines that a better price can be obtained at a later date and, absent gross negligence, the Lender will not be liable to me for any loss in value in the Security. If the Lender has the right to sell the Security and has not begun to do so within ninety (90) days, I may demand that the Lender proceed to sell the Security or I may make the sale myself, at my own expense. However, the Lender will not be required to sell the Security if the net proceeds would not be enough to repay in full my debt under the Note and this Agreement. Similarly, the Lender may not prevent me from making the sale if the net proceeds would be enough to repay my debt in full.

(C) If the Lender elects to retain the Security, it shall give me notice of its election. If I object to its election within thirty (30) days after its notice, the Lender shall offer the Security for sale and must sell if the net proceeds would be large enough to pay all that I owe the Lender under the Note and this Agreement.

(D) The Lender shall have the right, in connection with a sale, to complete a stock power and assignment of lease in order to transfer the Shares and the Lease. I hereby give the Lender the right, in connection with such sale, to request that the Corporation terminate the Lease and take all lawful steps necessary to obtain possession of the Apartment for and on behalf of the Lender. I will promptly vacate my Apartment upon the sale of the Security. The Lender may start legal proceedings to get possession of the Apartment if I refuse to so vacate.

(E) The Lender or anyone designated by the Lender may purchase the Security as stated above; free of my right to redeem the Security, which right of redemption I now waive.

(F) The Lender may seek the appointment of a receiver, without notice to me and without regard to the adequacy of the Security to the extent permissible by law.

14. **Disposition Of Sale Proceeds**

If the Lender sells the Security, the proceeds shall be applied as follows:

(A) first, to the expenses of collection, selling and delivering the Security, including (but not limited to) attorney's fees, brokerage commissions, transfer fees and taxes;

(B) second, to the payment of any charges due under the Lease;

(C) third, to the payment of my debt in full; and

(D) finally, the surplus, if any, to me unless there are other valid claims to the surplus.

15. **Non-Liability Of Corporation**

The Corporation will not be liable to me if it transfers my Shares and Lease as required by this Agreement or if it refuses to transfer my Shares and Lease to another person without the Lender's consent.

16. **The Lender's Payments On My Behalf**

In the event that the Lender makes any of the payments or performs any acts required under the Lease on my behalf, I agree to promptly repay the Lender for such payments and for the cost of such acts including but not limited to, reasonable attorney's fees, with interest at the then applicable rate provided in the Note. I further agree that any such sums shall be added to the amount owed to the Lender and secured by the Security. I agree that the Lender shall have no obligation to make any payments or perform any acts required under the Lease on my behalf.

17. **No Sale Of The Security**

If I sell, transfer, modify, or surrender the Security or sublet the Apartment without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full the entire amount due under the Note or this Agreement. However this option shall not be exercised by the Lender if exercise is prohibited by federal law as of the date of this Security Agreement.

18. **Usury**

No matter what else is set forth in the Agreement, the Note or any other instrument executed by me in connection with the Loan, if any payment by me or act by me would result in the payment of interest in excess of the maximum rate of interest legally permissible, then my obligation to make such payment or do such an act shall be deemed automatically reduced to such maximum rate, so that in no event will I be obligated to make any payment, perform any act or promise to do (or not to do) any act which would result in the payment of interest in excess of such maximum rate. Any such excess payments shall be applied as partial prepayments of my debt.

19. **Use Of Premises**

At Lender's option, all sums due under this Agreement and the Note will become immediately due and payable if:

(A) If I fail to reside in the Apartment for at least six months of every year; or

(B) the Apartment is used for any purposes that increase the risk of fire or other hazard; or

(C) the Apartment is used for any unlawful purpose.

I will maintain the Apartment in a good state of repair, free from waste, and I will promptly obey all federal, state and municipal requirements affecting the Apartment.

20. **Successors And Assigns**

All of my rights and obligations under this Agreement, and all of the Lender's rights and obligations under this Agreement, shall bind and benefit our respective distributees, legal representatives, successors, heirs and assigns. The Lender retains any rights it may otherwise have that are not set forth in this Agreement. This Paragraph shall not be read to give me the right to sublet the Apartment, assign the Lease or transfer the Shares. However, the Lender may assign this Agreement and its rights to the Security without my consent.

21. **Legal Expenses**

If any legal proceeding is commenced in which the Lender is made a party which relates to this Agreement or the Note, or if any attorney, on the Lender's behalf, seeks to assert or defend the Lender's rights under this Loan or the lien created by this Loan, I will repay on the Lender's demand all of its legal fees, costs, expenses, disbursements and allowances, to the extent applicable law permits. Any amounts payable to the Lender under this Paragraph shall be payable with interest from the date the Lender requires payment at the then applicable rate provided in the Note.

22. **Use Of Captions**

Captions are used in this Agreement only as a matter of convenience and do not define or describe the intent of any provision.

23. **Governing Law**

This Agreement shall be governed by the laws of the State of _____New York_____ and any applicable federal law. In the event of a conflict between any provision of this Agreement and any federal or _____New York_____ State statute, law or regulation in effect as of the date of this Agreement, the statute, law or regulation shall control to the extent of such conflict and the provision contained in this Agreement shall be without effect. All other provisions of this Agreement will remain fully effective and enforceable.

24. **Modification Of Agreement**

This Agreement may not be modified without the mutual agreement in writing of the Lender and myself.

| | | |
|---|---|---|
| 25. | **Notice** | All written notices and demands are to be given to me by personal delivery or by first class mail to the address of the Apartment or at a different address if I give the Lender a notice of my different address. All written notices to the Lender regarding this Agreement must be given by first class mail to _____ CitiMortgage, Inc. _____ care of Citibank, Inc., M/S #305, P.O. Box 790005, St. Louis, MO 63179-0005 or at a different address if I am given a notice of that different address. |
| 26. | **My Rights Before Default** | Until there is a default under this Agreement and the Lender has demanded payment in full, I will have all rights, responsibilities and privileges of a shareholder and lessee not otherwise affected by this Agreement. I have the sole responsibility for making all payments required by the Lease and for complying with all the terms and conditions of the Lease. Except as otherwise set forth in this Agreement, my responsibilities under the Lease shall continue after any default by me under the Note or this Agreement. |
| 27. | **Distribution Of Capital** | The Lender will have the right to receive any distributions of capital from the Corporation and shall apply any such distributions to reduce the amount that I owe to the Lender. |
| 28. | **Responsible Parties** | If more than one person signs this Agreement, each will be fully responsible for complying with its terms. |
| 29. | **Private Mortgage Insurance** | If the Loan is insured by private mortgage insurance, a Private Mortgage Insurance Rider is attached to and made a part of this Security Agreement. |
| 30. | **Delivery Of Security** | If I sell the Apartment before the Loan is paid in full, I may ask the Lender to deliver the Security to me at the closing of the sale. At my request, the Lender may, but will not be required to, arrange for one of its closing attorneys to deliver the Security and collect for the Lender the amount which is necessary to pay off the Loan. The Lender's closing attorney may charge me a reasonable fee for this service. |

I have signed this Agreement on the date set down at the beginning of this document.

_Valerie Greig_ (signature) _____ (Seal)
Valerie Greig                                        -Borrower

_____ (Seal)
                                                    -Borrower

_Richard Sabo_ (signature) _____ (Seal)
Richard Sabo                                        -Borrower

---

**UNIFORM ACKNOWLEDGEMENT**
**(For Use on Documents Being Acknowledged Inside of New York State)**

State of New York
County of ____ NASSAU _____ ) SS:

On the _11_ day of ____ MARCH ____, in the year _2003_ before me, the undersigned, a Notary Public in and for said State personally appeared ____ VALERIE CREIG ____ RICHARD SABO ____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he(she)(they) executed the same in his(her)(their) capacity(ies), and that by his(her)(their) signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed this instrument.

_____ (signature)
Notary Public                    _____
                                 Notary Public

**MICHAEL JAMES MOBERG**
Notary Public, State of New York
No. 02MO6032237
Qualified in Nassau County
Commission Expires October 25, 2004

## UNIFORM ACKNOWLEDGEMENT
### (For Use on Documents Being Acknowledged Outside of New York State)

State, District of Columbia, Territory, Possession or Foreign Country)

_____ ) SS:
_____ )

On the _____ day of _____, in the year _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he(she)(they) executed the same in his(her)(their) capacity(ies), and that by his(her)(their) signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed this instrument, and that such individual made such appearance before the undersigned in the _____. (Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
Signature and office of individual taking acknowledgment

Return Recorded Document to:
CitiMortgage, Inc.
PO Box 9206
MS 81026
Farmington Hills, MI 48333-9206

Reserve Space below for use of Recording Office:

―――――――――――― New Jersey Acknowledgment ――――――――――――

State of New Jersey                    )
                                       ) ss.:
County of  _____   )

BE IT REMEMBERED, that on this _____ day of _____, in the year _____, in the County and State aforesaid, before me, the subscriber, a Notary Public authorized to take acknowledgments and proofs in said County and State (an Attorney at Law of New Jersey authorized to take acknowledgments and proofs in the State of New Jersey), personally appeared

_____, who, I am satisfied, is (are) the person(s) named in and who executed the foregoing instrument and he (she) (they) did acknowledge that he (she) (they) signed, sealed and delivered the same as his (her) (their) act and deed for the uses and purposes therein expressed.

_____
Notary Public



BUILDING **5700**

APARTMENT **19A**

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

# SKYVIEW OWNERS CORPORATION

THE CORPORATION IS AUTHORIZED TO ISSUE 600,000 COMMON SHARES OF THE PAR VALUE OF $1.00 EACH, OF ONE CLASS.

Notice is hereby given pursuant to Sections 616 and 709 of the Business Corporation Law that the Certificate of Incorporation contains provisions authorized by section 616 and 709 of said Law prescribing special provisions for quorum, vote or consent of shareholders and directors and the holder of this certificate is charged with knowledge thereof and holds the same subject to said provisions.

This Certifies that *Valerie Greig + Richard Sabo*

is the owner of *Three Hundred Forty Eight — 348 —* Common Shares of SKYVIEW OWNERS CORPORATION, fully paid and non-assessable, transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

The rights of any holder hereof are subject to the provisions of the Certificate of Incorporation (which contains supermajority shareholder and Board of Director voting requirements in respect of certain actions of the Corporation, and certain provisions restricting the Board of Directors, in its management of the business of the Corporation) and the by-laws of Skyview Owners Corporation, and to all the terms, covenants, conditions, and provisions of a certain proprietary lease made between the person in whose name this certificate is issued, as Lessee, and Skyview Owners Corporation, as Lessor, for an apartment in the premisis known as Skyview-on-the-Hudson, 5700, 5800 and 5900 Arlington Avenue, Riverdale, New York, which lease limits and restricts the title and rights of any transferee hereof. The shares represented by this certificate are transferable only as an entirety and only to an approved assignee of such proprietary lease. Copies of the the proprietary lease, Certificate of Incorporation and The By-Laws are on file and available for inspection at the office of the managing agent.

The Directors of the Corporation may refuse to consent to the transfer of the shares represented by this certificate until any indebtedness of the shareholder to the corporation is paid. The Corporation, by the terms of the By-Laws and proprietary lease, has a lien on the shares represented by this certificate for all sums due or to become due under said proprietary lease.

IN WITNESS WHEREOF, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate seal to be hereunto affixed this _18ᵗʰ_ day of _March_ 20_03_

_Ken Martin_
Secretary-Treasurer

_President_

The following abbreviations, when used in the inscription on the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations.

| TEN COM | — as tenants in common | UNIF GIFT MIN ACT—............Custodian............ |
| TEN ENT | — as tenants by the entireties | (Cust)                    (Minor) |
| JT TEN | — as joint tenants with right of survivorship and not as tenants in common | under Uniform Gifts to Minors Act.............................. (State) |

Additional abbreviations may also be used though not in the above list.

*For value received,_____hereby sell, assign and transfer unto*

**PLEASE INSERT SOCIAL SECURITY OR OTHER IDENTIFYING NUMBER OF ASSIGNEE**

PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS OF ASSIGNEE

_____*Shares*

*represented by the within Certificate, and do hereby irrevocably constitute*

*and appoint._____*

*Attorney to transfer the said shares on the books of the within-named Corporation with full power of substitution in the premises.*

*Dated,_____*

*In presence of*

_____

NOTICE: THE SIGNATURE TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT, OR ANY CHANGE WHATEVER.

Stock Power - Co-op

## STOCK POWER - CO-OP

For Value Received, the undersigned does (do) hereby sell, assign and transfer to _____

_____ ( ___348___ ) Shares of the Capital Stock of
Skyview Owners Corp.
_____ (the "Corporation") standing in the name of
the undersigned on the books of said Corporation represented by Certificate No. ___4916___ and
does (do) hereby irrevocably constitute and appoint _____ its
attorney-in-fact to transfer the said stock on the books of said Corporation, with full power of substitution. This
Power of Attorney shall not be affected by the subsequent disability or incompetence of the principal.

Dated:

_Valerie Greig_
Valerie Greig

_Richard Sabo_
Richard Sabo

**Please note:**

1. The signature(s) must correspond to the name(s) of the stockholder(s) as registered on the books of the corporation without alteration, enlargement or any change whatsoever;

2. If signed in a representative capacity, please indicate the title of the party executing this Stock Power (e.g., executor, administrator, guardian, conservator).

――――――――――――――― **UNIFORM ACKNOWLEDGEMENT** ―――――――――――――――
(For Use on Documents Being Acknowledged Inside of New York State)

State of New York
County of _____NASSAU_____ ) SS:

On the __11__ day of _____MARCH_____, in the year __2003__ before me, the undersigned, a Notary Public in and for
said State personally appeared _____VALERIE GREIG_____  _____RICHARD SABO_____,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are)
subscribed to the within instrument and acknowledged to me that he(she)(they) executed the same in his(her)(their) capacity(ies),
and that by his(her)(their) signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s)
acted, executed this instrument.

_Notary Public_
Notary Public

MICHAEL JAMES MOBERG
Notary Public, State of New York
No. 02MO6032237
Qualified in Nassau County
Commission Expires October 25, 2004

Loa

---

### ——————————UNIFORM ACKNOWLEDGEMENT——————————
#### (For Use on Documents Being Acknowledged Outside of New York State)

State, District of Columbia, Territory, Possession or Foreign Country ⎫
                                                                                              ⎬ SS:
_____ ⎭

On the _____ day of _____, in the year _____ before me, the undersigned,
personally appeared _____,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are)
subscribed to the within instrument and acknowledged to me that he(she)(they) executed the same in his(her)(their) capacity(ies),
and that by his(her)(their) signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s)
acted, executed this instrument, and that such individual made such appearance before the undersigned in the _____
_____. (Insert the city or other political subdivision and the state or
country or other place the acknowledgment was taken).

_____
Signature and office of Individual taking acknowledgment

Return Recorded Document to:
CitiMortgage, Inc.
Mail Station 81026
PO Box 9206
Farmington Hills, MI  48333-9206

Reserve Space below for use of Recording Office:

---

———————————— New Jersey Acknowledgment ————————————

State of New Jersey        ⎫
                                      ⎬ ss.:
County of_____ ⎭

BE IT REMEMBERED, that on this _____ day of _____, in the year _____, in the County and State
aforesaid, before me, the subscriber, a Notary Public authorized to take acknowledgments and proofs in said County and State (an
Attorney at Law of New Jersey authorized to take acknowledgments and proofs in the State of New Jersey), personally appeared

_____, who, I am
satisfied, is (are) the person(s) named in and who executed the foregoing instrument and he (she) (they) did acknowledge that he
(she) (they) signed, sealed and delivered the same as his (her) (their) act and deed for the uses and purposes therein expressed.

_____
Notary Public

## ASSIGNMENT OF PROPRIETARY LEASE

**1. Description
of Lease**

For Value Received, the person(s) signing below (separately and together called the "Assignor")
assigns to _____

_____ (called the "Assignee") the following proprietary lease:

Lease made by   Skyview Owners Corp.

to 5700 5800-5900 AALINGTON   dated 2/15/89   , (the
AVENUE ASSOCIATES
"Lease"), covering Apartment No. Apt 19A   in the Building known as 5700 Arlington

Ave, Apt 19A, Bronx, NY 10471-1521   in the County of   Bronx

and State of   New York   .

**2. Warranty**

The Assignor guarantees to the Assignee that the Assignor is now the tenant under the Lease.

**3. Transfer
Of Rights**

This Assignment transfers to the Assignee and its successors and assigns, all the Assignor's rights,
title and interest in and to the Lease for all the rest of the term of the Lease, subject to the
agreement, conditions and limitations contained in the Lease.

The Assignor has signed this Assignment on   March 11, 2003

Valerie Greig
_____
Valerie Greig

Richard Sabo
_____
Richard Sabo

_____

_____

_____

_____

—————————————— UNIFORM ACKNOWLEDGEMENT ——————————————
(For Use on Documents Being Acknowledged Inside of New York State)
State of New York
County of   NASSAU   ) SS:

On the  11  day of   MARCH   , in the year  2003  before me, the undersigned, a Notary Public in
and for said State personally appeared   VALERIE GREIG , RICHARD SABO
_____, personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he(she)(they) executed
the same in his(her)(their) capacity(ies), and that by his(her)(their) signature(s) on the instrument, the individual(s) or the
person upon behalf of which the individual(s) acted, executed this instrument.

**MICHAEL JAMES MOBERG**
Notary Public, State of New York
No. 02MO6032237
Qualified in Nassau County
Commission Expires October 25, 2004

_____
Notary Public

**Assignment of Proprietary Lease**

────────────────── UNIFORM ACKNOWLEDGEMENT ──────────────────
(For Use on Documents Being Acknowledged Outside of New York State)

State, District of Columbia, Territory, Possession or Foreign Country    )
                                                                          ) SS:
──────────────────────────────────────────────────────────────           )

On the _____ day of _____, in the year _____ before me, the undersigned,
personally appeared _____
,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are)
subscribed to the within instrument and acknowledged to me that he(she)(they) executed the same in his(her)(their)
capacity(ies), and that by his(her)(their) signature(s) on the instrument, the individual(s) or the person upon behalf of which
the individual(s) acted, executed this instrument, and that such individual made such appearance before the undersigned in
the _____, (Insert the city or other political
subdivision and the state or country or other place the acknowledgment was taken).

─────────────────────────────────────────
Signature and office of individual taking acknowledgment

Return Recorded Document to:
CitiMortgage, Inc.
Mail Station 81026
PO Box 9206
Farmington Hills, MI 48333-9206

────────────────── New Jersey Acknowledgment ──────────────────

State of New Jersey                   )
                                      ) ss.:
County of _____             )

BE IT REMEMBERED, that on this _____ day of _____, in the year _____, in the County and
State aforesaid, before me, the subscriber, a Notary Public authorized to take acknowledgments and proofs in said County
and State (an Attorney at Law of New Jersey authorized to take acknowledgments and proofs in the State of New Jersey),
personally appeared _____

_____, who, I am satisfied, is (are) the person(s) named in and who executed the foregoing instrument and he (she)
(they) did acknowledge that he (she) (they) signed, sealed and delivered the same as his (her) (their) act and deed for the uses
and purposes therein expressed.

─────────────────────────────────────────
Notary Public

ORIGINAL

## ASSIGNMENT OF PROPRIETARY LEASE

Know That, 5700-5800-5900 Arlington Avenue Associates (the "Assignor"), in consideration of the sum of ONE ($1.00) DOLLAR paid by    Circle Skyview L.P. (collectively the "Assignee"), and for other good and valuable consideration, does hereby assign unto Assignee a certain lease (the "Lease") made by Skyview Owners Corporation ("Lessor Corporation") with Assignor, or his predecessor in interest, dated February 15, 1989, for Apartment 19A in Premises 5700 Arlington Avenue, Riverdale, New York.

TO HAVE AND TO HOLD the same unto Assignee, his personal representatives and assigns, from and after *Sept. 26* , 1990, for all the rest of the term of the Lease, or any renewals or extensions thereof, and subject to the covenants, conditions and limitations therein contained.

Subject to the trust fund provisions of Section Thirteen of the Lien Law.

Assignor represents to Assignee and to Lessor Corporation that (1) there are no claims, security interests or liens against the Lease or the shares to said Apartment, (2) Assignor has full right and authority to assign the Lease and shares, (3) there are no unsatisfied judgements, tax liens or undischarged bankruptcy proceedings either of record or outstanding against Assignor, and (4) there are no filed mechanic's liens for work performed within the Apartment or materials supplied on account of such work.

IN WITNESS WHEREOF, Assignor has executed this Assignment ~~on~~ *as of Sept. 26* , 1990.

                    5700-5800-5900 Arlington Avenue Associates
                    By   Coronet Realty Company, a General Partner
                    By   Tower Realty Associates, a General Partner
                    By   Tower Realty Corporation, a General Partner


                    By   _____
                         Mitchell H. Gordon, Vice President

STATE OF NEW YORK  )
                   )ss.:
COUNTY OF NEW YORK )


On the *24th* day of *September* , in the year 1990, before me personally came Mitchell H. Gordon, to me known to be the person who executed the foregoing instrument, and who being duly sworn by me, did depose and say that he is the Vice President of Tower Realty Corporation, the General Partner of Tower Realty Associates, the General Partner of Coronet Realty Company, a General Partner of 5700-5800-5900 Arlington Avenue Associates and that he executed the foregoing instrument in the name of the firm of 5700-5800-5900 Arlington Avenue Associates, and that he had authority to sign the same, and he acknowledged to me that he executed the same as the act and deed of 5700-5800-5900 Arlington Avenue Associates for the uses and purposes therein mentioned.

                    _____
                         Notary Public

                    DOLORES SICIGNANO
                    Notary Public, State of New York
                    No. 24-4907248
                    Qualified in Kings County
                    Commission Expires April 4, 1992

PG/MG
SPN/FORM

## Know That    CIRCLE SKYVIEW L.P.

Assignor,

in consideration of the sum of  Ten  ———————————————————————————————————————
——————————————————————————————————————————  ($10.00 —————— ) dollars,

paid by  Valerie Greig and Lynford Martin

Assignee,

and for other good and valuable consideration, does hereby assign unto the Assignee a certain proprietary lease dated
February 15   19 89   by and between SKYVIEW OWNERS CORPORATION
Lessor, and   CIRCLE SKYVIEW L.P. or its predecessor in interest

Lessee,

covering apartment   19 A    in the building known as   3700 Arlington Avenue, Riverdale, New York

## To Have and To Hold  the same unto the Assignee and Assignee's personal representatives and
assigns, on and after September 30,    19 99   the effective date, for the balance of the term of the proprietary
lease, and any renewals or extensions thereof, and subject to the covenants, conditions and limitations therein contained.

In order to induce the Lessor to consent to this assignment and Assignee to accept this assignment, the Assignor
represents to Lessor and Assignee that:

a) Assignor has full right, title and authority to assign the shares and the proprietary lease appurtenant thereto,

b) Assignor has fully performed all the terms, covenants and conditions of the proprietary lease on Assignor's
part to be performed to the effective date hereof,

c) Assignor has not done or suffered anything to be done which might impose any liability on the Lessor or
Assignee, and

d) There are no claims, security interests or liens against the proprietary lease, or the shares in the Lessor
corporation allocated to the apartment to which the proprietary lease is appurtenant, or to any fixtures and/or personal
property installed by Assignor in the apartment.

The covenants and representations herein shall survive the delivery hereof, but any action based thereon must be instituted within one year from the effective date of this assignment.

Whenever the text hereof requires, the singular number as used herein shall include the plural and all genders.

IN WITNESS WHEREOF, the Assignor has executed this assignment on September 30,       1991

CIRCLE SKYVIEW L.P.

By: CIRCLE RED CORP., Gen. Partner     L.S.

By: Phyllis Appel, VP     L.S.

State of  New York
County of  New York          } ss.:

On the 30th day of Sept      , 1991, before me personally came Phyllis Appel      , to me known, who, being by me duly sworn, did depose and say that he resides at 28 West 23rd Street, New York, New York; that she is the of Circle Red Corp., the corporation described in and which executed the foregoing instrument as the general partner of Circle Skyview L.P., a limited partnership, and that she signed her name thereto by order of the board of directors of said corporation.

ROBIN M. GRONSKY
NOTARY PUBLIC, STATE OF NEW YORK
NO. 31-4794009
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES SEPT. 30, 1993

Assignor

TO

Assignee

**ASSIGNMENT OF PROPRIETARY LEASE**

Apartment:
Address:

Lessor:

Address:

Date of Assignment:

# ASSIGNMENT, ACCEPTANCE AND
# ASSUMPTION OF PROPRIETARY LEASE

**KNOW THAT**   VALERIE GREIG & LYNFORD MARTIN, collectively as Assignor, in consideration of One ($1.00) Dollar and other good and valuable consideration paid by VALERIE GREIG & RICHARD SABO, collectively as Assignee, does hereby assign a certain Lease made by Skyview Owners Corporation, Lessor Corporation with Assignor or predecessor in interest, dated February 15, 1989, covering Apartment **19A** at premises **5700** Arlington Avenue, Riverdale, New York.

**TO HAVE AND TO HOLD** the same unto Assignee, their personal representative and assigns from and after the date hereof for the rest of the term of said Lease, or any renewals or extensions thereof and subject to the covenants, conditions and limitations therein contained.

Subject to the trust fund provisions of Section 13 of the Lien Law.

Assignor represents to Assignee and Lessor Corporation that (1) there are no claims, security interests or liens against the Lease or the shares allocated to said Apartment; (2) Assignor has full right and authority to assign the Lease and shares; (3) there are no unsatisfied judgments, tax liens or undischarged bankruptcy proceedings either of record or outstanding against the assignor; (4) there are no filed mechanic's liens for work performed within the Apartment or materials supplied on account of such work.

**AND** the Assignee hereby accepts the assignment of said Lease and agrees with Assignor and Lessor Corporation to pay all installments of rent and perform the covenants on the Lessee's part to be paid and performed under the Lease, from and after the date hereof, the effective date of the assignment.

**IN WITNESS WHEREOF,** Assignor and Assignee have executed this Assignment, Acceptance and Assumption on March 18, 2003.

**Assignor:**

**Assignee:**

_Valerie Greig_
VALERIE GREIG
_Lynford Martin by_
_Valerie Greig atty-in-fact_
LYNFORD MARTIN
By: Valerie Greig, as his attorney-in-fact by
  POA dated 12/12/2003

_Valerie Greig_
VALERIE GREIG

_Richard Sabo_
RICHARD SABO

STATE OF NEW YORK    )
                     )ss.:
COUNTY OF NEW YORK)


On the 18th day of March in the year 2003 before me, the undersigned a notary public in and for said state, personally appeared, VALERIE GREIG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacities and that by her signature on the instrument, the individual, or the person upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public

FRANCINE REFF
Notary Public, State Of New York
No. 01RE4863074
Qualified In Queens County
Commission Expires June 23, 2006


STATE OF NEW YORK    )
                     )ss.:
COUNTY OF NEW YORK)


On the 18th day of March in the year 2003 before me, the undersigned a notary public in and for said state, personally appeared RICHARD SABO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

FRANCINE REFF
Notary Public, State Of New York
No. 01RE4863074
Qualified In Queens County
Commission Expires June 23, 2006

1953 (Acceptance of assignment and assumption
of proprietary lease: Cooperative apartment.

JULIUS BLUMBERG, INC., LAW BLANK PUBLISHERS

**Know That** Valerie Greig and Lynford Martin

the undersigned, Assignee named in a certain instrument of assignment dated September 30, 19 91
executed by    CIRCLE SKYVIEW L.P.

Assignor therein,

in order to induce    SKYVIEW OWNERS CORPORATION    .    Lessor therein and owner of the

building at    570-0  Arlington Avenue, Riverdale, New York

to consent to the aforementioned assignment of a proprietary lease of apartment  19 A  in said building and the shares of
the Lessor to which said proprietary lease is appurtenant, and in consideration of such assignment and the consent of
the Lessor thereto, the undersigned HEREBY ASSUMES AND AGREES TO PERFORM AND COMPLY with all
the terms, covenants and conditions of the proprietary lease to be performed or complied with by Lessee on and after
September 30, 19 91   the effective date of the assignment, as if the undersigned had originally executed
the proprietary lease as Lessee, and further agrees that at the request of the Lessor, the undersigned will surrender the
assigned proprietary lease to the Lessor and enter into a new proprietary lease of said apartment for the remainder of
the term thereof, in the same form and on the same terms, covenants and conditions as the assigned proprietary lease.

Whenever the text hereof requires, the singular number as used herein shall include the plural and all genders.

**In Witness Whereof,** Assignee has duly executed this acceptance and assumption instrument
on September 30, 1991

_____ L. S.
Valerie Greig

_____ L. S.
Lynford Martin

State of New York
County of New York.          } ss.:

On this 30th    day of September    1991    before me

personally came Valerie Greig and Lynford Martin

to me known and known to me to be the individual(s) described in and who executed the foregoing instrument, and

duly acknowledged to me that they    executed the same.

ROBIN M. GRONSKY
NOTARY PUBLIC, STATE OF NEW YORK
NO. 31-4
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES SEPT. 30, 19 3

ACCEPTANCE and ASSUMPTION

OF

PROPRIETARY LEASE

Lessor:
Lessee:
Apartment:
Building:

## ACCEPTANCE OF ASSIGNMENT AND
## ASSUMPTION OF LEASE

ORIGINAL

Know  That ~~LF Arlington Associates~~ (the "Assignee") named in a certain instrument of assignment from 5700-5800-5900 Arlington Avenue Associates (the "Assignor"), hereby accepts the assignment of a certain lease (the "Lease") dated February 15, 1989, made by Skyview Owners Corporation ("Lessor Corporation") as lessor, and Assignor, or his predecessor in interest as lessee for Apartment 19A in Premises 5700 Arlington Avenue, Riverdale, New York, which assignment is effective as of September 26, 1990.

Assignee hereby agrees with Assignor and with Lessor Corporation to pay all the installments of rent and perform the covenants and conditions on the Lessee's part to be paid and performed under the Lease from and after the effective date of the assignment.

IN WITNESS WHEREOF, Assignee has executed this instrument ~~on~~ *as of* September 26, 1990.

~~LF Arlington Associates~~

By:_____

On this       day of          , 1990, before me personally came
            to me known, to be the person who executed the foregoing instrument, and who being duly sworn by me, did depose and say that (he) is a Partner of LF Arlington Associates and that he executed the foregoing instrument in the firm name of LF Arlington Associates and that (he) had the authority to sign the same, and he acknowledged to me that (he) executed the same as the act and deed of ~~LF Arlington Associates for the uses and purposes therein mentioned.~~

_____
Notary Public

PG/MG
AAA/57ARL
SPN/LST

Circle Skyview L.P.
By: Circle Red Corp.,
General Partner

By: _[signature]_

STATE OF NEW YORK        )
                        :       ss.:
COUNTY OF NEW YORK      )


            On the 25th day of September, 1990, before me
personally came Phyllis Appel to me known, who, being by me
duly sworn, did depose and say that she resides at 28 West
23rd Street, New York, New York; that she is the Vice
President of Circle Red Corp., the corporation described in
and which executed the foregoing instrument as the general
partner of Circle Skyview L.P., a limited partnership, and
that she signed her name thereto by order of the board of
directors of said corporation.


                                _____
                                    Notary Public


                            MICHAEL G ALPINE
                        Notary Public, State of New York
                            No. 52-4960207
                        Qualified in Suffolk County
                    Commission Expires Dec. 18, 1991


04650\14587.WP

VALERIE GREIG                          COP    CONF 30

[This form is not intended for use where
"financing provisions" which duplicate the substance of this agreement or are at
substantial variance with the provisions of this agreement.]

Premises:  **5700 ARLINGTON AVE., BRONX, NY 10471**

Apartment: **19A**

Gentlemen:

*$5,000.00* We have been asked by **VALERIE GREIG and RICHARD SABO** ("Lessee") for a loan of
$905,000.00 to be secured by a pledge, security interest, mortgage and/or assignment (hereinafter
sometimes collectively referred to as "the Security") of shares of your Corporation allocated to
the
above Apartment and of the Proprietary Lease (the "Lease") appurtenant thereto (the shares
and Lease collectively referred to as "the Apartment").

    1.(a) You are a New York corporation formed for the purpose of cooperative ownership and
(owner in fee)(ground tenant) of the above premises.

    (b) Your records show that the Lessee is the owner of the Apartment.

    (c) You have duly approved or consented to the creation by the Lessee of the Security,
if and to the extent such approval is required by the Lease.

    2.(a) You will not consent to any further encumbrances, subletting, termination,
cancellation, surrender or modification of the Apartment by the Lessee without our approval,
which we will not unreasonably withhold but this provision shall not apply to any modification
or termination which, by the terms of the Lease, may be effective against a Lessee when
approved by a fixed percentage of other holders of your shares, or which may be effective in
the event of condemnation or casualty.

    (b) The Lessee has agreed that, without our written approval, the Lessee will not
exercise any right that he may have under the lease to terminate the lease so long as the
loan is outstanding.  Accordingly you will not consider any attempt to do so effective.

    (c) You will notify us of any notice of intention to terminate the Lease, and

        (1)    If the Lessee's default can be cured by the payment of money, you will also
notify us promptly of any default involving an amount equal to or exceeding three months
maintenance payments and will take no action to terminate the Lease or cancel the shares if
the default be cured either by us for the account of the Lessee or by the Lessee within 15
days after such notice of default or intention to terminate; or

        (2)    If the default cannot be so cured, you will institute no action to terminate
the Lease or cancel the shares until we have had reasonable notice and opportunity, by action
or otherwise, to induce the Lessee to cure the default, such opportunity to be no less than
the time provided in the Lease for the Lessee to cure.

        (3) If you shall terminate the Lease and cancel the shares for a default not curable
by the payment of money, then, provided we pay you the amounts which are due to you under the
Lease (including its deficiency clause) when due, you shall not sell or sublet the apartment
without our approval, unless the net proceeds of such sale or subletting shall equal or exceed
the amount owing to us by the Lessee.

    (d) You will accept payment from us on behalf of Lessee of any sums due under the Lease
(including its deficiency clause), any payments made by us under the terms of this agreement
will be deemed so paid, and no Payments made in accordance herewith shall be deemed to limit
our rights against the Lessee pursuant to law.

Copyright 1973 by AZTECH DOCUMENT SYSTEMS, INC.
Approved by THE COOPERATIVE HOUSING LAWYERS GROUP

[This form is not intended for use where the Proprietary Lease already has "financing provisions" which duplicate the substance of this agreement or are at substantial variance with the provisions of this agreement.]

Premises:  **5700 ARLINGTON AVE., BRONX, NY 10471**

Apartment: **19A**

Gentlemen:

We have been asked by **VALERIE GREIG and RICHARD SABO** ("Lessee") for a loan of $90,000.00 to be secured by a pledge, security interest, mortgage and/or assignment (hereinafter sometimes collectively referred to as "the Security") of shares of your Corporation allocated to the above Apartment and of the Proprietary Lease (the "Lease") appurtenant thereto (the shares and Lease collectively referred to as "the Apartment").

1. (a) You are a New York corporation formed for the purpose of cooperative ownership and (owner in fee)(ground tenant) of the above premises.

(b) Your records show that the Lessee is the owner of the Apartment.

(c) You have duly approved or consented to the creation by the Lessee of the Security, if and to the extent such approval is required by the Lease.

2. (a) You will not consent to any further encumbrances, subletting, termination, cancellation, surrender or modification of the Apartment by the Lessee without our approval, which we will not unreasonably withhold but this provision shall not apply to any modification or termination which, by the terms of the Lease, may be effective against a Lessee when approved by a fixed percentage of other holders of your shares, or which may be effective in the event of condemnation or casualty.

(b) The Lessee has agreed that, without our written approval, the Lessee will not exercise any right that he may have under the lease to terminate the lease so long as the loan is outstanding. Accordingly you will not consider any attempt to do so effective.

(c) You will notify us of any notice of intention to terminate the Lease, and

(1) If the Lessee's default can be cured by the payment of money, you will also notify us promptly of any default involving an amount equal to or exceeding three months maintenance payments and will take no action to terminate the Lease or cancel the shares if the default be cured either by us for the account of the Lessee or by the Lessee within 15 days after such notice of default or intention to terminate; or

(2) If the default cannot be so cured, you will institute no action to terminate the Lease or cancel the shares until we have had reasonable notice and opportunity, by action or otherwise, to induce the Lessee to cure the default, such opportunity to be no less than the time provided in the Lease for the Lessee to cure.

(3) If you shall terminate the Lease and cancel the shares for a default not curable by the payment of money, then, provided we pay you the amounts which are due to you under the Lease (including its deficiency clause) when due, you shall not sell or sublet the apartment without our approval, unless the net proceeds of such sale or subletting shall equal or exceed the amount owing to us by the Lessee.

(d) You will accept payment from us on behalf of Lessee of any sums due under the Lease (including its deficiency clause), any payments made by us under the terms of this agreement will be deemed so paid, and no Payments made in accordance herewith shall be deemed to limit our rights against the Lessee pursuant to law.

Copyright 1973 by AZTECH DOCUMENT SYSTEMS, INC.
Approved by THE COOPERATIVE HOUSING LAWYERS GROUP

(e)    You shall recognize our right as lienor against the Apartment pursuant to the security, and, if the Lease be terminated and/or shares canceled, against the net proceeds of any sale or subletting of the Apartment, after reimbursement to you of all sums due you under the Lease.

3.    (a) Before delivery of this letter by you to us, we will have authority from the Lessee to give, and will, on request, give you a copy of the financial and credit information provided by him, but shall be under no duty to advise you of the results of any credit check we may make.

(b)    Notwithstanding any apparent authority granted to us under agreements with the Lessee, WE SHALL HAVE NO RIGHT OR POWER TO TRANSFER THE APARTMENT UPON FORECLOSURE OR OTHERWISE EITHER TO US OR ANYONE ELSE WITHOUT YOUR APPROVAL AS REQUIRED BY THE LEASE provided, however, that nothing contained herein shall limit any rights we may have to dispossess the Lessee pursuant to law or realize upon our security in accordance herewith.

(c)    If through oversight or negligence you or your agents or employees shall fail to notify us of Lessee's default prior to termination of the Lease, we will not seek to hold you or your agents or employees liable for breach of this agreement, provided that:

(1) you advise us promptly after discovering your failure, and

(2) if you have already sold or contracted to sell the Apartment, that you pay us the net proceeds of such sale (after reimbursing yourselves for all sums due you), or such lesser sum as shall equal the amount owing to us by the Lessee (the balance being payable to the Lessee), or

(3)    if you have not contracted to sell the Apartment, that the provisions of paragraphs "2.(c)(3)" and "2.(e)" hereof shall apply.

(d)    We will indemnify you and your agent against loss, liability or expense incurred in connection with any claim by the Lessee, his successors or assigns against either of you arising out of our representations pursuant hereto or your agreements herein (except as stated in paragraph "3.(a)" hereof), provided you give us prompt notice of any such claim.  We may contest such claim in your name and on your behalf, but at our sole cost and expense, and you will execute such documents and do such things as are reasonably necessary to assist us in such contest.

4.    While we have the right but no obligation to cure the Lessee's defaults under the Lease, if we do not do so within the time provided for herein, you shall have no obligation to us, except that in the event of sale or subletting the Apartment, you shall recognize our rights as lienor against the net proceeds of any sale or subletting (after reimbursement to you of all sums which are due to you under the Lease).

Any notice or approval provided for herein shall be deemed valid only if in writing and sent by registered or certified mail, as follows: to you, in care of your Managing Agent, with a copy by regular mail addressed to and to us at **13736 Riverport Drive, Suite 900, Maryland Heights, MO  63043**

Either of us may change the address to which notices or approval shall be mailed by notice given as herein provided.  This letter and the representations and agreements contained herein shall be deemed made as of the date of the making of the loan.
Agreed To:

CITIMORTGAGE INC., BANK

By: _____

Approved: _____

_____ LESSOR                    _____ LESSEE
SKYVIEW OWNERS CORPORATION                         VALERIE GREIG

By: _____                      _____ LESSEE
                                                   RICHARD SABO

Copyright 1973 by AZTECH DOCUMENT S
Approved by THE COOPERATIVE HOUSING

Blue Woods Management Group, Inc.
5701 Arlington Avenue
Riverdale, New York 10471



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

2015090200644003004E7663

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 14 |
|---|---|
| Document ID: 2015090200644003 | Document Date: 08-27-2015 | Preparation Date: 09-02-2015 |
| Document Type: INITIAL UCC1 | | FIXTURE FILING |
| Document Page Count: 11 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST AMERICAN TITLE INSURANCE CO., NCS<br>666 THIRD AVENUE, 5TH FLOOR<br>3020-732402/IS<br>NEW YORK, NY 10017<br>212-551-9424<br>ISAVUNDRANAYAGAM@FIRSTAM.COM | CARMEN I. PAGAN, ESQ.<br>BLANK ROME LLP<br>405 LEXINGTON AVENUE<br>NEW YORK, NY 10174 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 38 | Partial Lot | 5700 ARLINGTON AVENUE |

Property Type: APARTMENT BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 96 | Partial Lot | 5701 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

☒ Additional Properties on Continuation Page

### CROSS REFERENCE DATA

CRFN _____ or DocumentID _____ or _____ Year _____ Reel _____ Page _____ or File Number _____

### PARTIES

| DEBTOR: | SECURED PARTY: |
|---|---|
| SKYVIEW OWNERS CORPORATION<br>5700 ARLINGTON AVENUE<br>RIVERDALE, NY 10471 | FEDERAL HOME LOAN MORTGAGE CORPORATION<br>8200 JONES BRANCH DRIVE<br>MCLEAN, VA 22102 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| TASF: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| MTA: | $ | 0.00 | CITY OF NEW YORK | | |
| NYCTA: | $ | 0.00 | Recorded/Filed    09-10-2015 11:13 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | 2015000316673 | | |
| Recording Fee: | $ | 37.00 | | | |
| Affidavit Fee: | $ | 0.00 | Annette M Hill | | |
| | | | City Register Official Signature | | |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2015090200644003004C74E3

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 14 |
|---|---|

Document ID: 2015090200644003   Document Date: 08-27-2015   Preparation Date: 09-02-2015
Document Type: INITIAL UCC1

---

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 230 Partial Lot | | 5800 ARLINGTON AVENUE |

Property Type: APARTMENT BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 240 Partial Lot | | 5900 ARLINGTON AVENUE |

Property Type: APARTMENT BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 91 Partial Lot | | N/A ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 360 Partial Lot | | N/A ARLINGTON AVENUE |

Property Type: RESIDENTIAL VACANT LAND

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 330 Partial Lot | | N/A ARLINGTON AVENUE |

Property Type: OTHER

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 38 Partial Lot | | 5700 ARLINGTON AVENUE |

Property Type: APARTMENT BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 96 Partial Lot | | 5701 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 230 Partial Lot | | 5800 ARLINGTON AVENUE |

Property Type: APARTMENT BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 240 Partial Lot | | 5900 ARLINGTON AVENUE |

Property Type: APARTMENT BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 91 Partial Lot | | N/A ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 360 Partial Lot | | N/A ARLINGTON AVENUE |

Property Type: RESIDENTIAL VACANT LAND

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 330 Partial Lot | | N/A ARLINGTON AVENUE |

Property Type: OTHER

---

## PARTIES

**SECURED PARTY:**
CAPITAL ONE MULTIFAMILY FINANCE, LLC
7600 WISCONSIN AVENUE, SUITE 800
BETHESDA, MD 20814

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2015090200644003004C74E3

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 3 OF 14 |
|---|---|

Document ID: 2015090200644003       Document Date: 08-27-2015       Preparation Date: 09-02-2015
Document Type: INITIAL UCC1

**PARTIES**

**ASSIGNEE:**
FEDERAL HOME LOAN MORTGAGE CORPORATION
8200 JONES BRANCH DRIVE
MCLEAN, VA 22102

**First American Title
Insurance Company**
666 Third Avenue   5th fl
New York, N.Y. 10017
Phone: (212) 922-9700
Fax: (212) 922-0881

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Carmen I. Pagan, Esq. (CPagan@blankrome.com)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

BLANK ROME LLP
405 LEXINGTON AVENUE, 24TH FLOOR
NEW YORK, NEW YORK 10174

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | |
|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | |
| SKYVIEW OWNERS CORPORATION | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 5700 Arlington Avenue | Riverdale | NY / 10471 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | corporation | New York | ☑ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | |
|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | |
|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | |
| FEDERAL HOME LOAN MORTGAGE CORPORATION | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 8200 Jones Branch Drive | McLean | VA / 22102 | USA |

4. This FINANCING STATEMENT covers the following collateral:

*See Exhibit "B" annexed hereto and made a part hereof.*

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

**File with Office of the City Register, Bronx County, NY   Skyview on the Hudson/FHLMC# 708555276**

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR **SKYVIEW OWNERS CORPORATION**

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | | | ☐ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☒ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR **CAPITAL ONE MULTIFAMILY FINANCE, LLC**

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 7600 Wisconsin Avenue, Suite 800 | Bethesda | MD | 20814 | USA |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☒ fixture filing.

16. Additional collateral description:

14. Description of real estate:

*See Exhibit A annexed hereto and made a part hereof.*

Block 5953 Lot 38, 230, 240
Block 5952 Lots 96, 91, 360 & 330

County: Bronx

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

## FINANCING STATEMENT
## EXHIBIT B

### (Revised 7-17-2014)

All of Debtor's present and future right, title and interest in and to all of the following:

(1)    "**Fixtures**," which means all property owned by Debtor which is attached to the real property described in Exhibit A ("**Land**") and/or the improvements located on the Land ("**Improvements**") ("**Property**" means the Land and/or the Improvements.) so as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

(2)    "**Personalty**," which means all of the following:

    (i)    Accounts (including deposit accounts) of Debtor related to the Property.

    (ii)    Equipment and inventory owned by Debtor, which are used now or in the future in connection with the ownership, management or operation of the Property or are located on the Property, including furniture, furnishings, machinery, building materials, goods, supplies, tools, books, records (whether in written or electronic form) and computer equipment (hardware and software).

    (iii)    Other tangible personal property owned by Debtor which is used now or in the future in connection with the ownership, management or operation of the Property or is located on the Land or in the Improvements, including ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances (other than Fixtures).

    (iv)    Any operating agreements relating to the Land or the Improvements.

    (v)    Any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements.

(vi)    All other intangible property, general intangibles and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land and including subsidy or similar payments received from any sources, including a **"Governmental Authority"** (defined as any board, commission, department, agency or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Property, or the use, operation or improvement of the Property, or over Debtor).

(vii)   Any rights of Debtor in or under any letter of credit required under the terms of the Multifamily Loan and Security Agreement (**"Loan Agreement"**) evidencing and securing the loan secured by this financing statement (**"Loan"**).

(3)    All current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights of way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated.

(4)    All proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Property, whether or not Debtor obtained the insurance pursuant to Secured Party's requirement.

(5)    All awards, payments and other compensation made or to be made by any Governmental Authority with respect to the Land, or if Debtor's interest in the Land is pursuant to a ground lease, the ground lease and the leasehold estate created by such ground lease (**"Leasehold Estate"**), the Improvements, the Fixtures, the Personalty or any other part of the Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Property under the power of eminent domain or otherwise and including any conveyance in lieu of such a taking.

(6)    All contracts, options and other agreements for the sale of the Land, or the Leasehold Estate, as applicable, the Improvements, the Fixtures, the Personalty or any other part of the Property entered into by Debtor now or in the future, including cash or securities deposited to secure performance by parties of their obligations.

(7)    All "**Rents**," which means all rents (whether from residential or non-residential space), revenues and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Property, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Debtor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due or to become due.

(8)   All "Leases," which means all present and future leases, subleases, licenses, concessions or grants or other possessory interests in force now or after the date this financing statement is recorded or filed, whether oral or written, covering or affecting the Property, or any portion of the Property (including proprietary leases or occupancy agreements if Debtor is a cooperative housing corporation), and all modifications, extensions or renewals.

(9)   All earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Property, and all undisbursed proceeds of the Loan.

(10)  All "**Imposition Reserve Deposits**," which means all amounts deposited by the Debtor in connection with the Loan for (a) hazard insurance premiums or other insurance premiums required by Secured Party, (b) taxes or payments in lieu of taxes, (c) water and sewer charges that could become a lien on the Property, (d) ground rents, and (e) assessments or other charges that could become a lien on the Property.

(11)  All refunds or rebates of Imposition Reserve Deposits by any Governmental Authority or insurance company (other than refunds applicable to periods before the real property tax year in which this financing statement is recorded or filed).

(12)  All tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits.

(13)  All names under or by which the Property or any part of it may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Property (subject to the terms of the Loan Agreement).

(14)  All interest rate cap agreements, interest rate swap agreements and other interest rate hedging contracts and agreements, if any (collectively, "**Cap Agreements**"), obtained by Debtor (or obtained by Secured Party in the name of Debtor) pursuant to the Loan Documents (as defined in the Loan Agreement) or as a condition to Secured Party's making the loan that is the subject of such Loan Documents, together with all of the following:

    (i)   Any and all moneys (collectively, "**Cap Payments**") payable from time to time pursuant to any Cap Agreement by the interest rate cap provider or other counterparty to a Cap Agreement, or any guarantor of the obligations of any such cap provider or counterparty ("**Cap Provider**").

    (ii)  All rights of the Debtor under any Cap Agreement, and all rights of the Debtor to all Cap Payments, including contract rights and general intangibles, existing or arising after the date this financing statement is recorded or filed.

(iii)    All rights, liens and security interests or guarantees existing or following the date this financing statement is recorded, granted by a Cap Provider or any other person to secure or guaranty payment of any Cap Payment.

(iv)    All documents, writings, books, files, records and other documents arising from or relating to any of the items listed in items 14(i) through (iii), whether existing now or created after the date this financing statement is recorded or filed.

(v)    All cash and non-cash proceeds and products of any of the items listed in items 14(i) through (iv).

(15)    Reserved.

(16)    All other assets of Debtor, whether now owned or acquired after the date this financing statement is recorded or filed.

(17)    All proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds.

PARCEL A (FOR INFORMATION ONLY: BLOCK 5953 LOT 38)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND
BEING IN THE BOROUGH AND COUNTY OF THE BRONX, CITY AND STATE OF NEW
YORK BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT ON THE EASTERLY SIDE OF ARLINGTON AVENUE (60 FEET
WIDE) DISTANT 603.76 FEET NORTHERLY FROM THE CORNER FORMED FROM THE
INTERSECTION OF THE EASTERLY SIDE OF ARLINGTON AVENUE WITH THE
NORTHERLY SIDE OF WEST 256TH STREET (60 FEET WIDE);
RUNNING THENCE NORTH 75° 43' 53" EAST, A DISTANCE 282.79 FEET TO THE
WESTERLY SIDE OF NETHERLAND AVENUE (60 FEET WIDE);
THENCE NORTHERLY ALONG THE WESTERLY SIDE OF NETHERLAND AVENUE
ALONG A CURVE BEARING TO THE LEFT HAVING A RADIUS OF 422.70 FEET AND
AN ARC LENGTH OF 105.31 FEET TO A POINT OF TANGENCY;
THENCE CONTINUING ALONG THE WESTERLY SIDE OF NETHERLAND AVENUE
NORTH 10° 24' 30" WEST, A DISTANCE OF 347.95 FEET TO THE INTERSECTION OF
THE PROLONGATION WESTERLY OF THE NORTHERLY SIDE OF WEST 259TH
STREET (60 FEET WIDE) WITH NORTHWESTERLY SIDE OF NETHERLAND AVENUE;
THENCE SOUTH 72° 34' 30" WEST, ALONG THE PROLONGATION WESTERLY OF THE
NORTHERLY SIDE OF WEST 259TH STREET A DISTANCE OF 90.12 FEET TO A POINT;
THENCE NORTH 04° 15' 01" WEST FOR A DISTANCE OF 216.92 FEET TO A POINT;
THENCE NORTH 83° 48' 16" EAST, A DISTANCE OF 6.01 FEET TO A POINT;
THENCE NORTH 03° 30' 35" WEST, A DISTANCE OF 27.51 FEET TO A POINT;
THENCE SOUTH 86° 38' 21" WEST, A DISTANCE OF 5.11 FEET TO A POINT;
THENCE NORTH 27° 33' 00" WEST, A DISTANCE OF 47.59 FEET TO A POINT;
THENCE SOUTH 62° 31' 07" WEST, A DISTANCE OF 120.18 FEET TO A POINT;
THENCE SOUTH 05° 02' 16" EAST, A DISTANCE OF 119.67 FEET TO A POINT;
THENCE SOUTH 74° 57' 30" WEST, A DISTANCE OF 140.00 FEET TO A POINT;
THENCE SOUTH 15° 02' 30" EAST, A DISTANCE OF 35.00 FEET TO A POINT;
THENCE SOUTH 31° 15' 07" WEST, A DISTANCE OF 117.49 FEET TO A POINT;
THENCE SOUTH 78° 58' 00" WEST, A DISTANCE 16.00 FEET TO THE EASTERLY SIDE
OF ARLINGTON AVENUE;
THENCE, ALONG THE EASTERLY SIDE OF ARLINGTON AVENUE THE FOLLOWING 3
COURSES DISTANCES:
1. THENCE SOUTH 11° 02' 00" EAST, A DISTANCE OF 81.00 FEET TO A POINT OF
CURVATURE;
2. THENCE SOUTHEASTERLY ALONG A CURVE BEARING TO THE LEFT HAVING A
RADIUS OF 300.00 FEET AN ARC LENGTH OF 201.63 FEET TO A POINT OF REVERSE
CURVATURE;
3. THENCE SOUTHEASTERLY AND SOUTHERLY ALONG A CURVE BEARING TO THE
RIGHT HAVING A RADIUS OF 310.00 FEET AN ARC LENGTH OF 209.28 FEET TO THE
POINT OR PLACE OF BEGINNING

PARCEL B (FOR INFORMATION ONLY: BLOCK 5952 LOTS 91 AND 360)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND
BEING IN THE BOROUGH OF BRONX, CITY OF NEW YORK, COUNTY OF NEW YORK,
BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT IN THE CENTER LINE OF INDEPENDENCE AVENUE AS
SHOWN ON SECTION 26 OF FINAL MAPS AT A POINT WHERE THE NORTHERLY
LINE OF LANDS NOW OR FORMERLY OF THE MONASTERY OF THE VISITATION
INTERSECTS SAID CENTER LINE OF INDEPENDENCE AVENUE;
RUNNING THENCE ALONG THE CENTER LINE OF SAID INDEPENDENCE AVENUE
NORTH 14° 36' 40" WEST, 110 FEET;
THENCE NORTH 74° 22' 57" EAST, 306.41 FEET TO THE WESTERLY SIDE OF
ARLINGTON AVENUE;
THENCE IN A SOUTHERLY DIRECTION ALONG SAID WESTERLY SIDE OF
ARLINGTON AVENUE THE FOLLOWING THREE COURSES AND DISTANCES:
(1) ON A CURVE TO THE RIGHT HAVING A RADIUS OF 250 FEET A DISTANCE OF 120
FEET TO THE POINT OF TANGENCY;
(2) SOUTH 10° 02' 30" EAST 99.39 FEET TO A POINT OF TANGENCY; AND
(3) ON A CURVE TO THE LEFT HAVING A RADIUS OF 1060 FEET, 56.46 FEET TO THE
LANDS NOW OR FORMERLY OF MONASTERY OF THE VISITATION;
THENCE ALONG THE LANDS NOW OR FORMERLY OF THE MONASTERY, OF THE
VISITATION THE FOLLOWING TWO COURSES AND DISTANCES:
(1) NORTH 28° 37' 40" WEST, 160.52 FEET;
(2) SOUTH 75° 43' 53" WEST, 275.55 FEET (DEED) (275.54 ACTUAL) TO SAID CENTER
LINE OF INDEPENDENCE AVENUE, THE POINT OR PLACE OF BEGINNING.

PARCEL C (FOR INFORMATION ONLY: BLOCK 5953 LOT 230)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND
BEING IN THE BOROUGH AND COUNTY OF THE BRONX, CITY AND STATE OF NEW
YORK BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT ON THE EASTERLY SIDE OF ARLINGTON AVENUE (60 FEET
WIDE) DISTANT 304.05 FEET SOUTHEASTERLY FROM THE CORNER FORMED BY
THE INTERSECTION OF THE EASTERLY SIDE OF ARLINGTON AVENUE WITH THE
SOUTHEASTERLY SIDE OF INDEPENDENCE AVENUE (60 FEET WIDE) AS SAID
ARLINGTON AVENUE CURVES TO THE RIGHT HAVING A RADIUS OF 655.46 FEET;
RUNNING THENCE NORTH 57° 47' 53" EAST, A DISTANCE OF 66.00 FEET TO A POINT;
THENCE NORTH 08° 47' 12" EAST, A DISTANCE OF 109.72 FEET TO A POINT;
THENCE NORTH 49° 23' 35" EAST, A DISTANCE OF 54.27 FEET TO A POINT;
THENCE NORTH 62° 31' 07" EAST, A DISTANCE OF 253.91 FEET TO A POINT;
THENCE SOUTH 21° 23' 26" EAST, A DISTANCE OF 239.86 FEET TO A POINT;
THENCE SOUTH 06° 52' 56 " EAST, A DISTANCE OF 75.01 FEET TO A POINT;
THENCE SOUTH 62° 31' 07" WEST, A DISTANCE OF 144.06 FEET THE A POINT;
THENCE SOUTH 05° 02' 16" EAST, A DISTANCE OF 119.67 FEET TO A POINT;
THENCE SOUTH 74° 57' 30" WEST, A DISTANCE OF 140.00 FEET TO A POINT;
THENCE SOUTH 15° 02' 30" EAST, A DISTANCE OF 35.00 FEET TO A POINT;

THENCE SOUTH 31° 15' 07" WEST, A DISTANCE OF 117.49 FEET TO A POINT;
THENCE SOUTH 78° 58' 00" WEST, A DISTANCE OF 16.00 FEET TO THE EASTERLY
SIDE OF ARLINGTON AVENUE;
THENCE NORTH 11° 02' 00" WEST, ALONG THE EASTERLY SIDE OF ARLINGTON
AVENUE, A DISTANCE OF 139.77 FEET TO A POINT OF CURVATURE;
THENCE NORTHWESTERLY ALONG THE NORTHEASTERLY SIDE OF ARLINGTON
AVENUE AS SAID AVENUE CURVES TO THE LEFT, HAVING A RADIUS OF 655.46
FEET AND AN ARC LENGTH OF 242.17 FEET, TO THE POINT OR PLACE OF
BEGINNING.

PARCEL D (FOR INFORMATION ONLY: BLOCK 5952 LOT 96)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND
BEING IN THE BOROUGH OF BRONX, CITY OF NEW YORK, COUNTY OF BRONX,
STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT IN THE CENTER TINE OF INDEPENDENCE AVENUE AS
SHOWN ON SECTION 26 OF THE FINAL MAPS DISTANT 110 FEET NORTH, AS
MEASURED FROM THE CENTER LINE OF INDEPENDENCE AVENUE, FROM A POINT
WHERE THE NORTHERLY LINE OF LANDS NOW OR FORMERLY OF THE
MONASTERY OF THE VISITATION INTERSECTS THE SAID CENTER LINE OF
INDEPENDENCE AVENUE;
RUNNING THENCE NORTHERLY ALONG SAID CENTER LINE OF INDEPENDENCE
AVENUE, THE FOLLOWING THREE COURSES AND DISTANCES:
(1) NORTH 14° 36' 40" WEST 236.29 FEET TO THE POINT OR CURVE;
(2) ON A CURVE TO THE LEFT HAVING A RADIUS OF 1830 FEET, A DISTANCE OF
277.87 FEET TO THE POINT OF REVERSE CURVE;
(3) THENCE ON A CURVE TO THE RIGHT HAVING A RADIUS OF 730 FEET A
DISTANCE OF 9.38 FEET;
THENCE NORTH 67° 25' 32" EAST, 30 FEET;
THENCE NORTH 75° 46' 25" EAST 224.45 FEET TO THE WESTERLY SIDE OF
ARLINGTON AVENUE;
THENCE ALONG THE WESTERLY SIDE OF ARLINGTON AVENUE IN A SOUTHERLY
DIRECTION THE FOLLOWING FOUR COURSES AND DISTANCES:
(1) ON A CURVE TO THE RIGHT WITH A RADIUS OF 595.46 FEET, 25 FEET;
(2) SOUTH 11° 02' 00" EAST, 220.77 FEET;
(3) ON A CURVE TO THE LEFT WITH A RADIUS OF 360 FEET A DISTANCE OF 241.95
FEET TO POINT OF REVERSE CURVE;
(4) ON A CURVE TO THE RIGHT WITH A RADIUS OF 250 FEET, A DISTANCE OF 52.35
FEET;
THENCE SOUTH 74° 22 ' 57" WEST 306.41 FEET TO THE CENTER LINE OF SAID
INDEPENDENCE AVENUE, AT THE POINT OR PLACE OF BEGINNING.

PARCEL E (FOR INFORMATION ONLY: BLOCK 5953 LOT 240)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND

BEING IN THE BOROUGH AND COUNTY OF THE BRONX, CITY AND STATE OF NEW YORK BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER FORMED BY THE INTERSECTION ON THE NORTHEASTERLY SIDE OF ARLINGTON AVENUE (60 FEET WIDE) WITH THE SOUTHEASTERLY SIDE OF INDEPENDENCE AVENUE (60 FEET WIDE);

RUNNING THENCE SOUTHEASTERLY ALONG THE NORTHEASTERLY SIDE OF ARLINGTON AVENUE AS SAID AVENUE CURVES TO THE RIGHT HAVING A RADIUS OF 655.46 FEET AN ARC LENGTH OF 304.05 FEET, TO A POINT

THENCE NORTH 57° 47' 53" EAST, A DISTANCE OF 66.00 FEET TO A POINT;

THENCE NORTH 08° 47' 12" EAST, A DISTANCE OF 109.72 FEET TO A POINT;

THENCE NORTH 49° 23' 35" EAST, A DISTANCE OF 54.27 FEET TO A POINT;

THENCE NORTH 62° 31' 07" EAST, A DISTANCE OF 253.91 FEET TO A POINT;

THENCE NORTH 21° 23' 27" WEST, A DISTANCE OF 14.37 FEET TO A POINT;

THENCE NORTH 25° 11' 52" WEST, A DISTANCE OF 203 .82 FEET TO A POINT;

THENCE NORTH 39° 48' 26" WEST, A DISTANCE OF 25.57 FEET TO A POINT;

THENCE NORTH 59° 02' 39" WEST, A DISTANCE OF 77.86 FEET TO A POINT;

THENCE NORTH 27° 35' 34" EAST, A DISTANCE OF 14.69 FEET TO A POINT;

THENCE NORTH 63° 33' 25" WEST, A DISTANCE OF 45.96 FEET TO A POINT;

THENCE SOUTH 22° 30' 17" WEST, A DISTANCE OF 11.20 FEET TO A POINT;

THENCE SOUTH 85° 22' 30" WEST, A DISTANCE OF 260.11 FEET TO THE SOUTHEASTERLY SIDE OF INDEPENDENCE AVENUE;

THENCE SOUTH 05° 03' 40" EAST, ALONG THE SOUTHEASTERLY SIDE OF INDEPENDENCE AVENUE, A DISTANCE OF 8.49 FEET TO A POINT OF CURVATURE;

THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY SIDE OF INDEPENDENCE AVENUE AS SAID AVENUE CURVES TO THE RIGHT HAVING A RADIUS OF 460.00 FEET AN ARC LENGTH OF 247.41 FEET, TO A POINT OF REVERSE CURVATURE;

THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY SIDE OF INDEPENDENCE AVENUE AS SAID AVENUE CURVES TO THE LEFT HAVING A RADIUS OF 700.00 FEET AN ARC LENGTH OF 102.85 FEET, TO THE CORNER THE POINT OR PLACE OF BEGINNING;

PARCEL F (FOR INFORMATION ONLY: BLOCK 5952 LOT 330)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF BRONX, COUNTY OF BRONX, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT, IN THE CENTER LINE OF INDEPENDENCE AVENUE AS SHOWN ON SECTION 26 OF FINAL MAPS OF THE BOROUGH OF BRONX, CITY AND STATE OF NEW YORK, DISTANT 633.54 FEET NORTH, AS MEASURED ALONG THE CENTER LINE OF INDEPENDENCE AVENUE, FROM A POINT WHERE THE NORTHERLY LINE OF THE LANDS NOW OR FORMERLY OF THE MONASTERY OF THE VISITATION, INTERSECTS THE SAID CENTER LINE OF INDEPENDENCE AVENUE;

RUNNING THENCE ALONG SAID CENTER OF INDEPENDENCE AVENUE ON A

CURVE TO THE RIGHT WITH A RADIUS OF 730 FEET A DISTANCE OF 118.68 FEET;
THENCE NORTH 76° 44' 27" EAST, 30 FEET TO THE EASTERLY SIDE OF
INDEPENDENCE AVENUE;
THENCE ALONG THE EASTERLY SIDE OF INDEPENDENCE AVENUE ON A CURVE
TO THE RIGHT HAVING A RADIUS OF 700 FEET A DISTANCE OF 310.93 FEET TO A
POINT WHERE THE WESTERLY SIDE OF ARLINGTON AVENUE INTERSECTS SAID
EASTERLY SIDE OF INDEPENDENCE AVENUE;
THENCE SOUTHERLY ALONG THE WESTERLY LINE OF ARLINGTON AVENUE ON A
CURVE TO THE RIGHT WITH A RADIUS OF 595.46 FEET (DEED) (595.463 ACTUAL), A
DISTANCE OF 453.41 FEET;
THENCE SOUTH 75° 46' 25" WEST, 224.45 FEET TO THE WESTERLY SIDE OF
INDEPENDENCE AVENUE;
THENCE SOUTH 67° 25' 32" WEST, 30 FEET TO THE CENTER LINE OF
INDEPENDENCE AVENUE, AT THE POINT OR PLACE OF BEGINNING



## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2018112100207002001EE235

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|
| Document ID: 2018112100207002 | Document Date: 11-05-2018 | Preparation Date: 11-21-2018 |
| Document Type: UCC3 ASSIGNMENT | | FIXTURE FILING |
| Document Page Count: 1 | | |

**PRESENTER:**
MCCOY & ORTA, P.C.
100 N. BROADWAY, SUITE 2600
OKLAHOMA CITY, OK 73102
SUPPORT@SIMPLIFILE.COM

**RETURN TO:**
MCCOY & ORTA, PC
100 N. BROADWAY, 26TH FLOOR
OKLAHOMA CITY, OK 73102
SUPPORT@SIMPLIFILE.COM

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 96 | Entire Lot | 5701 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 91 | Entire Lot | N/A ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

☒ Additional Properties on Continuation Page

### CROSS REFERENCE DATA

CRFN: 2015000316673

### PARTIES

**DEBTOR:**
SKYVIEW OWNERS CORPORATION
5700 ARLINGTON AVENUE
RIVERDALE, NY 10471

**SECURED PARTY:**
FEDERAL HOME LOAN MORTGAGE CORPORATION
8200 JONES BRANCH DRIVE
MCLEAN, VA 22102

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 37.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK**
Recorded/Filed    11-21-2018 10:56
City Register File No.(CRFN):
2018000385856

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2018112100207002001CE0B5

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 3 |
|---|---|

Document ID: 2018112100207002          Document Date: 11-05-2018          Preparation Date: 11-21-2018
Document Type: UCC3 ASSIGNMENT

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 360 Entire Lot | | N/A ARLINGTON AVENUE |

Property Type: RESIDENTIAL VACANT LAND

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 330 Entire Lot | | N/A ARLINGTON AVENUE |

Property Type: OTHER

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 38 Entire Lot | | 5700 ARLINGTON AVENUE |

Property Type: APARTMENT BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 230 Entire Lot | | 5800 ARLINGTON AVENUE |

Property Type: APARTMENT BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 240 Entire Lot | | 5900 ARLINGTON AVENUE |

Property Type: APARTMENT BUILDING

## PARTIES

NEW SECURED PARTY:
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE*
ONE FEDERAL STREET, 3RD FL., MAIL CODE
EX-MA-FED
BOSTON, MA 02110

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Nick Barzellone 405-236-0003

**B. SEND ACKNOWLEDGEMENT TO: (Name and Address)**

McCoy & Orta, P.C.
100 North Broadway, 26th Floor
Oklahoma City, OK 73102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
# 2015000316673 filed 9/10/15

**1b.** This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. ☑

**2. TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement

**3. CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4. ☑ ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

**6. CURRENT RECORD INFORMATION**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| SKYVIEW OWNERS CORPORATION, having an address at 5700 Arlington Avenue, Riverdale, NY 10471 | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW OR ADDED) INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE* | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One Federal Street, 3rd Fl., Mail Code EX-MA-FED | Boston | MA | 02110 | USA |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☑ NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

* FOR THE REGISTERED HOLDERS OF BANC OF AMERICA MERRILL LYNCH COMMERCIAL MORTGAGE INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2016-KJ22

Property Address: 5700, 5701, 5800 and 5900 Arlington Avenue, Riverdale, NY

Block 5952, Lots 90, 91, 360 and 330; Block 5953, Lots 38, 230 and 240, Borough of Bronx

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**
M&O Ref.: 7515.057 Skyview on the Hudson (Loan No. 708555278) FILE WITH BRONX COUNTY, NY

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2018042501123003004E05ED

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 15 |
|---|---|---|
| Document ID: 2018042501123003 | Document Date: 04-24-2018 | Preparation Date: 04-25-2018 |
| Document Type: INITIAL UCC1 | | FIXTURE FILING |
| Document Page Count: 13 | | |

**PRESENTER:**
FIRST AMERICAN TITLE INSURANCE CO. NCS
666 THIRD AVENUE
3020-864469
NEW YORK, NY 10017
212-850-0644
JGAMBOA@FIRSTAM.COM

**RETURN TO:**
CASSIN & CASSIN LLP
2900 WESTCHESTER AVENUE, SUITE 402
PURCHASE, NY 10577

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 91 | Partial Lot | N/A ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 96 | Partial Lot | 5701 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

☒ Additional Properties on Continuation Page

### CROSS REFERENCE DATA

CRFN _____ or DocumentID _____ or _____ Year ____ Reel ____ Page ____ or File Number _____

### PARTIES

**DEBTOR:**
SKYVIEW OWNERS CORPORATION
5701 ARLINGTON AVENUE
RIVERDALE, NY 10471

**SECURED PARTY:**
CAPITAL ONE MULTIFAMILY FINANCE, LLC
2 BETHESDA METRO CENTER, 10TH FLOOR
BETHESDA, MD 20814

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 37.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    04-26-2018 09:31
City Register File No.(CRFN):
2018000138803

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2018042501123003004C076D

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 15 |
|---|---|---|

**Document ID: 2018042501123003**      Document Date: 04-24-2018      Preparation Date: 04-25-2018
Document Type: INITIAL UCC1

**PROPERTY DATA**

| Borough | Block Lot | | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 330  Partial Lot | | N/A ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | | |
| Borough | Block Lot | | Unit | Address |
| BRONX | 5952 | 360  Partial Lot | | N/A ARLINGTON AVENUE |
| Property Type: RESIDENTIAL VACANT LAND | | | | |
| Borough | Block Lot | | Unit | Address |
| BRONX | 5953 | 38  Partial Lot | | 5700 ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | | |
| Borough | Block Lot | | Unit | Address |
| BRONX | 5953 | 230  Partial Lot | | 5800 ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | | |
| Borough | Block Lot | | Unit | Address |
| BRONX | 5953 | 240  Partial Lot | | 5900 ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | | |

**PARTIES**
**ASSIGNEE:**
FEDERAL HOME LOAN MORTGAGE CORPORATION
8200 JONES BRANCH DRIVE
MCLEAN, VA 22102

First American Title
Insurance Company
666 Third Avenue, 5th Fl
New York, N.Y. 10017
Phone (212) 922-9700
Fax (212) 922-0881

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME AND PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

Cassin & Cassin LLP
2900 Westchester Avenue, Suite 402
Purchase, New York 10577
Attn: Recording Department

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **SKYVIEW OWNERS CORPORATION** | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5701 Arlington Avenue, Attn: Steven Chait | Riverdale | NY | 10471 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| N/A | | CORP. | New York | 1052944 □ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – insert only one debtor name (2a or 2b) – do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | □ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **FEDERAL HOME LOAN MORTGAGE CORPORATION** | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8200 Jones Branch Drive | McLean | VA | 22102 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

See Exhibit B to Financing Statement annexed hereto and made a part hereof.

**5. ALTERNATIVE DESIGNATION** [if applicable]: □ LESSEE/LESSOR □ CONSIGNEE/CONSIGNOR □ BAILEE/BAILOR □ SELLER/BUYER □ AG. LIEN □ NON-UCC FILING

**6.** ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]   **7.** Check to REQUEST SEARCH REPORT(s) on Debtor(s) [ADDITIONAL FEE] [optional]   □ All Debtors  □ Debtor 1  □ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

File in the City Register, Bronx County, State of New York   COMF/Skyview on the Hudson
Freddie Mac Loan Number

FILING OFFICE COPY – UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT

| | 9a. ORGANIZATION'S NAME |
|---|---|
| OR | **SKYVIEW OWNERS CORPORATION** |

| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|---|
| | | | |

10. MISCELLANEOUS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (11a or 11b) – do not abbreviate or combine names.

| | 11a. ORGANIZATION'S NAME |
|---|---|
| OR | |

| | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID#, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☒ ASSIGNOR S/P'S NAME – insert only one name (12a or 12b)

| | 12a. ORGANIZATION'S NAME |
|---|---|
| OR | **CAPITAL ONE MULTIFAMILY FINANCE, LLC** |

| | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2 Bethesda Metro Center, 10th Floor    Attention: Asset Management | Bethesda | MD | 20814 | USA |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as extracted collateral, or is filed as a ☒ fixture filing.

14. Description of real estate:

Skyview on the Hudson
5700, 5701, 5800 and 5900 Arlington Avenue
Riverdale, New York 10471

Block: 5952, Lots: 91, 96, 330, 360
Block: 5953, P/O Lots: 38, 230, 240
County:    **BRONX**

16. Additional collateral Description

15. Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Dependent's Estate

18. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction – effective 30 years.
☐ Filed in connection with a Public-Finance Transaction – effective 30 years

FILING OFFICE COPY – UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2018112100191002001E972F

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2018112100191002 | Document Date: 11-05-2018 | Preparation Date: 11-21-2018 |
| Document Type: UCC3 ASSIGNMENT | | FIXTURE FILING |
| Document Page Count: 2 | | |

**PRESENTER:**
MCCOY & ORTA, P.C.
100 N. BROADWAY, SUITE 2600
OKLAHOMA CITY, OK 73102
SUPPORT@SIMPLIFILE.COM

**RETURN TO:**
MCCOY & ORTA, PC
100 N. BROADWAY, 26TH FLOOR
OKLAHOMA CITY, OK 73102
SUPPORT@SIMPLIFILE.COM

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 91 | Entire Lot | N/A ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 96 | Entire Lot | 5701 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

☒ Additional Properties on Continuation Page

## CROSS REFERENCE DATA

CRFN: 2018000138803

## PARTIES

**DEBTOR:**
SKYVIEW OWNERS CORPORATION
5701 ARLINGTON AVENUE
RIVERDALE, NY 10471

**SECURED PARTY:**
FEDERAL HOME LOAN MORTGAGE CORPORATION
8200 JONES BRANCH DRIVE
MCLEAN, VA 22102

☒ Additional Parties Listed on Continuation Page

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 37.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    11-21-2018 10:56
City Register File No.(CRFN):
2018000385854

*Annette M. Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2018112100191002001C95AF

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 4 |
|---|---|---|

**Document ID:** 2018112100191002    Document Date: 11-05-2018    Preparation Date: 11-21-2018
Document Type: UCC3 ASSIGNMENT

---

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 330 | Entire Lot | N/A ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 360 | Entire Lot | N/A ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 38 | Entire Lot | 5700 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 230 | Entire Lot | 5800 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 240 | Entire Lot | 5900 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

---

## PARTIES

**NEW SECURED PARTY:**
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
ONE FEDERAL STREET, 3RD FL., MAIL CODE
EX-MA-FED
BOSTON, MA 02110

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Nick Barzellone 405-236-0003

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

McCoy & Orta, P.C.
100 North Broadway, 26th Floor
Oklahoma City, OK 73102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. THIS FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| # 2018000138803 filed 4/26/18 | ☑ |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☑ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions regarding changing the name/address of a party.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME |
|---|
| SKYVIEW OWNERS CORPORATION, having an address at 5701 Arlington Avenue, Attn: Steven Chait, Riverdale, NY 10471 |

| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME |
|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE* |

| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One Federal Street, 3rd Fl., Mail Code EX-MA-FED | Boston | MA | 02110 | USA |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☑ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

*FOR THE REGISTERED HOLDERS OF BANC OF AMERICA MERRILL LYNCH COMMERCIAL MORTGAGE INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-KJ22

Property Address: 5700, 5701, 5800 and 5900 Arlington Avenue, Riverdale, NY

Block 5952, Lots 91, 96, 330 and 360; Block 5953, Lots 38, 230 and 240, Borough of Bronx

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME |
|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION |

| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA
M&O Ref.: 7515.056 Skyview on the Hudson (Third Lien) (Loan No. 499330161) FILE WITH BRONX COUNTY, NY

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Nick Barzellone 405-236-0003

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

McCoy & Orta, P.C.
100 North Broadway, 26th Floor
Oklahoma City, OK 73102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| # 201805030204540 filed 5/3/18 | |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☑ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| SKYVIEW OWNERS CORPORATION | | | |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE* | | | |
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One Federal Street, 3rd Fl., Mail Code EX-MA-FED | Boston | MA | 02110 | USA |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☑ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

* FOR THE REGISTERED HOLDERS OF BANC OF AMERICA MERRILL LYNCH COMMERCIAL MORTGAGE INC.,
MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-KJ22

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

10. OPTIONAL FILER REFERENCE DATA
M&O Ref.: 7515.056 Skyview on the Hudson (3rd Lien) (Loan No. 4993301161) FILE WITH NY SECRETARY OF STATE

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2013050101600009001E8F25

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 13 |
|---|---|

| Document ID: 2013050101600009 | Document Date: 04-30-2013 | Preparation Date: 05-02-2013 |
|---|---|---|
| Document Type: INITIAL UCC1 | | FIXTURE FILING |
| Document Page Count: 11 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST AMERICAN TITLE INSURANCE- PICK UP FIRSTAM 633 THIRD AVENUE 3020-595287 (JG) NEW YORK, NY 10017 212-850-0670 | BLANK ROME LLP 405 LEXINGTON AVENUE FIRST AMERICAN TITLE INSURANCE- PICK UP FIRSTAM NEW YORK, NY 10017-4014 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 91 | Partial Lot | N/A ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 96 | Partial Lot | 5701 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

☒ Additional Properties on Continuation Page

**CROSS REFERENCE DATA**

CRFN _____ or DocumentID _____ or _____ Year _____ Reel ____ Page _____ or File Number _____

**PARTIES**

| DEBTOR: | SECURED PARTY: |
|---|---|
| SKYVIEW OWNERS CORPORATION 5700 ARLINGTON AVENUE RIVERDALE, NY 10471 | BEECH STREET CAPITAL, LLC 7600 WISCONSIN AVENUE, SUITE 800 BETHESDA, MD 20814 |

☒ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 57.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**

Recorded/Filed    05-20-2013 15:02
City Register File No.(CRFN):
**2013000203091**

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2013050101600009001C8DA5

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)    PAGE 2 OF 13**

| Document ID: 2013050101600009 | Document Date: 04-30-2013 | Preparation Date: 05-02-2013 |
|---|---|---|

Document Type: INITIAL UCC1

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 330 | Partial Lot | N/A ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 360 | Partial Lot | N/A ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 38 | Partial Lot | 5700 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 230 | Partial Lot | 5800 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 240 | Partial Lot | 5900 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

## PARTIES

ASSIGNEE:
FEDERAL HOME LOAN MORTGAGE CORPORATION
8200 JONES BRANCH DRIVE
MCLEAN, VA 22102

FATICO
3020-595287

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME AND PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

Blank Rome LLP
405 Lexington Avenue-24th Floor
New York, NY 10174
Attn: Carol M. Joseph, Esq.

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

OR 1a. ORGANIZATION'S NAME

**SKYVIEW OWNERS CORPORATION**

| 1b. INDIVIDUAL'S LAST NAME | | | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|

| 1c. MAILING ADDRESS | | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|
| 5700 Arlington Avenue | | | Riverdale | NY | 10471 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION<br>Corporation | 1f. JURISDICTION OF ORGANIZATION<br>New York | 1g. ORGANIZATIONAL ID#, if any | ■ NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

OR 2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | | | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|

| 2c. MAILING ADDRESS | | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | □ NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

OR 3a. ORGANIZATION'S NAME

**FEDERAL HOME LOAN MORTGAGE CORPORATION**

| 3b. INDIVIDUAL'S LAST NAME | | | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|

| 3c. MAILING ADDRESS | | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|---|
| 8200 Jones Branch Drive | | | McLean | VA | 22102 | USA |

4. This FINANCING STATEMENT covers the following collateral:

*See Exhibit "B" annexed hereto and made a part hereof.*

5. ALTERNATIVE DESIGNATION (if applicable): □ LESSEE/LESSOR □ CONSIGNEE/CONSIGNOR □ BAILEE/BAILOR □ SELLER/BUYER □ AG. LIEN □ NON-UCC FILING

| 6. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum    (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | □ All Debtors □ Debtor 1 □ Debtor 2 |
|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

File with Office of the City Register, Bronx County, New York    *Skyview on the Hudson*

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

135558.00426/7238602v.1

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY.

9. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT

OR | 9a. ORGANIZATION'S NAME

**SKYVIEW OWNERS CORPORATION**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| | | |

10. MISCELLANEOUS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (11a or 11b) - do not abbreviate or combine names

OR | 11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID#, if any | ☐ NONE |
|---|---|---|---|---|---|
| | | | | | |

12. ☐ ADDITIONAL SECURED PARTY'S or ☒ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

OR | 12a. ORGANIZATION'S NAME

**BEECH STREET CAPITAL, LLC**

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7600 Wisconsin Avenue, Suite 800. | Bethesda | MD | 20814 | USA |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as extracted collateral, or is filed as a ☒ fixture filing.

14. Description of real estate:

See Exhibit A annexed hereto and made a part hereof.
Block : 5953 , 5952
Lots : 38,96, 230, 240, 91, 360, 710
Premises: 5700, 5701, 5800, 5900 Arlington
Avenue ◦ N/A Arlington Avenue

15. Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

16. Additional collateral Description:

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

135558.00426/7238602v.1



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2013092400291002001E396D

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

| Document ID: 2013092400291002 | Document Date: 09-26-2013 | Preparation Date: 09-26-2013 |
|---|---|---|
| Document Type: UCC3 ASSIGNMENT | | FIXTURE FILING |
| Document Page Count: 1 | | |

**PRESENTER:**
ANDERSON MCCOY & ORTA
100 N BROADWAY
26TH FLOOR
OKLAHOMA CITY, OK 73102
405-230-1027
pmangum@amopc.com

**RETURN TO:**
ANDERSON MCCOY & ORTA
100 N BROADWAY
26TH FLOOR
OKLAHOMA CITY, OK 73102
405-230-1027
pmangum@amopc.com

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 91 | Partial Lot | N/A ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | | |
| Borough | Block | Lot | Unit | Address |
| BRONX | 5952 | 96 | Partial Lot | 5701 ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | | |

☒ Additional Properties on Continuation Page

**CROSS REFERENCE DATA**

CRFN: 2013000203091

**PARTIES**

**DEBTOR:**
SKYVIEW OWNERS CORPORATION
5700 ARLINGTON AVENUE
RIVERDALE, NY 10471

**SECURED PARTY:**
FEDERAL HOME LOAN MORTGAGE CORPORATION
8200 JONES BRANCH DRIVE
MCLEAN, VA 22102

☒ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 57.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        10-07-2013 10:01
City Register File No.(CRFN):
2013000413773

*Annette M Hill*

*City Register Official Signature*



NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER

2013092400291002001C3BED

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 3 |
|---|---|---|
| Document ID: 2013092400291002 | Document Date: 09-26-2013 | Preparation Date: 09-26-2013 |
| Document Type: UCC3 ASSIGNMENT | | |

## PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BRONX | 5952 | 330 | Partial Lot | | N/A ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | | | |

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BRONX | 5952 | 360 | Partial Lot | | N/A ARLINGTON AVENUE |
| Property Type: RESIDENTIAL VACANT LAND | | | | | |

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BRONX | 5953 | 38 | Partial Lot | | 5700 ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | | | |

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BRONX | 5953 | 230 | Partial Lot | | 5800 ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | | | |

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BRONX | 5953 | 240 | Partial Lot | | 5900 ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | | | |

## PARTIES

NEW SECURED PARTY:
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
ATTN: RECEIVING UNIT, 1133 RANKIN STREET,
SUITE 100
SAINT PAUL, MN 55116

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Recording Division    (405) 236-0003

**B. SEND ACKNOWLEDGEMENT TO: (Name and Address)**

Anderson, McCoy & Orta PC
100 North Broadway
Suite 2600
Oklahoma City, OK 73102
AMO File No:    1752.055

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. THIS FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| 2013000203091 5/20/13 | |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☑ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6A or 6B; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.

☐ DELETE name: Give record name to be deleted in item 6a or 6b.

☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

**6. CURRENT RECORD INFORMATION: (DEBTOR)**

| 6a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| SKYVIEW OWNERS CORPORATION, a New York corporation | | | |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW OR ADDED) INFORMATION:**

| 7a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2013-K32 | | | |

| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1133 Rankin Street, Suite 100, Attn: Receiving Unit | Saint Paul | MN | 55116 | USA |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE: ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description or describe collateral ☐ assigned.

Block 5952, Lots 91, 96, 330, 360 and Block 5953, Lots 35, 230, 240, Bronx Borough

Property Address: 5700, 5701, 5800 and 5900 Arlington Avenue, Riverdale, NY

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor or, if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| 9a. ORGANIZATION'S NAME |
|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION, having an address at 8200 Jones Branch Drive, McLean, VA 22102 |

**10. OPTIONAL FILER REFERENCE DATA**
Skyview On The Hudson (Account No. 534405053) FILE WITH BRONX COUNTY, NY

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2017122101348001001EA920

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 9 |
|---|---|---|
| Document ID: 2017122101348001 | Document Date: 12-21-2017 | Preparation Date: 12-21-2017 |
| Document Type: UCC3 CONTINUATION | | FIXTURE FILING |
| Document Page Count: 7 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| LIEN SOLUTIONS | LIEN SOLUTIONS |
| 330 N. BRAND BLVD STE 700 | 330 N. BRAND BLVD STE 700 |
| 62043159JM | 62043159JM |
| GLENDALE, CA 91203 | GLENDALE, CA 91203 |
| 818-662-4100 | 818-662-4100 |
| UCCFILINGRETURN@WOLTERSKLUWER.COM | UCCFILINGRETURN@WOLTERSKLUWER.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 38 | Partial Lot | 5700 ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5952 | 91 | Partial Lot | N/A ARLINGTON AVENUE |

Property Type: COMMERCIAL REAL ESTATE

☒ Additional Properties on Continuation Page

### CROSS REFERENCE DATA

CRFN: 2013000203091

### PARTIES

| DEBTOR: | SECURED PARTY: |
|---|---|
| SKYVIEW OWNERS CORPORATION | U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE |
| 5700 ARLINGTON AVENUE | FOR THE |
| RIVERDALE, NY 10471 | 1133 RANKIN STREET, SUITE 100; ATTN: RECEIVING |
| | UNI |
| | SAINT PAUL, MN 55116 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 57.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

### RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK

Recorded/Filed    12-26-2017 15:26
City Register File No.(CRFN):
2017000470414

*Annette M. Hill*

*City Register Official Signature*



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2017122101348001001CABA0

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 9 |
|---|---|

| Document ID: 2017122101348001 | Document Date: 12-21-2017 | Preparation Date: 12-21-2017 |
|---|---|---|
| Document Type: UCC3 CONTINUATION | | |

## PROPERTY DATA

| Borough | Block Lot | Unit | Address |
|---|---|---|---|
| BRONX | 5952  360  Partial Lot | | N/A ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | |
| Borough | Block Lot | Unit | Address |
| BRONX | 5953  230  Partial Lot | | 5800 ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | |
| Borough | Block Lot | Unit | Address |
| BRONX | 5952  96  Partial Lot | | 5701 ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | |
| Borough | Block Lot | Unit | Address |
| BRONX | 5953  240  Partial Lot | | 5900 ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | |
| Borough | Block Lot | Unit | Address |
| BRONX | 5952  330  Partial Lot | | N/A ARLINGTON AVENUE |
| Property Type: COMMERCIAL REAL ESTATE | | | |

███████████
███████████
███████████
███████████

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone: (800) 331-3282 Fax: (818) 662-4141

B. SEND ACKNOWLEDGMENT TO: (Name and Address)   25758 - KEY BANK REAL ESTATE

Lien Solutions
P.O. Box 29071                              62043159
Glendale, CA 91209-9071

File with: Bronx, NY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 2013000203091 - 5/20/2013 CC NY Bronx | ☒ |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| SKYVIEW OWNERS CORPORATION | | | |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | | | | |
| 7c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.
Property Address: 5700, 5701, 5800 and 5900 Arlington Avenue, Riverdale, NY 10471

Block 5952, Lots 91, 96, 330, 360 and Block 5953, Lots 38, 230, 240, Bronx Borough

See Exhibit A attached hereto and made a part hereof

The complete information for Authorizer number 1:

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2013-K32
1133 RANKIN STREET, SUITE 100, ATTN: RECEIVING UNIT
SAINT PAUL, MN  55116

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 10. OPTIONAL FILER REFERENCE DATA | Debtor Name: SKYVIEW OWNERS CORPORATION | |
|---|---|---|
| 62043159 | CN - 220 R | 10081393 |

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

2013000203091   5/20/2013 CC NY Bronx

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

12a. ORGANIZATION'S NAME

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Debtor Name and Address:
SKYVIEW OWNERS CORPORATION - 5700 ARLINGTON AVENUE , RIVERDALE, NY 10471

Secured Party Name and Address:
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2013-K32 - 1133 RANKIN STREET, SUITE 100; ATTN: RECEIVING UNIT , SAINT PAUL, MN 55116

Real Estate Description follows:
Recorded Owner:
Owner Address : ,
Description: Property Address:  5700, 5701, 5800 and 5900 Arlington Avenue, Riverdale, NY 10471

See Exhibit A attached hereto and made a part hereof
Section Number: 2 Block Number: 5952, 5953 Lot Number: 91, 96, 330, 360, 38, 230, 240

Property type for the described lot and block#: COMMERCIAL REAL ESTATE

# NCR-26 210478

2013 MAY -3 PM 2: 45

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME AND PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

Blank Rome LLP
405 Lexington Avenue-24th Floor
New York, NY 10174
Attn: Carol M. Joseph, Esq.

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names
OR

| 1a. ORGANIZATION'S NAME |
|---|
| **SKYVIEW OWNERS CORPORATION** |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5700 Arlington Avenue | Riverdale | NY | 10471 | USA |

| 1d. | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|---|
| | | CORPORATION | New York | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (2a or 2b) – do not abbreviate or combine names
OR

| 2a. ORGANIZATION'S NAME |
|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)
OR

| 3a. ORGANIZATION'S NAME |
|---|
| **FEDERAL HOME LOAN MORTGAGE CORPORATION** |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8200 Jones Branch Drive | McLean | VA | 22102 | USA |

4. This FINANCING STATEMENT covers the following collateral:

*See Exhibit "B" annexed hereto and made a part hereof.*

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

| 6. ☐ | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(s) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
File with Secretary of State, State of New York

*Skyview on the Hudson*

FILING OFFICE COPY – UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

135558.00426/7238597v.1

## FILING NUMBER: 201305030241889

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**210478**    **2013 MAY -3  PM 2:45**

9. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT

OR

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|
| **SKYVIEW OWNERS CORPORATION** | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (11a or 11b) – do not abbreviate or combine names:

OR

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, |
|---|---|---|---|---|

12. ☐ ADDITIONAL SECURED PARTY'S or ☒ ASSIGNOR S/P'S NAME – insert only one name (12a or 12b)

OR

| 12a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **BEECH STREET CAPITAL, LLC** | | | | |
| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 7600 Wisconsin Avenue, Suite 800, | Bethesda | MD | 20814 | USA |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as extracted collateral, or is filed as a ☐ fixture filing.

16. Additional collateral Description:

14. Description of real estate:

See Exhibit A annexed hereto and made a part hereof.

15. Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedant's Estate

18. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction – effective 30 years

☐ Filed in connection with a Public-Finance Transaction – effective 30 years

FILING OFFICE COPY – UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

135558.00426/7238597v.1

**437493**     **2013 Sep 30 PM01:28**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Marie Maggio 405-235-9603

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Anderson McCoy & Orta PC
100 North Broadway, Suite 2600
Oklahoma City, OK 73102, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 201305030241689 Filedate: 03-MAY-13 | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2013-K32 | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 7c. MAILING ADDRESS 1133 Rankin Street, Suite 100; Attn: Receiving Unit | CITY Saint Paul | STATE MN | POSTAL CODE 55116 | COUNTRY USA |
|---|---|---|---|---|
| ADD'L INFO RE ORGANIZATION DEBTOR | 7d. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME FEDERAL HOME LOAN MORTGAGE CORPORATION | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

10. OPTIONAL FILER REFERENCE DATA 1752.055 - SKYVIEW ON THE HUDSON (NY SOS).

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## Filing Number-201309308394520



848979       2017 Dec 07 PM03:50

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Gisela Melendez 800-331-3282

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

┌─────────────────────────────────────┐
│  CT Lien Solutions                   │
│  P.O. Box 29071                      │
│  Glendale, CA 91209-9071, USA        │
│  efiling@wolterskluwer.com           │
│  (Fax)818-662-4141                   │
│                                      │
│                                      │
│  └                                   │
└─────────────────────────────────────┘

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 201305032241869 Filedate: 03-MAY-13 | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial). Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2013-K32

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA NY-9-61855819-54355775

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## Filing Number-201712076485870

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

First American Title
Insurance Company
666 Third Avenue, 5th fl
New York, N.Y. 10017
Phone: (212) 922-9700

217760

2015 SEP -2 PM 4: 00

A. NAME & PHONE OF CONTACT AT FILER [optional]
Carmen I. Pagan, Esq. (CPagan@blankrome.com)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

BLANK ROME LLP
405 LEXINGTON AVENUE, 24TH FLOOR
NEW YORK, NEW YORK 10174

DRAWDOWN

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| SKYVIEW OWNERS CORPORATION | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5700 Arlington Avenue | Riverdale | NY | 10471 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | corporation | New York | ☑ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8200 Jones Branch Drive | McLean | VA | 22102 | USA |

4. This FINANCING STATEMENT covers the following collateral:

*See Exhibit "B" annexed hereto and made a part hereof.*

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA
File with Secretary of State, State of New York            Skyview on the Hudson/FH

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**FILING NUMBER: 201509020452141**

217760

2015 SEP -2  PH 4:00

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR **SKYVIEW OWNERS CORPORATION**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | | | ☐ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S  or  ☑ ASSIGNOR S/P'S  NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR **CAPITAL ONE MULTIFAMILY FINANCE, LLC**

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **7500 Wisconsin Avenue, Suite 800** | **Bethesda** | **MD** | **20814** | **USA** |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

*See Exhibit A annexed hereto and made a part hereof.*

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest)

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust  or ☐ Trustee acting with respect to property held in trust. or ☐ Decedent's Estate

18. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)



## FINANCING STATEMENT
## EXHIBIT B

### (Revised 7-17-2014)

All of Debtor's present and future right, title and interest in and to all of the following:

(1)  "**Fixtures**," which means all property owned by Debtor which is attached to the real property described in Exhibit A ("**Land**") and/or the improvements located on the Land ("**Improvements**") ("**Property**" means the Land and/or the Improvements.) so as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

(2)  "**Personalty**," which means all of the following:

    (i)   Accounts (including deposit accounts) of Debtor related to the Property.

    (ii)  Equipment and inventory owned by Debtor, which are used now or in the future in connection with the ownership, management or operation of the Property or are located on the Property, including furniture, furnishings, machinery, building materials, goods, supplies, tools, books, records (whether in written or electronic form) and computer equipment (hardware and software).

    (iii) Other tangible personal property owned by Debtor which is used now or in the future in connection with the ownership, management or operation of the Property or is located on the Land or in the Improvements, including ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances (other than Fixtures).

    (iv)  Any operating agreements relating to the Land or the Improvements.

    (v)   Any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements.

(vi)   All other intangible property, general intangibles and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land and including subsidy or similar payments received from any sources, including a "**Governmental Authority**" (defined as any board, commission, department, agency or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Property, or the use, operation or improvement of the Property, or over Debtor).

(vii)   Any rights of Debtor in or under any letter of credit required under the terms of the Multifamily Loan and Security Agreement ("**Loan Agreement**") evidencing and securing the loan secured by this financing statement ("**Loan**").

(3)   All current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights of way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated.

(4)   All proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personality or any other part of the Property, whether or not Debtor obtained the insurance pursuant to Secured Party's requirement.

(5)   All awards, payments and other compensation made or to be made by any Governmental Authority with respect to the Land, or if Debtor's interest in the Land is pursuant to a ground lease, the ground lease and the leasehold estate created by such ground lease ("**Leasehold Estate**"), the Improvements, the Fixtures, the Personality or any other part of the Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personality or any other part of the Property under the power of eminent domain or otherwise and including any conveyance in lieu of such a taking.

(6)   All contracts, options and other agreements for the sale of the Land, or the Leasehold Estate, as applicable, the Improvements, the Fixtures, the Personality or any other part of the Property entered into by Debtor now or in the future, including cash or securities deposited to secure performance by parties of their obligations.

(7)   All "**Rents**," which means all rents (whether from residential or non-residential space), revenues and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Property, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Debtor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due or to become due.

(8)    All "Leases," which means all present and future leases, subleases, licenses, concessions or grants or other possessory interests in force now or after the date this financing statement is recorded or filed, whether oral or written, covering or affecting the Property, or any portion of the Property (including proprietary leases or occupancy agreements if Debtor is a cooperative housing corporation), and all modifications, extensions or renewals.

(9)    All earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Property, and all undisbursed proceeds of the Loan.

(10)    All "Imposition Reserve Deposits," which means all amounts deposited by the Debtor in connection with the Loan for (a) hazard insurance premiums or other insurance premiums required by Secured Party, (b) taxes or payments in lieu of taxes, (c) water and sewer charges that could become a lien on the Property, (d) ground rents, and (e) assessments or other charges that could become a lien on the Property.

(11)    All refunds or rebates of Imposition Reserve Deposits by any Governmental Authority or insurance company (other than refunds applicable to periods before the real property tax year in which this financing statement is recorded or filed).

(12)    All tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits.

(13)    All names under or by which the Property or any part of it may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Property (subject to the terms of the Loan Agreement).

(14)    All interest rate cap agreements, interest rate swap agreements and other interest rate hedging contracts and agreements, if any (collectively, "Cap Agreements"), obtained by Debtor (or obtained by Secured Party in the name of Debtor) pursuant to the Loan Documents (as defined in the Loan Agreement) or as a condition to Secured Party's making the loan that is the subject of such Loan Documents, together with all of the following:

   (i)    Any and all moneys (collectively, "Cap Payments") payable from time to time pursuant to any Cap Agreement by the interest rate cap provider or other counterparty to a Cap Agreement, or any guarantor of the obligations of any such cap provider or counterparty ("Cap Provider").

   (ii)    All rights of the Debtor under any Cap Agreement, and all rights of the Debtor to all Cap Payments, including contract rights and general intangibles, existing or arising after the date this financing statement is recorded or filed.

(iii)    All rights, liens and security interests or guarantees existing or following the date this financing statement is recorded, granted by a Cap Provider or any other person to secure or guaranty payment of any Cap Payment.

(iv)    All documents, writings, books, files, records and other documents arising from or relating to any of the items listed in items 14(i) through (iii), whether existing now or created after the date this financing statement is recorded or filed.

(v)    All cash and non-cash proceeds and products of any of the items listed in items 14(i) through (iv).

(15)    Reserved.

(16)    All other assets of Debtor, whether now owned or acquired after the date this financing statement is recorded or filed.

(17)    All proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds.

PARCEL A (FOR INFORMATION ONLY: BLOCK 5953 LOT 38)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND
BEING IN THE BOROUGH AND COUNTY OF THE BRONX, CITY AND STATE OF NEW
YORK BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT ON THE EASTERLY SIDE OF ARLINGTON AVENUE (60 FEET
WIDE) DISTANT 603.76 FEET NORTHERLY FROM THE CORNER FORMED FROM THE
INTERSECTION OF THE EASTERLY SIDE OF ARLINGTON AVENUE WITH THE
NORTHERLY SIDE OF WEST 256TH STREET (60 FEET WIDE);
RUNNING THENCE NORTH 75° 43' 53" EAST, A DISTANCE 282.79 FEET TO THE
WESTERLY SIDE OF NETHERLAND AVENUE (60 FEET WIDE);
THENCE NORTHERLY ALONG THE WESTERLY SIDE OF NETHERLAND AVENUE
ALONG A CURVE BEARING TO THE LEFT HAVING A RADIUS OF 422.70 FEET AND
AN ARC LENGTH OF 105.31 FEET TO A POINT OF TANGENCY;
THENCE CONTINUING ALONG THE WESTERLY SIDE OF NETHERLAND AVENUE
NORTH 10° 24' 30" WEST, A DISTANCE OF 347.95 FEET TO THE INTERSECTION OF
THE PROLONGATION WESTERLY OF THE NORTHERLY SIDE OF WEST 259TH
STREET (60 FEET WIDE) WITH NORTHWESTERLY SIDE OF NETHERLAND AVENUE;
THENCE SOUTH 72° 34' 30" WEST, ALONG THE PROLONGATION WESTERLY OF THE
NORTHERLY SIDE OF WEST 259TH STREET A DISTANCE OF 90.12 FEET TO A POINT;
THENCE NORTH 04° 15' 01" WEST FOR A DISTANCE OF 216.92 FEET TO A POINT;
THENCE NORTH 83° 48' 16" EAST; A DISTANCE OF 6.01 FEET TO A POINT;
THENCE NORTH 03° 30' 35" WEST; A DISTANCE OF 27.51 FEET TO A POINT;
THENCE SOUTH 86° 38' 21" WEST, A DISTANCE OF 5.11 FEET TO A POINT;
THENCE NORTH 27° 33' 00" WEST, A DISTANCE OF 47.59 FEET TO A POINT;
THENCE SOUTH 62° 31' 07" WEST, A DISTANCE OF 120.18 FEET TO A POINT;
THENCE SOUTH 05° 02' 16" EAST, A DISTANCE OF 119.67 FEET TO A POINT;
THENCE SOUTH 74° 57' 30" WEST, A DISTANCE OF 140.00 FEET TO A POINT;
THENCE SOUTH 15° 02' 30" EAST, A DISTANCE OF 35.00 FEET TO A POINT;
THENCE SOUTH 31° 15' 07" WEST, A DISTANCE OF 117.49 FEET TO A POINT;
THENCE SOUTH 78° 58' 00" WEST, A DISTANCE 16.00 FEET TO THE EASTERLY SIDE
OF ARLINGTON AVENUE;
THENCE, ALONG THE EASTERLY SIDE OF ARLINGTON AVENUE THE FOLLOWING 3
COURSES DISTANCES:
1. THENCE SOUTH 11° 02' 00" EAST, A DISTANCE OF 81.00 FEET TO A POINT OF
CURVATURE;
2. THENCE SOUTHEASTERLY ALONG A CURVE BEARING TO THE LEFT HAVING A
RADIUS OF 300.00 FEET AN ARC LENGTH OF 201.63 FEET TO A POINT OF REVERSE
CURVATURE;
3. THENCE SOUTHEASTERLY AND SOUTHERLY ALONG A CURVE BEARING TO THE
RIGHT HAVING A RADIUS OF 310.00 FEET AN ARC LENGTH OF 209.28 FEET TO THE
POINT OR PLACE OF BEGINNING.

PARCEL B (FOR INFORMATION ONLY: BLOCK 5952 LOTS 91 AND 360)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND
BEING IN THE BOROUGH OF BRONX, CITY OF NEW YORK, COUNTY OF NEW YORK,
BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT IN THE CENTER LINE OF INDEPENDENCE AVENUE AS
SHOWN ON SECTION 26 OF FINAL MAPS AT A POINT WHERE THE NORTHERLY
LINE OF LANDS NOW OR FORMERLY OF THE MONASTERY OF THE VISITATION
INTERSECTS SAID CENTER LINE OF INDEPENDENCE AVENUE;
RUNNING THENCE ALONG THE CENTER LINE OF SAID INDEPENDENCE AVENUE
NORTH 14° 36' 40" WEST, 110 FEET;
THENCE NORTH 74° 22' 57" EAST, 306.41 FEET TO THE WESTERLY SIDE OF
ARLINGTON AVENUE;
THENCE IN A SOUTHERLY DIRECTION ALONG SAID WESTERLY SIDE OF
ARLINGTON AVENUE THE FOLLOWING THREE COURSES AND DISTANCES:
(1) ON A CURVE TO THE RIGHT HAVING A RADIUS OF 250 FEET A DISTANCE OF 120
FEET TO THE POINT OF TANGENCY;
(2) SOUTH 10° 02' 30" EAST 99.39 FEET TO A POINT OF TANGENCY; AND
(3) ON A CURVE TO THE LEFT HAVING A RADIUS OF 1060 FEET, 56.46 FEET TO THE
LANDS NOW OR FORMERLY OF MONASTERY OF THE VISITATION;
THENCE ALONG THE LANDS NOW OR FORMERLY OF THE MONASTERY, OF THE
VISITATION THE FOLLOWING TWO COURSES AND DISTANCES:
(1) NORTH 28° 37' 40" WEST, 160.52 FEET;
(2) SOUTH 75° 43' 53" WEST, 275.55 FEET (DEED) (275.54 ACTUAL) TO SAID CENTER
LINE OF INDEPENDENCE AVENUE, THE POINT OR PLACE OF BEGINNING;

PARCEL C (FOR INFORMATION ONLY: BLOCK 5953 LOT 230)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND
BEING IN THE BOROUGH AND COUNTY OF THE BRONX, CITY AND STATE OF NEW
YORK BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT ON THE EASTERLY SIDE OF ARLINGTON AVENUE (60 FEET
WIDE) DISTANT 304.05 FEET SOUTHEASTERLY FROM THE CORNER FORMED BY
THE INTERSECTION OF THE EASTERLY SIDE OF ARLINGTON AVENUE WITH THE
SOUTHEASTERLY SIDE OF INDEPENDENCE AVENUE (60 FEET WIDE) AS SAID
ARLINGTON AVENUE CURVES TO THE RIGHT HAVING A RADIUS OF 655.46 FEET;
RUNNING THENCE NORTH 57° 47' 53" EAST, A DISTANCE OF 66.00 FEET TO A POINT;
THENCE NORTH 08° 47' 12" EAST, A DISTANCE OF 109.72 FEET TO A POINT;
THENCE NORTH 49° 23' 35" EAST, A DISTANCE OF 54.27 FEET TO A POINT;
THENCE NORTH 62° 31' 07" EAST, A DISTANCE OF 253.91 FEET TO A POINT;
THENCE SOUTH 21° 23' 26" EAST, A DISTANCE OF 239.86 FEET TO A POINT;
THENCE SOUTH 06° 52' 56 " EAST, A DISTANCE OF 75.01 FEET TO A POINT;
THENCE SOUTH 62° 31' 07" WEST, A DISTANCE OF 144.06 FEET THE A POINT;
THENCE SOUTH 05° 02' 16" EAST, A DISTANCE OF 119.67 FEET TO A POINT;
THENCE SOUTH 74° 57' 30" WEST, A DISTANCE OF 140.00 FEET TO A POINT;
THENCE SOUTH 15° 02' 30" EAST; A DISTANCE OF 35.00 FEET TO A POINT;

THENCE SOUTH 31° 15' 07" WEST, A DISTANCE OF 117.49 FEET TO A POINT;
THENCE SOUTH 78° 58' 00" WEST, A DISTANCE OF 16.00 FEET TO THE EASTERLY
SIDE OF ARLINGTON AVENUE;
THENCE NORTH 11° 02' 00" WEST, ALONG THE EASTERLY SIDE OF ARLINGTON
AVENUE, A DISTANCE OF 139.77 FEET TO A POINT OF CURVATURE;
THENCE NORTHWESTERLY ALONG THE NORTHEASTERLY SIDE OF ARLINGTON
AVENUE AS SAID AVENUE CURVES TO THE LEFT, HAVING A RADIUS OF 655.46
FEET AND AN ARC LENGTH OF 242.17 FEET, TO THE POINT OR PLACE OF
BEGINNING.

PARCEL D (FOR INFORMATION ONLY: BLOCK 5952 LOT 96)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND
BEING IN THE BOROUGH OF BRONX, CITY OF NEW YORK, COUNTY OF BRONX,
STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT IN THE CENTER LINE OF INDEPENDENCE AVENUE AS
SHOWN ON SECTION 26 OF THE FINAL MAPS DISTANT 110 FEET NORTH, AS
MEASURED FROM THE CENTER LINE OF INDEPENDENCE AVENUE, FROM A POINT
WHERE THE NORTHERLY LINE OF LANDS NOW OR FORMERLY OF THE
MONASTERY OF THE VISITATION INTERSECTS THE SAID CENTER LINE OF
INDEPENDENCE AVENUE;
RUNNING THENCE NORTHERLY ALONG SAID CENTER LINE OF INDEPENDENCE
AVENUE, THE FOLLOWING THREE COURSES AND DISTANCES:
(1) NORTH 14° 36' 40" WEST 236.29 FEET TO THE POINT OR CURVE;
(2) ON A CURVE TO THE LEFT HAVING A RADIUS OF 1830 FEET, A DISTANCE OF
277.87 FEET TO THE POINT OF REVERSE CURVE;
(3) THENCE ON A CURVE TO THE RIGHT HAVING A RADIUS OF 730 FEET A
DISTANCE OF 9.38 FEET;
THENCE NORTH 67° 25' 32" EAST, 30 FEET;
THENCE NORTH 75° 46' 25" EAST 224.45 FEET TO THE WESTERLY SIDE OF
ARLINGTON AVENUE;
THENCE ALONG THE WESTERLY SIDE OF ARLINGTON AVENUE IN A SOUTHERLY
DIRECTION THE FOLLOWING FOUR COURSES AND DISTANCES:
(1) ON A CURVE TO THE RIGHT WITH A RADIUS OF 595.46 FEET, 25 FEET;
(2) SOUTH 11° 02' 00" EAST, 220.77 FEET;
(1) ON A CURVE TO THE LEFT WITH A RADIUS OF 360 FEET A DISTANCE OF 241.95
FEET TO POINT OF REVERSE CURVE;
(4) ON A CURVE TO THE RIGHT WITH A RADIUS OF 250 FEET, A DISTANCE OF 52.35
FEET;
THENCE SOUTH 74° 22 ' 57" WEST 306.41 FEET TO THE CENTER LINE OF SAID
INDEPENDENCE AVENUE, AT THE POINT OR PLACE OF BEGINNING.

PARCEL E (FOR INFORMATION ONLY: BLOCK 5953 LOT 240)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND

BEING IN THE BOROUGH AND COUNTY OF THE BRONX, CITY AND STATE OF NEW
YORK BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT THE CORNER FORMED BY THE INTERSECTION ON THE
NORTHEASTERLY SIDE OF ARLINGTON AVENUE (60 FEET WIDE) WITH THE
SOUTHEASTERLY SIDE OF INDEPENDENCE AVENUE (60 FEET WIDE);
RUNNING THENCE SOUTHEASTERLY ALONG THE NORTHEASTERLY SIDE OF
ARLINGTON AVENUE AS SAID AVENUE CURVES TO THE RIGHT HAVING A RADIUS
OF 655.46 FEET AN ARC LENGTH OF 304.05 FEET, TO A POINT
THENCE NORTH 57° 47' 53" EAST, A DISTANCE OF 66.00 FEET TO A POINT;
THENCE NORTH 08° 47' 12" EAST, A DISTANCE OF 109.72 FEET TO A POINT;
THENCE NORTH 49° 23' 35" EAST, A DISTANCE OF 54.27 FEET TO A POINT;
THENCE NORTH 62° 31' 07" EAST, A DISTANCE OF 253.91 FEET TO A POINT;
THENCE NORTH 21° 23' 27" WEST, A DISTANCE OF 14.37 FEET TO A POINT;
THENCE NORTH 25° 11' 52" WEST, A DISTANCE OF 203 .82 FEET TO A POINT;
THENCE NORTH 39° 48' 26" WEST, A DISTANCE OF 25.57 FEET TO A POINT;
THENCE NORTH 59° 02' 39" WEST, A DISTANCE OF 77.86 FEET TO A POINT;
THENCE NORTH 27° 35' 34" EAST, A DISTANCE OF 14.69 FEET TO A POINT;
THENCE NORTH 63° 33' 25" WEST, A DISTANCE OF 45.96 FEET TO A POINT;
THENCE SOUTH 22° 30' 17" WEST, A DISTANCE OF 11.20 FEET TO A POINT;
THENCE SOUTH 85° 22' 30" WEST, A DISTANCE OF 260.11 FEET TO THE
SOUTHEASTERLY SIDE OF INDEPENDENCE AVENUE;
THENCE SOUTH 05° 03' 40" EAST, ALONG THE SOUTHEASTERLY SIDE OF
INDEPENDENCE AVENUE, A DISTANCE OF 8.49 FEET TO A POINT OF CURVATURE;
THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY SIDE OF
INDEPENDENCE AVENUE AS SAID AVENUE CURVES TO THE RIGHT HAVING A
RADIUS OF 460.00 FEET AN ARC LENGTH OF 247.41 FEET, TO A POINT OF REVERSE
CURVATURE;
THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY SIDE OF
INDEPENDENCE AVENUE AS SAID AVENUE CURVES TO THE LEFT HAVING A
RADIUS OF 780.00 FEET AN ARC LENGTH OF 102.85 FEET, TO THE CORNER THE
POINT OR PLACE OF BEGINNING;

PARCEL F (FOR INFORMATION ONLY: BLOCK 5952 LOT 330)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND
BEING IN THE BOROUGH OF BRONX, COUNTY OF BRONX, CITY AND STATE OF
NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT, IN THE CENTER LINE OF INDEPENDENCE AVENUE AS
SHOWN ON SECTION 26 OF FINAL MAPS OF THE BOROUGH OF BRONX, CITY AND
STATE OF NEW YORK, DISTANT 633.54 FEET NORTH, AS MEASURED ALONG THE
CENTER LINE OF INDEPENDENCE AVENUE, FROM A POINT WHERE THE
NORTHERLY LINE OF THE LANDS NOW OR FORMERLY OF THE MONASTERY OF
THE VISITATION, INTERSECTS THE SAID CENTER LINE OF INDEPENDENCE
AVENUE;
RUNNING THENCE ALONG SAID CENTER OF INDEPENDENCE AVENUE ON A

CURVE TO THE RIGHT WITH A RADIUS OF 730 FEET A DISTANCE OF 118.68 FEET;
THENCE NORTH 76° 44' 27" EAST, 30 FEET TO THE EASTERLY SIDE OF
INDEPENDENCE AVENUE;
THENCE ALONG THE EASTERLY SIDE OF INDEPENDENCE AVENUE ON A CURVE
TO THE RIGHT HAVING A RADIUS OF 700 FEET A DISTANCE OF 310.93 FEET TO A
POINT WHERE THE WESTERLY SIDE OF ARLINGTON AVENUE INTERSECTS SAID
EASTERLY SIDE OF INDEPENDENCE AVENUE;
THENCE SOUTHERLY ALONG THE WESTERLY LINE OF ARLINGTON AVENUE ON A
CURVE TO THE RIGHT WITH A RADIUS OF 595.46 FEET (DEED) (595.463 ACTUAL), A
DISTANCE OF 453.41 FEET;
THENCE SOUTH 75° 46' 25" WEST, 224.45 FEET TO THE WESTERLY SIDE OF
INDEPENDENCE AVENUE;
THENCE SOUTH 67° 25' 32" WEST, 30 FEET TO THE CENTER LINE OF
INDEPENDENCE AVENUE, AT THE POINT OR PLACE OF BEGINNING

**451337**    **2018 Nov 26 PM01:32**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Nick Barzelone

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

McCoy & Orta, PC
100 N. Broadway, 28th Floor
Oklahoma City, OK 73102, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 201500028452141 Filedate: 02-SEP-15 | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ ASSIGNMENT (full or partial). Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME  SKYVIEW OWNERS CORPORATION | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME  U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BANC OF AMERICA MERRILL LYNCH COMMERCIAL MORTGAGE INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-KJ22 | | | | |
|---|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS  One Federal Street, 3rd Fl., Mail Code: EX-MA-FED | CITY  Boston | | STATE  MA / POSTAL CODE  02110 | COUNTRY  USA |
| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION  NONE | 7g. ORGANIZATIONAL ID #, if any  NONE ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME  FEDERAL HOME LOAN MORTGAGE CORPORATION | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA  M&O REF.: 7515.057 SKYVIEW ON THE HUDSON (LOAN NO. ▓▓▓▓▓▓) FILE WITH NEW YORK SECRETARY OF STATE

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## Filing Number-201811268536275

**412146**          **2018 Mar 23 PM01:10**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Lisa Vitale 516-576-9000

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Macrolease Corporation
185 Express Street, Suite 100
Plainview, NY 11803, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME  Skyview Owners Corporation | | | | |
| OR  1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS  353 7th Avenue, 5th Floor | CITY  New York | | STATE  NY | POSTAL CODE  10001 | COUNTRY  USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  Corporation | 1f. JURISDICTION OF ORGANIZATION  NY | 1g. ORGANIZATIONAL ID #, if any  ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR  2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME  Macrolease Corporation | | | | |
| OR  3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS  185 Express Street, Suite 100 | CITY  Plainview | | STATE  NY | POSTAL CODE  11803 | COUNTRY  USA |

4. This FINANCING STATEMENT covers the following collateral:
All goods and equipment listed below and which goods and equipment which are now or hereafter a part of Lease
Agreement #29521 dated on or about 3/23/18 between Debtor as Lessee and Secured Party as Lessor.

Equipment Location: 5701 Arlington Avenue, Bronx, NY 10471

Vendor: Gym Source
Fcrs[4]Cybex 770T Treadmill 115V Commercial w/Embedded Screens

Plus all parts, attachments, appendages, substitutions and modifications thereon.

| 5. ALTERNATIVE DESIGNATION [if applicable] | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(s) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-201803238126362**

**424375**    **2018 Jun 04 AM11:18**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Lisa Vitale 516-576-8989

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Macrolease Corporation
185 Express Street, Suite 190
Plainview, NY 11803, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 201803238126362 Filedate: 23-MAR-18 | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

2. [ ] TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] ASSIGNMENT (full or partial). Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    [ ] DELETE name. Give record name to be deleted in item 6a or 6b.    [ ] ADD name. Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME  Skyview Owners Corporation | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | [ ] NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral [ ] deleted  or [ ] added, or give entire [X] restated collateral description, or describe collateral [ ] assigned.
See Collateral Attachment

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME  MACROLEASE CORPORATION | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## Filing Number-201806048253420

Equipment restated by a supplemental collateral including equipment part of Lease dated 3/23/18 between Debtor as Lessee and Secured Party as Lessor.

Equipment Location: 5701 Arlington Avenue, Bronx, NY 10471

Vendor: Gym Source

Four(4)Cybex 770T Treadmill 115V Commercial w/Embedded Screens S/N: M0816-770TX054N, M0816-

770TX049N, M0721-770TX069N, M0714-770TX072N

One(1)Kit – Hampton Med Balls w/10 Ball Rack

One(1)Rack – Kettle Bell

Two(2)Kettle Bell 10/G-50/G Kit No Rack

Two(2)Stair Master Gauntlet Base S/N: SM5250L18040119, SM5250L18040119

Two(2)Stair Master Embedded TV for Gauntlet S/N: ED0313D18062660, ED0313D18112701

Plus all parts, attachments, appendages, substitutions and modifications thereon.

105212

2016 MAY 2:00

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. SEND ACKNOWLEDGMENT TO: (Name and Address)  35558 - CAPITAL ONE C/O CASE

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

63942796

NYNY

File with: Secretary of State, NY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
SKYVIEW OWNERS CORPORATION

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5701 Arlington Avenue, Attn: Steven Chait | Riverdale | NY | 10471 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | CORPORATION | NY | ☒ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
FEDERAL HOME LOAN MORTGAGE CORPORATION

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8200 JONES BRANCH DRIVE | MCLEAN | VA | 22102 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See Exhibit B to Financing Statement annexed hereto and made a part hereof.

| 5. ALTERNATIVE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum  [if applicable]  | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional]  | ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA
63942796 · · · 1916-421 · · · Schaeffer, Cassia

FILING OFFICE COPY - NATIONAL UCC FINANCING  **FILING NUMBER: 201805030204540**  Recorded by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

105212    2010 MAY -3

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| 9a. ORGANIZATION'S NAME |
|---|
| SKYVIEW OWNERS CORPORATION |

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

10. MISCELLANEOUS:    61342796-NY-0    35658  CAPITAL ONE C/O CASS
CAPITAL ONE MULTIFAMILY FINANCE, LLC

File with: Secretary of State, NY    1910-421   Schaeffer, Cassia          THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

| 11a. ORGANIZATION'S NAME |
|---|

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

12. [ ] ADDITIONAL SECURED PARTY'S or [X] ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME |
|---|
| CAPITAL ONE MULTIFAMILY FINANCE, LLC |

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2 Bethesda Metro Center, 10th Floor, Attention: Asset Management | Bethesda | MD | 20814 | USA |

13. This FINANCING STATEMENT covers [ ] timber to be cut or [ ] as-extracted collateral, or is filed as a [ ] fixture filing.

14. Description of real estate:

16. Additional Collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a [ ] Trust or [ ] Trustee acting with respect to property held in trust or [ ] Decedent's Estate

18. Check only if applicable and check only one box.
[ ] Debtor is a TRANSMITTING UTILITY
[ ] Filed in connection with a Manufactured-Home Transaction
[ ] Filed in connection with a Public-Finance Transaction

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

451335          2018 Nov 26 PM01:29

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Nick Barzelone

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

McCoy & Orta, PC
100 N. Broadway, 28th Floor
Oklahoma City, OK 73102, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #  201805030204540 Filedate: 03-MAY-18 | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ ASSIGNMENT (full or partial). Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME  SKYVIEW OWNERS CORPORATION | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME  U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BANC OF AMERICA MERRILL LYNCH COMMERCIAL MORTGAGE INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-KJ22 | | | | |
|---|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS  One Federal Street, 3rd Fl., Mail Code EX-MA-FED | CITY  Boston | | STATE MA  POSTAL CODE 02110 | COUNTRY USA |
| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION  NONE | 7g. ORGANIZATIONAL ID #, if any NONE  ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME  FEDERAL HOME LOAN MORTGAGE CORPORATION | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA  M&O REF.: 7515.056 SKYVIEW ON THE HUDSON (3RD LIEN) [LOAN NO. ████████] FILE WITH NY SOS

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## Filing Number-201811268536251

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2006111400394001001EFB30

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 5 |
|---|---|---|
| **Document ID: 2006111400394001** | Document Date: 11-09-2006 | Preparation Date: 11-14-2006 |
| Document Type: INITIAL COOP UCC1 | | COOPERATIVE |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| T I T L E S E R V - PICK UP | T I T L E S E R V - PICK UP |
| 88 FROEHLICH FARM BLVD | 88 FROEHLICH FARM BLVD |
| AS AGENT FOR STEWART TITLE | AS AGENT FOR STEWART TITLE |
| WOODBURY, NY 11797 | WOODBURY, NY 11797 |
| 516-719-4200 | 516-719-4200 |
| 2432094 | 2432094 |

## PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BRONX | 5953 | 38 | Entire Lot | #19A | 5700 ARLINGTON AVENUE |

Property Type: SINGLE RESIDENTIAL COOP UNIT

## CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel _____ Page _____ or File Number_____

## PARTIES

| DEBTOR: | SECURED PARTY: |
|---|---|
| VALERIE GREIG | CITIBANK, N.A. |
| 5700 ARLINGTON AVENUE, 19A | 1000 TECHNOLOGY DRIVE, MAILSTATION 390 |
| BRONX, NY 10471 | O'FALLON, MO 63368-2240 |

x  Additional Parties Listed on Continuation Page

## FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed    11-29-2006 12:24 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 40.00 | | | 2006000659000 |
| Affidavit Fee: | $ | 0.00 | | | |

**City Register Official Signature**

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| | ████████████████ |
| | 2006111400394001001CF9B0 |

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 5 |
|---|---|---|
| Document ID: 2006111400394001 | Document Date: 11-09-2006 | Preparation Date: 11-14-2006 |
| Document Type: INITIAL COOP UCC1 | | |

**PARTIES**
**DEBTOR:**
RICHARD SABO
5700 ARLINGTON AVENUE, 19A
BRONX, NY 10471

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

TITLESERV, INC.
88 FROEHLICH FARM BLVD.
WOODBURY, NY 11797

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

1a. ORGANIZATION'S NAME

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| GREIG | VALERIE | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5700 ARLINGTON AVENUE #19A | BRONX | NY | 10471 | USA |

| 1d. TAX ID#  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one (2a or 2b) – do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| SABO | RICHARD | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5700 ARLINGTON AVENUE #19A | BRONX | NY | 10471 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE or ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME

CITIBANK, N.A.

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1000 TECHNOLOGY DRIVE MAILSTATION 390 | O'FALLON | MO | 63368-2240 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ALL OF THE DEBTOR(S) RIGHT, TITLE AND INTEREST IN AND TO 348 SHARES OF CAPITAL STOCK OF SKYVIEW OWNERS CORPORATION ("THE SHARES") ALLOCATED TO APARTMENT #19A ("THE APARTMENT") IN THE BUILDING KNOWN AS 5700 ARLINGTON AVENUE #19A, BRONX, NY 10471, AND ALL OF THE DEBTOR(S) RIGHT, TITLE AND INTEREST IN THAT CERTAIN PROPRIETARY LEASE BETWEEN SKYVIEW OWNERS CORPORATION, AS LESSOR AND DEBTOR(S), AS LESSEE, (THE "LEASE"), AND ANY SUBSTITUTE, REPLACEMENT AND ADDITIONAL SHARES AND ANY AMENDMENTS TO AND EXTENSIONS OR REPLACEMENTS OF THE LEASE.

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach addendum (if applicable)
7. Check REQUEST SEARCH REPORT(S) on Debtor(s) (optional) ☐ All debtors ☐ debtor 1 ☐ debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY – UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# UCC FINANCING STATEMENT COOPERATIVE ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME + PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

TITLESERV, INC.

88 FROEHLICH FARM BLVD.

WOODBURY, NY 11797

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY.

| 19. Complete EITHER 19a OR 19b | 19a. This COOPERATIVE ADDENDUM ☒ accompanies a FINANCING STATEMENT | 19b. File Number is assigned to the initial FINANCING STATEMENT |
|---|---|---|

20. FIRST DEBTOR OF RECORD: (Complete either 20a or 20b, but not both)

20a. ORGANIZATION'S NAME

| 20b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| GREIG | VALERIE | | |

21. FIRST SECURED PARTY OF RECORD: (Complete either 21a or 21b, but not both)

21a. ORGANIZATION'S NAME

CITIBANK, N.A.

| 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

22. This COOPERATIVE ADDENDUM covers: (check one.)

☒ One COOPERATIVE INTEREST   ☐ More than one COOPERATIVE INTEREST

23. Unit uses: (Check all that apply.)

☒ Residential   ☐ Commercial   ☐ Parking

☐ Storage   ☐ Other (if checked, complete 23a)

23a. Specify other Unit use(s):

**IMPORTANT:**

This COOPERATIVE ADDENDUM is for use when the collateral includes a COOPERATIVE INTEREST.

Only as to collateral which is a COOPERATIVE INTEREST, but not as to other collateral, the initial FINANCING STATEMENT to which this COOPERATIVE ADDENDUM relates shall be effective for 50 years from the date of filing the initial FINANCING STATEMENT.

24. COOPERATIVE UNIT REAL PROPERTY FILING DATA:

24a. ADDRESS NUMBER and STREET: (one only)

5700 ARLINGTON AVENUE #19A

24b. COMMUNITY (eg., City, Town, or Borough):

BRONX, NY 10471

24c. COUNTY:

BRONX

24d. DISTRICT:

24e. SECTION:

24f. BLOCK:

5953

24g. LOT:

38

24h. UNIT NUMBER(S) OR DESIGNATION(S):

#19A

25. Name of the COOPERATIVE ORGANIZATION:

SKYVIEW OWNERS CORPORATION

26. Complete if applicable. (If checked, complete 26a.)

☐ The purpose of this COOPERATIVE ADDENDUM is to SUBORDINATE this security interest to another security interest in the same COOPERATIVE INTEREST

26a. FILE NUMBER

27. Check if applicable.

☒ The security agreement provides for FUTURE ADVANCES

28. MISCELLANEOUS

NEW YORK UCC FINANCING STATEMENT COOPERATIVE ADDENDUM (FORM UCC1C1AD) (REV. 6/14/01)

## UCC-1 FILING STATEMENT RIDER - CO-OP
## EQUITY SOURCE ACCOUNT

Citibank, N.A.                                                                    New York

### UCC-1 FILING STATEMENT RIDER CO-OP

Made by **VALERIE GREIG and RICHARD SABO** as Debtor(s) to Citibank, N.A., as Secured Party

Dated: **11/09/2006**

All of the Debtor(s) right(s), title and interest in and to **348** shares of capital stock of **SKYVIEW OWNERS CORPORATION** (the "Shares") allocated to Apartment **19A** (the "Apartment") in the building known as **5700 ARLINGTON AVE, BRONX, NY  10471-1503** and all of Debtor(s) right(s), title and interest in that certain proprietary lease dated **03/18/2003** between **SKYVIEW OWNERS CORPORATION**, as Lessor and **VALERIE GREIG and RICHARD SABO**, as Debtor(s) and Lessee ("the Lessee"), and any substitute, replacement and additional Shares and any amendments to and extensions or replacements of the Lease and all proceeds of any of the foregoing whether now owned or hereafter acquired.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2014011000228001002E232D

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

| Document ID: 2014011000228001 | Document Date: 01-09-2014 | Preparation Date: 01-10-2014 |
|---|---|---|
| Document Type: INITIAL COOP UCC1 | | COOPERATIVE WITH ADDENDUM |
| Document Page Count: 2 | Non-Standard Form Size | |

**PRESENTER:**
NYC COMMISSIONER OF SOCIAL SERVICES
250 CHURCH ST., 7TH FLOOR
NYC, NY 10013
212-274-5035
HARVEYD@HRA.NYC.GOV

**RETURN TO:**
NYC COMMISSIONER OF SOCIAL SERVICES
250 CHURCH ST., 7TH FLOOR
NYC, NY 10013
212-274-5035
HARVEYD@HRA.NYC.GOV

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 38 | Entire Lot  19A | 5700 ARLINGTON AVENUE |

Property Type: SINGLE RESIDENTIAL COOP UNIT

**CROSS REFERENCE DATA**

CRFN_____ or  DocumentID_____ or _____ Year____ Reel____ Page____ or  File Number_____

**PARTIES**

**DEBTOR:**
VALERIE A. GREIG
5700 ARLINGTON AVENUE APT. 19A
BRONX, NY 10471

**SECURED PARTY:**
NYC COMMISSIONER OF SOCIAL SERVICES
250 CHURCH STREET 7TH FLOOR
NEW YORK, NY 10013

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | | |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed    01-22-2014 12:02 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | EXEMPT | 2014000025814 | | |
| Affidavit Fee: | $ | 0.00 | | | |

*City Register Official Signature*

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME + PHONE OF CONTACT AT FILER (optional)

CYDIA GRAHAM

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Human Resources Administration
Office of Revenue and Investigation
Real Property and Asset Unit
250 Church Street - 7th floor
New York, NY 10013

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXAXT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names.

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| 1b. INDIVIDUAL LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| GREIG | VALERIE | | A | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5700 ARLINGTON AVE | BRONX | NY | 10471 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☒ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names.

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| 2b. INDIVIDUAL LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☒ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME | NYC Commissioner of Social Services | | | |
| 3b. INDIVIDUAL LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 250 Church Street | New York | NY | 10013 | USA |

4. This FINANCING STATEMENT covers the following collateral:

        348    shares      5700 ARLINGTON AVE 19A
                           BRONX NY 10471
                           Block: 05953      Lot: 0038


        Typed Addendum Filed (UCC Financing Statement Co-Op Add)

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors | Debtor 1 | Debtor 2 |

8.  OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV.07/29/98)

## UCC FINANCING STATEMENT COOPERATIVE ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME + PHONE OF CONTACT AT FILER (optional)

CYDIA GRAHAM

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

Human Resources Administration
Office of Revenue and Investigation
Real Property and Asset Unit
250 Church street - 7th floor
New York, NY 10013

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 19. Complete EITHER 19a OR 19b. | 19.A   This COOPERATIVE ADDENDUM [✓] accompanies a FINANCING STATEMENT | 19.B  File number assigned to the initial FINANCING STATEMENT |
|---|---|---|

20. FIRST DEBTOR OF RECORD: (Complete either 20a or 20b, but not both.)

| OR | 20 a ORGANIZATION'S NAME: | | | |
|---|---|---|---|---|
| OR | 20 b INDIVIDUAL LAST NAME: GREIG | FIRST NAME: VALERIE | MIDDLE NAME: A | SUFFIX: |

21. FIRST SECURED PARTY OF RECORD: (Complete either 21a or 21b, but not both.)

| OR | 20 a ORGANIZATION'S NAME: NYC Commissioner of Social Service | | | |
|---|---|---|---|---|
| OR | 20 b INDIVIDUAL LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |

22. This COOPERATIVE ADDENDUM covers (Check one)

[✓] One COOPERATIVE INTEREST    [ ] More than one COOPERATIVE INTEREST

23. Unit uses (Check all that apply):

[✓] Residential    [ ] Commercial    [ ] Parking

[ ] Storage    [ ] Other ( if checked complete 23a)

23a. Specify other Unit use(s):

**IMPORTANT**

This COOPERATIVE AMMENDUM is for use when collateral includes COOPERATIVE INTEREST

Only as to collateral which is a COOPERATIVE INTEREST, but not as other collateral, the initial FINANCING STATEMENT to which this COOPERATIVE ADDENDUM relates shall be effective for 50 years from the date of filing the initial FINANCING STATEMENT

24. COOPERATIVE UNIT REAL PROPERTY FILING DATA:

24a. ADDRESS NUMBER and STREET. (One only)

5700 ARLINGTON AVE

24b. COMMUNITY (e.g. City, Town, Village or Borough)

BRONX

24c. COUNTY

Bronx

24d. DISTRICT:

24e. SECTION:

24f. BLOCK:

05953

24g. LOT:

0038

24h. UNIT NUMBER(S) or DESIGNATION(S):

19A

26. Complete if applicable. (if checked, complete 26a.)

[✓] The purpose of this COOPERATIVE ADDENDUM is to SUBORDINATE this security interest to another security interest in the same COOPERATIVE INTEREST

26a. FILE NUMBER of security interest being given consensual priority:

27. Complete if applicable:

[✓] The security agreement provides to FUTURE ADVANCES.

28. MISCELLANEOUS:

25. Name of THE COOPERATIVE ORGANIZATION:

SKYVIEW OWNERS CORPORATION

NEW YORK UCC FINANCING STATEMENT COOPERATIVE ADDENDUM ( FORM UCCICAd ) ( REV. 6/14/01 )

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

2003052301475001002E07D6

## RECORDING AND ENDORSEMENT COVER PAGE          PAGE 1 OF 4

| | | |
|---|---|---|
| Document ID: 2003052301475001 | Document Date: 02-28-2003 | Preparation Date: 06-30-2003 |
| Document Type: INITIAL COOP UCC1 | | COOPERATIVE |
| Document Page Count: 2 | | |

**PRESENTER:**
SPM TITLE AGENCY
333 EARLE OVINGTON BLVD
UNIONDALE, NY 11553
516-222-4590

**RETURN TO:**
MOBERG & ASSOCIATES
333 EARLE OVINGTON BLVD.
UNIONDALE, NY 11553

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 38 | Entire Lot | 5700 ARLINGTON AVENUE |

**Property Type:** DWELLING ONLY - 1 FAMILY

## CROSS REFERENCE DATA

CRFN _____ or Document ID _____ or Year _____ Reel ____ Page _____ or File Number _____

## PARTIES

**DEBTOR:**
VALERIE GRIEG
5700 ARLINGTON AVENUE
BRONX, NY 10471

**SECURED PARTY:**
CITIMORTGAGE INC.
13736 RIVERPORT DRIVE, SUITE 900
MARYLAND HEIGHTS, NY 63043

☒ Additional Parties Listed on Continuation Page

## FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 40.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | | |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed          05-19-2003 11:09
City Register File No.(CRFN):
2003000304936

_John J. Farmer_

City Register Official Signature

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| | 2003052301475001002C0556 |

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 4 |
|---|---|---|
| Document ID: 2003052301475001 | Document Date: 02-28-2003 | Preparation Date: 06-30-2003 |
| Document Type: INITIAL COOP UCC1 | | |

**PARTIES**
**DEBTOR:**
RICHARD SABO
5700 ARLINGTON AVENUE
BRONX, NY 10471

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Moberg & Associates  516-222-7474

**B. SEND ACKNOWLEDGEMENT TO: (Name and Address)**

MOBERG & ASSOCIATES
333 Earle Ovington Blvd., Suite 103
Uniondale, NY 11553

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 1b. INDIVIDUAL'S LAST NAME<br>GREIG | FIRST NAME<br>Valerie | MIDDLE NAME | SUFFIX |
| | 1c. MAILING ADDRESS<br>5700 Arlington Avenue, | CITY<br>Bronx | STATE<br>NY | POSTAL CODE<br>10471 | COUNTRY<br>USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE<br>ORGANIZATION<br>DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any<br>☐ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| | 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S LAST NAME<br>SAID, | FIRST NAME<br>Richard | MIDDLE NAME | SUFFIX |
| | 2c. MAILING ADDRESS<br>5700 Arlington Avenue, | CITY<br>Bronx | STATE<br>NY | POSTAL CODE<br>10471 | COUNTRY<br>USA |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE<br>ORGANIZATION<br>DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any<br>☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| | 3a. ORGANIZATION'S NAME<br>CITIMORTGAGE, INC. | | | |
|---|---|---|---|---|
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | 3c. MAILING ADDRESS<br>13736 Riverport Drive, Suite 900 | CITY<br>Maryland Heights | STATE<br>MO | POSTAL CODE<br>63043 | COUNTRY<br>USA |

**4. This FINANCING STATEMENT covers the following collateral:**

The Proprietary Lease for Unit 19A, 5700 Arlington Ave., Bronx, NY and any and all amendments thereto together with Three-Hundred-Forty-Eight (348) Shares of Capital Stock of Skyview Owners Corporation. Effective until terminated.

**5. ALTERNATIVE DESIGNATION [if applicable]** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG.LIEN ☐ ON-UCC FILING

**6.** ☒ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

## UCC FINANCING STATEMENT COOPERATIVE ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME + PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 19. Complete EITHER 19a or 19b. | 19a. [ ] This COOPERATIVE ADDENDUM accompanies a FINANCING STATEMENT. | 19b. File Number assigned to the initial FINANCING STATEMENT: |
|---|---|---|

20. FIRST DEBTOR OF RECORD: (Complete either 20a or 20b, but not both.)

20a. ORGANIZATION'S NAME

OR

| 20b. INDIVIDUAL'S LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |
|---|---|---|---|
| GREIG | Valerie | | |

21. FIRST SECURED PARTY OF RECORD: (Complete either 21a or 21b, but not both.)

21a. ORGANIZATION'S NAME

OR

CITIMORTGAGE INC.

| 21b. INDIVIDUAL'S LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |
|---|---|---|---|

22. This COOPERATIVE ADDENDUM covers: (Check one.)

[X] One COOPERATIVE INTEREST [ ] More than one COOPERATIVE INTEREST

23. Unit uses: (Check all that apply.)

[X] Residential [ ] Commercial [ ] Parking

[ ] Storage [ ] Other (If checked, complete 23b.)

23a. Specify other Unit use(s):

**IMPORTANT:**

This COOPERATIVE ADDENDUM is for use when the collateral includes a COOPERATIVE INTEREST.

Only as to collateral which is a COOPERATIVE INTEREST, but not as to other collateral, the initial FINANCING STATEMENT to which this COOPERATIVE ADDENDUM relates shall be effective for 50 years from the date of filing the initial FINANCING STATEMENT.

24. COOPERATIVE UNIT REAL PROPERTY FILING DATA:

24a. ADDRESS NUMBER and STREET: (One only.)

5700 Arlington Ave.

24b. COMMUNITY (e.g., City, Town, Village or Borough):

Bronx

24c. COUNTY:

BRONX

24d. DISTRICT:

24e. SECTION:

24f. BLOCK:

5957

24g. LOT:

38

24h. UNIT NUMBER(S) or DESIGNATION(S):

19A

26. Complete if applicable. (If checked, complete 26a.)

[ ] The purpose of this COOPERATIVE ADDENDUM is to SUBORDINATE this security interest to another security interest in the same COOPERATIVE INTEREST.

26a. FILE NUMBER of security interest being given consensual priority:

27. Check if Applicable.

[ ] The security agreement provides for FUTURE ADVANCES.

28. MISCELLANEOUS:

25. Name of the COOPERATIVE ORGANIZATION:

SKYVIEW OWNERS CORPORATION

NEW YORK UCC FINANCING STATEMENT COOPERATIVE ADDENDUM (FORM UCC1CAd) (REV. 6/14/01)

## UCC - 1 FILING STATEMENT RIDER - Co-Op

*Date:* **February 28 2003**

*Application No.:* ███████████

*Name of Applicant(s):* **RICHARD SABO and VALERIE GREIG**


All of the Debtor(s) right, title and interest in and to **348** shares of capital stock of **SKYVIEW OWNERS CORPORATION** (the "Shares") allocated to Apartment **19A** (the "Apartment") in the building known as **5700 ARLINGTON AVE., BRONX, NEW YORK** and all of the Debtor(s) right, title and interest in that certain proprietary lease between of **SKYVIEW OWNERS CORPORATION** as Lessor and Debtor(s), as Lessee, (the "Lease"), and any substitute, replacement and additional Shares and any amendments to and extensions or replacements of the Lease. This financing statement shall be effective until termination.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2014022600218001001EE770

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 5 |
|---|---|---|
| Document ID: 2014022600218001 | Document Date: 08-19-2003 | Preparation Date: 02-26-2014 |
| Document Type: UCC3 ASSIGNMENT | | COOPERATIVE |
| Document Page Count: 3 | | |

**PRESENTER:**
NATIONWIDE TITLE CLEARING
2100 ALT 19 NORTH
PALM HARBOR, FL 34683
727-771-4000
LAUREN_LIMBERICK@NWTC.COM

**RETURN TO:**
NATIONWIDE TITLE CLEARING
2100 ALT 19 NORTH
PALM HARBOR, FL 34683
727-771-4000
LAUREN_LIMBERICK@NWTC.COM

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 38 | Entire Lot   19A | 5700 ARLINGTON AVENUE |

Property Type: SINGLE RESIDENTIAL COOP UNIT

**CROSS REFERENCE DATA**

CRFN: 2003000304936

**PARTIES**

**DEBTOR:**
VALERIE GREIG
5700 ARLINGTON AVENUE, UNIT: 19A
BRONX, NY 10471

**SECURED PARTY:**
CITIMORTGAGE INC
13736 RIVENPORT DRIVE, SUITE 900
MARYLAND HEIGHTS, NY 63043

☒ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 40.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK**
Recorded/Filed      03-12-2014 16:56
City Register File No.(CRFN):
2014000086695

*Annette M. Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2014022600218001001C1EJF0

| RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION) | PAGE 2 OF 5 |
|---|---|

| Document ID: 2014022600218001 | Document Date: 08-19-2003 | Preparation Date: 02-26-2014 |
|---|---|---|
| Document Type: UCC3 ASSIGNMENT | | |

**PARTIES**

**DEBTOR:**
RICAHRD SABO
5700 ARLINGTON AVENUE, UNIT: 19A
BRONX, NY 10471

**PARTIES**

**NEW SECURED PARTY:**
FEDERAL NATIONAL MORTGAGE ASSOCIATION
14221 DALLAS PARKWAY, SUITE 100
DALLAS, TX 75254

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

E. Lance  (727) 777-4000 ext 275

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Nationwide Title Clearing
2100 Alt 19 North
Palm Harbor, FL 34683
2000505327 CMOAV NY Bronx
Section:  Block: 5953 Lot: 38 Unit: 19A

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
Bk:  Pg:  Instr#: 2003000304936 Date: 08/19/2003

1b. This FINANCING STATEMENT AMENDMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. [X]

2. [ ] TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [X] ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects [ ] Debtor or [x] Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.  [ ] DELETE name: Give record name to be deleted in item 6a or 6b.  [ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| GREIG | VALERIE | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR FEDERAL NATIONAL MORTGAGE ASSOCIATION | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 14221 DALLAS PARKWAY, SUITE 100 | DALLAS | TX | 75254 | USA |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | [X] NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| CITIMORTGAGE INC | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

State: NY County: Bronx Debtor: VALERIE GREIG

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)
  Bk: Pg:  Instr#: 2003000304936 Date: 06/19/2003

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

| 12a. ORGANIZATION'S NAME | | |
|---|---|---|
| CITIMORTGAGE INC | | |

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Record Owner Name:
SKYVIEW OWNERS CORPORATION
5700 ARLINGTON AVE.
BRONX, NY 10471 - USA

Additional Debtor
RICAHRD SADO
5700 ARLINGTON AVENUE
BRONX, NY 10471

# UCC FINANCING STATEMENT AMENDMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

**19. INITIAL FINANCING STATEMENT FILE NUMBER:** Same as item 1a on Amendment form
Bk: Pg: Instr#: 2003000304936 Date: 08/19/2003

**20. NAME OF PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

| | |
|---|---|
| 20a. ORGANIZATION'S NAME | CITIMORTGAGE INC |
| OR  20b. INDIVIDUAL'S SURNAME | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**21. ADDITIONAL DEBTOR'S NAME:** (Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  21b. INDIVIDUAL'S SURNAME  SABO | FIRST PERSONAL NAME  RICAHRD | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS  5700 ARLINGTON AVENUE | CITY  BRONX | STATE  NY | POSTAL CODE  10471 | COUNTRY  USA |

**22. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (22a or 22b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**23. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (23a or 23b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**24.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (24a or 24b)

| 24a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  24b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 24c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**25.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (25a or 25b)

| 25a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  25b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 25c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**26. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDITIONAL PARTY (Form UCC3AP) (Rev. 08/22/11)

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2019060500453001001E1A75

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2019060500453001 | Document Date: 06-05-2019 | Preparation Date: 06-05-2019 |
| Document Type: UCC3 ASSIGNMENT | | COOPERATIVE WITH ADDENDUM |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| DAVID A. GALLO & ASSOCIATES LLP<br>99 POWERHOUSE ROAD<br>FIRST FLOOR<br>ROSLYN HEIGHTS, NY 11577<br>516-277-6900<br>JSOTO@MSGRB.COM | DAVID A. GALLO & ASSOCIATES LLP<br>99 POWERHOUSE ROAD<br>FIRST FLOOR<br>ROSLYN HEIGHTS, NY 11577<br>516-277-6900<br>JSOTO@MSGRB.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5953 | 38 | Entire Lot | 19A | 5700 ARLINGTON AVENUE |

Property Type: SINGLE RESIDENTIAL COOP UNIT

### CROSS REFERENCE DATA

CRFN: 2003000304936
☒ Additional Cross References on Continuation Page

### PARTIES

| DEBTOR: | SECURED PARTY: |
|---|---|
| VALERIE GREIG<br>5700 ARLINGTON AVENUE, APT. 19A<br>BRONX, NY 10471 | FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>14221 DALLAS PARKWAY, SUITE 100<br>DALLAS, TX 75254 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 40.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed      06-05-2019 13:16
City Register File No.(CRFN):
2019000175190

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2019060500453001001C18F5

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 4 |
|---|---|

**Document ID: 2019060500453001**     Document Date: 06-05-2019          Preparation Date: 06-05-2019
Document Type: UCC3 ASSIGNMENT

**CROSS REFERENCE DATA**
**CRFN:** 2014000086695

**PARTIES**

**DEBTOR:**
RICHARD SABO
5700 ARLINGTON AVENUE, APT. 19A
BRONX, NY 10471

**PARTIES**

**NEW SECURED PARTY:**
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
CRFN 2003000304946, Filed 08-19-2003

1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☑ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME

6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME
Nationstar Mortgage LLC d/b/a Mr. Cooper

7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 350 Highland Drive | Lewisville | TX | 75067 | USA |

7d. SEE INSTRUCTIONS    ADD'L INFO RE | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any
Not Applicable      ORGANIZATION DEBTOR | | | ☐ NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
9a. ORGANIZATION'S NAME
Federal National Mortgage Association

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

CRE_____ Filed 08-19-2003

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)
12a. ORGANIZATION'S NAME

Federal National Mortgage Association

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Debtors: Valerie Greig and Richard Sabo
Property: 5700 ARLINGTON AVE, APT 19A, BRONX, NY 10471
Block 5953, Lot 38

Cooperative: Skyview Owners Corporation

Collateral: All of the Debtor(s) right, title and interest in and to 348 Shares of capital stock of Skyview Owners Corporation and the proprietary lease allocated to Apartment 19A in the building known as 700 ARLINGTON AVE, BRONX, NY 10471 and any substitute, replacement or amended lease or stock certificate.

Building: 5700 Arlington Avenue
Apt. No.: *19A*
Shares: *348*

## SKYVIEW OWNERS CORPORATION,

Lessor,

### TO

### 5700-5800-5900 ARLINGTON AVENUE ASSOCIATES

Lessee.

---

### PROPRIETARY LEASE

---

*Prepared by:*

**SCHULTE ROTH & ZABEL**
**900 THIRD AVENUE**
**NEW YORK, NEW YORK 10022**

|  | Page | Par. |
|---|---|---|
| Abatement of rent— | | |
|    Damage to apartment | 3 | 4(b) |
|    Not authorized—no defense | 5 | 12 |
| Additional rent payable as rent | 1 | 1(a) |
| Air Conditioning | 3 | 3 |
| Alterations by Lessee— | | |
|    Consent required | 10 | 21(a) |
|    Mortgagee's requirements | 9 | 18(d) |
| Amendment of lease by shareholders | 4 | 6 |
| Annual reports by Lessor | 4 | 5 |
| "Apartment" defined | 1 | |
| Apartment— | | |
|    Surrender on lease termination | 11 | 21(c) |
|    Use as dwelling—guests | 6 | 14 |
| Assignment of lease— | | |
|    Conditions to be complied with | 7 | 16(a) |
|    Death of Lessee | 8 | 16(b) |
|    Fees—legal and other expenses | 7 | 16(a) |
|    Shareholders' and Directors' consent—discretion | 8 | 16(c) |
|    Release of Lessee | 8 | 16(d) |
|    Restrictions on | 15 | 31(c) |
|    Statement that lease in effect | 8 | 16(f) |
| Assignment of Lessor's rights against occupant | 5 | 8 |
| Attorneys' fees and other expenses— | | |
|    Action on Lessee's default | 13 | 28 |
|    Assignment of lease | 7 | 16(a) |
| Automobiles— Lessor not responsible for damage | 14 | 29(c) |
| Balcony—use and maintenance | 4 | 7 |
| Bankruptcy of Lessee—termination of lease | 15 | 31(b) |
| Books of account—inspection | 4 | 5 |
| Buildings, damage to | 3 | 4(a) |
| Cancellation of lease by Lessee— | | |
|    By 80% of shares | 19 | 36(b) |
|    Delivery of possession | 18 | 35(b) |
|    Deposits required | 18 | 35(a) |
|    Effective date | 19 | 35(d) |
|    "Escape clause" | 18 | 35(a) |
|    Extension | 19 | 36(a) |
|    Permission to show premises | 18 | 35(c) |

i

|  | **Page** | **Par.** |
|---|---|---|
| Removal of fixtures | 18 | 35(b) |
| Rights on Lessee's default | 19 | 35(e) |
| Cancellation of prior lease and tenancy | 5 | 9 |
| Cash requirements of Lessor— | | |
| Defined (and supplemented) | 2,25 | 1(c),49 |
| Failure to fix | 2 | 1(g) |
| Change in form of lease | 4 | 6 |
| Changes in lease—not orally | 26 | 55 |
| Charges for gas and electricity | 25 | 47 |
| Changes in provisions of lease | 4 | 6 |
| Condemnation | 16 | 31(j) |
| Continuance of cooperative | 19 | 37 |
| Cooperation by Lessee | 12 | 24 |
| Counterparts | 26 | 53 |
| Covenants—to whom applicable | 24 | 41 |
| Damage to buildings— | | |
| Repair by Lessor | 3 | 4(a) |
| Abatement of rent | 3 | 4(b) |
| Expiration of lease | 3 | 4(c) |
| Waiver of subrogation | 4 | 4(d) |
| Death of Lessee— | | |
| Assignment of lease | 8 | 16(b) |
| Bankruptcy exception | 15 | 31(b) |
| Default by Lessee— | | |
| Covenants—default in performance | 15 | 31(e) |
| Lessor's rights | 16 | 32(a) |
| Lessor's right to remedy | 9 | 19 |
| Reimbursement of Lessor's expenses | 13 | 28 |
| Sale of Lessee's shares | 17 | 32(c) |
| Subtenants—collection of rent | 17 | 32(b) |
| Demised premises | 1 | |
| Directors— | | |
| Authority not exercisable by others | 2 | 1(d) |
| Determination of cash requirements conclusive | 2 | 1(c) |
| Failure to fix cash requirements | 2 | 1(g) |
| Discrimination prohibited | 25 | 48 |
| Electricity | 25 | 47 |
| Eligible Senior Citizens and Eligible Disabled Persons— | | |
| Special Rights of | 25 | 50 |

|  | Page | Par. |
|---|---|---|
| Entry — apartment and storage space | 12 | 25 |
| Equipment and appliances — remedying defects | 9 | 18(c) |
| "Escape clause" — cancellation of lease by Lessee | 18 | 35(a) |
| Expenses of Lessor on Lessee's default | 13 | 28 |
| Expiration of lease — fixed date | 1 | |
| Expiration of lease — conditions | 14 | 31 |
| Fire insurance — rate increase, Lessee's use | 10 | 20 |
| Fire or other cause — | | |
| Damage to buildings | 3 | 4(a) |
| Abatement of rent | 3 | 4(b) |
| Expiration of lease | 3 | 4(c) |
| Fixtures — removal by Lessee | 10 | 21(b) |
| Foreclosure of mortgage — receiver | 23 | 40 |
| Gas | 25 | 47 |
| Governing law | 26 | 55 |
| Guests — in apartment | 6 | 14 |
| House rules — | | |
| Existing | 29 | |
| Amendment — compliance covenant | 6 | 13 |
| Immunities of Lessor | 13 | 29(a) |
| Indemnity — by Lessee | 5 | 11 |
| Injunction — by Lessor | 24 | 43 |
| Insurance — | | |
| Increase in rates | 10 | 20 |
| Waiver of subrogation, effects | 4 | 4(d) |
| Jury trial waiver | 24 | 42 |
| Key — Lessee to furnish | 12 | 25 |
| Laundry and washing machines | 13 | 29(b) |
| Lease — | | |
| Cancellation by Lessee — "escape clause" | 18 | 35(a) |
| Cancellation by Lessee — extension | 19 | 36(a) |
| Cancellation by 80% of shares | 19 | 36(b) |
| Changes in provisions | 4 | 6 |
| Existing lease superseded by | 5 | 9 |
| Expiration — see "Termination of Lease" | | |
| Form — all leases | 4 | 6 |
| Partial invalidity, effect | 26 | 51 |
| Pledge by Lessee | 8 | 17 |
| Lessee more than one person | 24 | 44 |

|                                                              | Page | Par. |
|--------------------------------------------------------------|------|------|
| Maintenance (rent)—see "Rent"                                |      |      |
| Maintenance of buildings by Lessor— Directors' powers        | 3    | 3    |
| Marginal heading not part of lease                           | 26   | 52   |
| Mechanic's lien                                              | 12   | 23   |
| Mortgage—                                                     |      |      |
| Foreclosure and receiver                                      | 23   | 40   |
| Provisions as to alterations                                 | 9    | 18(d)|
| Subordination clause                                         | 11   | 22   |
| Mortgage payments as "Paid-in-Surplus"                       | 2    | 1(f) |
| No discrimination                                            | 25   | 48   |
| Noises prohibited                                            | 9    | 18(b)|
| Notice to Lessor of default                                  | 24   | 45   |
| Notices                                                      | 13   | 27   |
| Objectionable conduct—                                       |      |      |
| see "Termination of Lease"                                   |      |      |
| Occupancy by unauthorized person                             | 15   | 31(c)|
| Odors prohibited                                             | 9    | 18(b)|
| Paid-in-Surplus                                              | 2    | 1(f) |
| Partial invalidity of lease—effect                           | 26   | 51   |
| Penthouse—use and maintenance                                | 4    | 7    |
| Pledge of shares and lease by Lessee                         | 8    | 17   |
| Purchase for investment or resale                            | 26   | 54   |
| Quiet enjoyment                                              | 5    | 10   |
| Remedies of Lessor—                                          |      |      |
| Additional remedies                                          | 24   | 43   |
| Default by Lessee                                            | 16   | 32(a)|
| Expenses recoverable                                         | 13   | 28   |
| Lessor's right to remedy defaults                            | 9    | 19   |
| Rent (Maintenance)—                                          |      |      |
| Calculation of                                               | 1    | 1(a) |
| Default—Lessor's rights                                       | 16   | 32(a)|
| Failure of Directors to fix                                  | 2    | 1(g) |
| Issuance of additional shares                                | 2    | 1(e) |
| No abatement or defense                                      | 5    | 12   |
| Payment monthly                                              | 1    | 1(a) |
| Subtenants, collection from                                  | 17   | 32(b)|
| Repairs—                                                      |      |      |
| Lessee's obligations                                         | 8    | 18(a)|
| Lessor's obligations                                         | 2    | 2    |

|  | Page | Par. |
|---|---|---|
| Report — annual, Lessor to furnish | 4 | 5 |
| Roof — use and maintenance | 4 | 7 |
| Secured Party — rights | 21 | 39 |
| Services — Lessor's obligations | 3 | 3 |
| Shareholders Agreement | 26 | 53 |
| Shares — |  |  |
| Accompanying lease, specified | 1 | 1(b) |
| Additional shares issued | 2 | 1(e) |
| All shares transferred on assignment | 7 | 16(a) |
| Non-interference with marketing unsold shares | 21 | 38(f) |
| Subletting apartment and sale of shares | 20 | 38(b) |
| Surrender on lease termination | 17 | 32(c) |
| Transfer taxes | 18 | 35(a) |
| Unity of shares and lease | 24 | 46 |
| Storage space | 13 | 29(b) |
| Subletting — |  |  |
| Consent required | 6 | 15 |
| Further subletting, new consent | 8 | 16(e) |
| Rent — collection from subtenants | 17 | 32(b) |
| Violation of restrictions | 15 | 31(c) |
| Subordination to mortgages, ground leases | 11 | 22 |
| Subrogation waiver — Lessor's obligations | 4 | 4(d) |
| Surrender of apartment — |  |  |
| Lease expiration | 11 | 21(c) |
| Lease termination | 18 | 34 |
| Liability continues | 18 | 34 |
| Term of lease | 1 |  |
| Termination of lease — |  |  |
| Assignment unauthorized | 15 | 31(c) |
| Bankruptcy of Lessee | 15 | 31(b) |
| Condemnation | 16 | 31(j) |
| Conditional limitation | 14 | 31 |
| Covenants breached | 15 | 31(e) |
| Default to Secured Party | 16 | 31(g) |
| Destruction of building | 16 | 31(i) |
| Objectionable conduct | 15 | 31(f) |
| Occupancy unauthorized | 15 | 31(c) |
| Rent default | 15 | 31(d) |
| Shares, Lessee ceases to own | 14 | 31(a) |

|  | **Page** | **Par.** |
|---|---|---|
| Subletting unauthorized. | 15 | 31(c) |
| Termination of all leases | 16 | 31(h) |
| Terrace—use and maintenance | 4 | 7 |
| Third party occupant—Lessor's rights | 5 | 8 |
| Unsold Shares—special provisions | 20 | 38 |
| Use of apartment— |  |  |
| As a dwelling | 6 | 14 |
| Compliance with requirements | 9 | 18(d) |
| Insurance rate increase | 10 | 20 |
| Waiver— |  |  |
| No waiver by Lessor | 13 | 26 |
| Of subrogation, Lessor's obligations | 4 | 4(d) |
| Right of redemption, by Lessee | 17 | 33 |
| Trial by jury | 24 | 42 |
| Window cleaning | 14 | 30 |

PROPRIETARY LEASE, made as of, **February 15th** 1989, by and between Skyview Owners Corporation, a New York corporation having an office c/o Management Office, 5800 Arlington Avenue, Riverdale, New York 10471, hereinafter called the "Lessor", and 5700-5800-5900 Arlington Avenue Associates, a New York limited partnership with offices at 505 Park Avenue, New York, New York 10022, hereinafter called the "Lessee".

WHEREAS, the Lessor is the owner of the land and the buildings erected thereon known as Skyview-on-the-Hudson, Riverdale, New York (referred to collectively herein as the "buildings", any one of which may be referred to herein as the "building");

WHEREAS, the Lessee is the owner of *348* shares of the Lessor to which this lease is appurtenant and which have been allocated to Apartment *19A* in the building having the street address of 5700 Arlington Avenue, Riverdale, New York 10471; and

WHEREAS, the Lessor and the Lessee desire to provide for the orderly conduct of the business of the Lessor, the transfer or other disposition of the shares of the Lessor and other rights of holders of shares of the Lessor;

NOW, THEREFORE, in consideration of the premises, the Lessor hereby leases to the Lessee, and the Lessee hires from the Lessor, subject to the terms and conditions hereof, Apartment in the building having the street address of 5700 Arlington Avenue, Riverdale, New York 10471 (hereinafter referred to as the "apartment") for a term from **February 15th**, 1989, until September 30, 2037 (unless sooner terminated as hereinafter provided). As used herein the "apartment" means the rooms in the building as partitioned on the date of the execution of this lease designated by the above-stated apartment and building number, together with its appurtenances and fixtures and any closets, terraces, balconies, roofs or portion thereof outside of said partitioned rooms which, subject to the provisions of Paragraph 7 hereof, are or is allocated by the Board of Directors of the Lessor (hereinafter called the "Directors") to the exclusive use of the occupant of the apartment.

**Demised Premises**

**Term**

1. (a) The rent (sometimes called "maintenance") payable by the Lessee for each year, or portion of a year, during the term shall equal that proportion of the Lessor's cash requirements for such year, or portion of a year, which the number of shares of the Lessor allocated to the apartment bears to the total number of shares of the Lessor issued and outstanding on the date of the determination of such cash requirements. Such maintenance shall be payable in equal monthly installments, in advance, on the first day of each month, unless the Directors at the time of its determination of the cash requirements shall otherwise direct. The Lessee shall also pay such additional rent as may be provided for herein when due. In the event that any portion of such maintenance or additional rent remains unpaid beyond the 15th day of the month in which it is due, the Lessee will pay, as additional rent, a penalty of $25 (or such greater sum as may be authorized by the Directors) per month until the full balance has been paid.

**Rent ("Maintenance") How Fixed**

(b) In every proprietary lease heretofore executed by the Lessor there has been specified, and in every proprietary lease hereafter executed by it there will be specified, the number of shares of the Lessor issued to a lessee simultaneously therewith, which number, in relation to the total number of shares of the Lessor issued and outstanding, shall constitute the basis for fixing, as

**Accompanying Shares to Be Specified in Proprietary Leases**

1

hereinbefore provided, the proportionate share of the Lessor's cash requirements which shall be payable as rent by the Lessee.

**Cash Requirements Defined**

(c) "Cash requirements" whenever used herein shall mean the estimated amount in cash which the Directors shall from time to time in its judgment determine to be necessary or proper for (i) the operation, maintenance, care, alteration and improvement of the corporate property during the year or portion of the year for which such determination is made; (ii) the creation of such reserve for contingencies as it may deem proper; and (iii) the payment of any obligations, liabilities or expenses incurred (even though incurred during a prior period) or to be incurred, after giving consideration to (A) income expected to be received during such period (other than rent from proprietary leases), and (B) cash on hand which the Directors in its discretion may choose to apply. The Directors may from time to time modify its prior determination and increase or diminish the amount previously determined as cash requirements of the Lessor for a year or portion thereof, subject to the restrictions set forth in Paragraph 49(a) hereof. No determination of cash requirements shall have any retroactive effect on the amount of the rent payable by the Lessee for any period prior to the date of such determination. All determinations of cash requirements shall be conclusive as to all lessees.

**Authority Limited to Board of Directors**

(d) Whenever in this paragraph or any other paragraph of this lease, a power or privilege is given to the Directors, the same may be exercised only by the Directors, and in no event may any such power or privilege be exercised by a creditor, receiver or trustee.

**Issuance of Additional Shares**

(e) If the Lessor shall hereafter issue shares (whether now or hereafter authorized) in addition to those issued on the date of the execution of this lease, the holders of the shares hereafter issued shall be obligated to pay rent at the same rate as the other proprietary lessees from and after the date of issuance. If any such shares be issued on a date other than the first or last day of the month, the rent for the month in which issued shall be apportioned. The cash requirements as last determined shall, upon the issuance of such shares, be deemed increased by an amount equal to such rent.

**Paid-in-Surplus**

(f) The Directors may from time to time as may be proper determine how much, if any, of the maintenance and other receipts received (but not more than such amount as represents payments on account of principal of mortgages on the property and other capital expenditures), shall be credited on the corporate accounts to "Paid-in-Surplus". Unless the Directors shall determine otherwise, the amount of payments on account of principal of any mortgages on the property shall be credited to "Paid-in-Surplus".

**Failure to Fix Cash Requirements**

(g) The failure of the Directors to determine the Lessor's cash requirements for any year or portion thereof shall not be deemed a waiver or modification in any respect of the covenants and provisions hereof, or a release of the Lessee from the obligation to pay the maintenance or any installment thereof, but the maintenance computed on the basis of the cash requirements as last determined for any year or portion thereof shall thereafter continue to be the maintenance until a new determination of cash requirements shall be made.

**Lessor's Repairs**

2. The Lessor shall at its expense keep in good repair all of the buildings, including all of the apartments, the sidewalks and courts surrounding the same, and its equipment and apparatus except those portions the maintenance and repair of which are expressly stated to be the

responsibility of the Lessee pursuant to Paragraph 18 hereof. Any planting or other structures erected by the Lessee or his predecessor in interest may be removed and restored by the Lessor at the expense of the Lessee for the purpose of repairs, upkeep or maintenance of the buildings.

3. The Lessor shall maintain and manage the buildings as first-class apartment buildings, shall keep the public halls, cellars and stairways clean and properly lighted and heated, shall provide the number of attendants requisite, in the judgment of the Directors, for the proper care and service of the buildings and shall provide the apartments with a proper and sufficient supply of hot and cold water and of heat, and if there be central air conditioning equipment supplied by the Lessor, air conditioning when deemed appropriate by the Directors. The covenants by the Lessor herein contained are subject, however, to the discretionary power of the Directors to determine from time to time what services and what attendants shall be proper and the manner of maintaining and operating the buildings, and also what existing services shall be increased, reduced, changed, modified or terminated.

**Services by Lessor**

4. (a) If the apartment or the means of access thereto or the building shall be damaged by fire or other cause covered by multiperil policies commonly carried by corporations owning "cooperative apartment buildings" (any other damage to be repaired by the Lessor or the Lessee pursuant to Paragraphs 2 and 18 hereof, as the case may be), the Lessor shall at its own cost and expense, with reasonable dispatch after receipt of notice of said damage, repair or replace or cause to be repaired or replaced, the building, the apartment and the means of access thereto, including the walls, floors, ceilings, pipes, wiring and conduits in the apartment, with materials of a kind and quality then customary in buildings of the type of the building. Anything in this Paragraph 4(a) or Paragraph 2 hereof to the contrary notwithstanding, the Lessor shall not be required to repair or replace, or cause to be repaired or replaced, equipment, fixtures, furniture, furnishings or decorations installed by the Lessee or any previous proprietary lessee of the apartment, nor shall the Lessor be obligated to repaint or replace wallpaper or other decorations in the apartment or to refinish floors located therein.

**Damage to Apartment or Building**

(b) In case the damage resulting from fire or other cause shall be so extensive as to render the apartment partly or wholly untenantable, or if the means of access thereto shall be destroyed, the rent hereunder shall proportionately abate until the apartment shall again be rendered wholly tenantable or the means of access restored; but if said damage shall be caused by the act or negligence of the Lessee or the agents, employees, guests or members of the family of the Lessee or any occupant of the apartment, such rental shall abate only to the extent of the rental value insurance, if any, collected by the Lessor with respect to the apartment.

**Rent Abatement**

(c) If the Directors shall determine that (i) any building or buildings are totally destroyed by fire or other cause, or (ii) any building or buildings are so damaged that it cannot be repaired within a reasonable time after the loss shall have been adjusted with the insurance carriers, or (iii) the destruction or damage was caused by hazards which are not covered under the Lessor's insurance policies then in effect, and if in any such case the record holders of at least two-thirds of the then issued and outstanding shares of the Lessor, at a shareholders' meeting duly called for that purpose held within 120 days after the determination by the Directors, shall vote not to repair, restore or rebuild, then upon the giving of notice pursuant to Paragraph 31 hereof, this lease and all other proprietary leases and all right, title and interest of the parties thereunder and

**Expiration of Lease Due to Damage**

3

the tenancies thereby created, shall thereupon wholly cease and expire and rent shall be paid to the date of such destruction or damage. The Lessee hereby waives any and all rights under Section 227 of the Real Property Law of the State of New York and in no event shall the Lessee have any option or right to terminate this lease by reason of casualty damages except as provided herein.

**Waiver of Subrogation**

(d) The Lessor agrees to use its best efforts to obtain a provision in all insurance policies carried by it waiving the right of subrogation against the Lessee or permitting the Lessor to waive such right of subrogation, and, to the extent that any loss or damage is covered by the Lessor by any insurance policies which contain such waiver of subrogation or permission, the Lessor releases the Lessee from any liability with respect to such loss or damage.

In the event that the Lessee suffers loss or damage for which the Lessor would be liable, and the Lessee carries insurance which covers such loss or damage and such insurance policy or policies contain a waiver of subrogation against the landlord or permit the Lessee to waive the right of subrogation, then in such event the Lessee releases the Lessor from any liability with respect to such loss or damage.

**Inspection of Books of Account**

**Annual Report**

5. The Lessor shall keep full and correct books of account at its principal office or at such other place as the Directors may from time to time determine, and the same shall be open during all reasonable hours to inspection by the Lessee or a representative of the Lessee. The Lessor shall deliver to the Lessee within a reasonable time after the end of each fiscal year an annual report of corporate financial affairs, including a balance sheet and a statement of income and expenses, certified by an independent certified public accountant.

**Changes in Terms and Conditions of Proprietary Leases**

6. Each proprietary lease made by the Lessor shall be in the form of this lease, except with respect to the statement as to the number of shares owned by the Lessee, the use of the premises and the date of commencement of the term, unless a variation of any lease is authorized by the record holders of lessees owning at least two-thirds of the Lessor's shares then issued and outstanding. The form and provisions of all the proprietary leases then in effect and thereafter to be executed may be changed by the approval of the record holders of at least 75% of the Lessor's shares then issued and outstanding, and such changes shall be binding on all lessees even if they did not vote for such changes except that (a) the proportionate share of rent or cash requirements payable by any lessee may not be increased, (b) the right of any lessee to cancel his lease under the conditions set forth in Paragraph 35 hereof may not be eliminated or impaired, without, in each of the foregoing instances, the express consent of the lessee affected, and (c) the provisions hereof are subject to the provisions of Paragraphs 38(d) and 39(d) of this lease. Approval by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose.

**Penthouses, Terraces and Balconies**

7. If the apartment includes a terrace, balcony or a portion of the roof adjoining a penthouse, the Lessee shall have and enjoy the exclusive use of the terrace or balcony or that portion of the roof appurtenant to the penthouse, subject to the applicable provisions of this lease and the use of the terrace, balcony or roof by the Lessor to the extent permitted. The Lessee's use thereof shall be subject to such regulations as, from time to time, may be prescribed by the Directors. The Lessor shall have the right to erect equipment on the roof, including radio

4

and television aerials and antennae, for its use and the use of the lessees in the building and shall have the right of access thereto for the installation of such equipment and for the repair thereof. The Lessee shall keep the terrace, balcony or portion of the roof appurtenant to his apartment clean and free from snow, ice, leaves and other debris and shall maintain all screens and drain boxes in good condition. No planting, fences, structures or lattices shall be erected or installed on the terraces, balconies or roofs of the building without the prior written approval of the Lessor. No cooking shall be permitted on any terraces, balconies or roofs of the building nor shall the walls thereof be painted by the Lessee without the prior written approval of the Lessor. Any planting or other structures erected by the Lessee or his predecessor in interest may be removed and restored by the Lessor at the expense of the Lessee for the purpose of repairs, upkeep or maintenance of the building.

8. If at the date of the commencement of this lease any third party shall be in possession or have the right to possession of the apartment, then the Lessor hereby assigns to the Lessee all of the Lessor's rights against said third party from and after the date of the commencement of the term hereof, and the Lessee, by the execution hereof, assumes all of the Lessor's obligations to said third party from said date. The Lessor agrees to cooperate with the Lessee, but at the Lessee's expense, in the enforcement of the Lessee's rights against said third party. **Assignment of Lessor's Right Against Occupant**

9. If at the date of the commencement of this lease the Lessee has the right to possession of the apartment (and to use parking facilities, if any) under any agreement or statutory tenancy, this lease shall supersede such agreement or statutory tenancy which shall be of no further effect after the date of commencement of this lease, except for claims theretofore arising thereunder. **Cancellation of Prior Agreements**

10. The Lessee, upon paying the rent and performing the covenants and complying with the conditions on the part of the Lessee to be performed as herein set forth, shall, at all times during the term hereby granted, quietly have, hold and enjoy the apartment without any let, suit, trouble or hindrance from the Lessor, subject, however, to the rights of present tenants or occupants of the apartment, and subject to any and all mortgages and underlying leases of the land and buildings, as provided in Paragraph 22 of this lease. **Quiet Enjoyment**

11. The Lessee agrees to save the Lessor harmless from all liability, loss, damage and expense arising from injury to person or property occasioned by the failure of the Lessee to comply with any provision hereof, or due wholly or in part to any act, default or omission of the Lessee or of any person dwelling or visiting in the apartment, or by the Lessor, its agents, servants or contractors when acting as agent for the Lessee as provided for in this lease. This Paragraph shall not apply to any loss or damage when the Lessor is covered by insurance which provides for or permits waiver of subrogation against the Lessee. **Indemnity**

12. The Lessee shall pay the rent to the Lessor upon the terms and at the times herein provided, without any deduction on account of any setoff or claim which the Lessee may have against the Lessor, and if the Lessee shall fail to pay any installment of rent promptly, the Lessee shall pay interest thereon at the maximum rate permitted by law from the date when such installment shall have become due to the date of the payment thereof, and such interest shall be deemed additional rent hereunder. **Payment of Rent**

5

**House Rules**

13. The Lessor has adopted House Rules which are appended hereto, and the Directors may alter, amend or repeal such House Rules and adopt new House Rules only upon the affirmative vote of two-thirds of the Directors then in office. This lease shall be in all respects subject to such House Rules which, when a copy thereof has been furnished to the Lessee, shall be taken to be part hereof, and the Lessee hereby covenants to comply with all such House Rules and see that they are faithfully observed by the family, guests, employees and permitted subtenants of the Lessee. Breach of a House Rule shall be a default under this lease. The Lessor shall not be responsible to the Lessee for the non-observance or violation of House Rules by any other lessee or person.

**Use of Premises**

14. The Lessee shall not, without the written consent of the Lessor on such conditions as the Lessor may prescribe, occupy or use the apartment or permit the same or any part thereof to be occupied or used for any purpose other than as a private dwelling (i) in the event the Lessee is an individual, for the Lessee and Lessee's spouse, their children, stepchildren, grandchildren, parents, stepparents, grandparents, brothers and sisters and domestic employees and not more than one other party unrelated to the Lessee or Lessee's spouse and (ii) in the event the Lessee is a non-individual, then by a designated individual who is associated with such Lessee as an officer, director, shareholder, principal, beneficiary, or employee and the spouse, children, stepchildren, grandchildren, parents, stepparents, grandparents, brothers and sisters and domestic employees and not more than one party unrelated to the designated individual or the designated individual's spouse. Such non-individual Lessee shall provide Lessor with notice pursuant to the provisions of Paragraph 27 of this lease, prior to the execution of this lease, with the name and relationship to the Lessee of the designated individual and same shall be subject to the Lessor's approval. In no event shall more than one married couple occupy the apartment without the written consent of the Lessor. In addition to the foregoing, the apartment may be occupied from time to time by guests of the Lessee for a period of time not exceeding one month, unless a longer period is approved in writing by the Lessor, but no guests may occupy the apartment unless one or more of the permitted adult residents are then in occupancy or unless consented to in writing by the Lessor. Notwithstanding the foregoing, (a) the Lessee may use the apartment for any home occupation use permitted under applicable zoning law, building code or other rules and regulations of governmental authorities having jurisdiction, and (b) the Lessee who is a holder of a block of Unsold Shares (defined in Paragraph 38 of this lease), shall have the right to use the apartment as a model or an office, or both, in connection with the sale or rental of apartments to which the Unsold Shares are allocated, or for any other lawful purpose.

**Subletting**

15. Except as provided in Paragraphs 38 and 39 of this lease, the Lessee shall not sublet the whole or any part of the apartment for any term or renew or extend any previously authorized sublease, unless consent thereto shall have been duly authorized by a resolution of the Directors, or given in writing by a majority of the Directors, or, if the Directors shall have failed or refused to give such consent, then by lessees owning at least two-thirds of the then issued and outstanding shares of the Lessor. Consent by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose. Any such consent shall be evidenced by an instrument, in writing, signed by an officer of the Lessor, the Lessor's attorneys or the Lessor's managing agent, pursuant to due authorization of (a) a resolution of the Directors, (b) a majority of the Directors evidenced by their written consent, or

6

(c) the holders of two-thirds of the then issued and outstanding shares of the Lessor, as the case may be, and the Directors or shareholders, as the case may be, may condition any consent given to a proposed subletting upon compliance by the Lessee with any requirements made with respect to such subletting. Anything contained in this Paragraph 15 to the contrary notwithstanding, no consent, approval or payment of any kind shall be required with respect to any subletting by the Lessee to any member of the Lessee's family described in Paragraph 14 of this lease. Whenever the Lessee applies for consent to any subletting, the Lessee shall deliver to the Lessor a copy of the proposed sublease to which consent is requested. There shall be no limitation on the right of the Directors or the holders of capital shares of the Lessor to grant or withhold consent, for any reason or for no reason, to a subletting. No consent to a subletting shall operate to release the Lessee from any obligation hereunder.

16. Except as provided in Paragraphs 38 and 39 of this lease:                              **Assignment**

(a) The Lessee shall not assign this lease or transfer the shares to which it is appurtenant or any interest therein, and no such assignment or transfer shall take effect as against the Lessor for any purpose, until:

(i) an instrument of assignment in form approved by the Lessor executed and acknowledged by the assignor shall be delivered to the Lessor;

(ii) an agreement executed and acknowledged by the assignee in form approved         **Assumption**
by Lessor assuming and agreeing to be bound by all the covenants and conditions of     **Agreement or**
this lease to be performed or complied with by the Lessee on and after the effective    **New Lease**
date of said assignment shall have been delivered to the Lessor, or, at the request of the
Lessor, the assignee shall have surrendered the assigned lease and entered into a new
lease in the same form for the remainder of the term, in which case the Lessee's lease
shall be deemed cancelled as of the effective date of said assignment;

(iii) all shares of the Lessor to which this lease is appurtenant shall have been        **Transfer**
transferred to the assignee, with proper transfer taxes paid and stamps affixed;         **of Shares**

(iv) all sums due from the Lessee shall have been paid to the Lessor, together with      **Sums Due**
a sum to be fixed by the Directors to cover reasonable legal and other expenses or fees
of the Lessor and its managing agent in connection with such assignment and transfer of
shares (subject to Paragraph 38 hereof);

(v) a search or certification from a title insurance or abstract company as the          **Lien**
Directors may require, shall have been delivered to the Lessor, and the same shall       **Search**
indicate to the satisfaction of the Directors that there are no encumbrances against this
lease, the shares to which it is appurtenant or the Lessee, except as counsel to the
Lessor may approve; and

(vi) except in the case of an assignment, transfer or bequest of the shares and this     **Consents**
lease to the Lessee's spouse, adult children or parents, and except as provided in
Paragraphs 38 and 39 of this lease, consent to such assignment shall have been
authorized by resolution of the Directors, or given in writing by a majority of the
Directors; or, if the Directors shall have failed or refused to give such consent within 30

7

days after submission of references to them or the Lessor's managing agent, then by lessees owning of record at least two-thirds of the then issued and outstanding shares of the Lessor; such consent by lessees to be evidenced by a written consent or by affirmative vote taken at a meeting called for such purpose in the manner as provided in the by-laws.

**Consents: On Death of Lessee**

(b) If the Lessee shall die, consent shall not be unreasonably withheld or delayed to an assignment of the lease and shares to a financially responsible member of the Lessee's family (other than the Lessee's spouse, adult children or parents, as to whom no consent is required).

**Consents Generally: Shareholders' and Directors' Obligations to Consent**

(c) There shall be no limitation, except as above specifically provided, on the right of the Directors or lessees to grant or withhold consent, for any reason or for no reason, to an assignment.

**Release of Lessee Upon Assignment**

(d) If this lease shall be assigned in compliance herewith, the Lessee-assignor shall have no further liability for, or with respect to, any of the covenants of this lease to be thereafter performed.

**Further Assignment or Subletting**

(e) Regardless of any prior consent theretofore given, neither the Lessee nor his executor, nor administrator, nor any trustee or receiver of the property of the Lessee, nor anyone to whom the interests of the Lessee shall pass by law, shall be entitled further to assign this lease, or to sublet the apartment, or any part thereof, except upon compliance with the requirements of this lease. The restrictions on the assignment of this lease, as hereinbefore set forth, constitute special consideration and inducement for the granting of this lease by the Lessor to the Lessee. No demand or acceptance of rent from any assignee hereof shall constitute or be deemed to constitute a consent to or approval of any assignment.

**Statement by Lessor**

(f) If this lease is then in force and effect, the Lessor will, upon request of the Lessee, deliver to the assignee a written statement that this lease remains on the date thereof in force and effect; but no such statement shall be deemed an admission that there is no default under this lease.

**Pledge of Shares and Lease**

17. The execution and delivery of a leasehold mortgage and/or the creation of a security interest in this lease and the shares to which this lease is appurtenant shall not be a violation of this lease; but, except as provided in Paragraph 39 of this lease, neither the secured party nor the leasehold mortgagee, nor any transferee of the pledged security shall be entitled to have the shares transferred of record on the books of the Lessor, nor to vote such shares, nor to occupy or permit the occupancy by others of the apartment, nor to sell such shares of this lease, without first obtaining the consent of the Lessor in accordance with and after complying with all of the applicable provisions of Paragraphs 14, 15 and 16 of this lease. The acceptance by the Lessor of payments by the secured party or leasehold mortgagee or any transferee of the pledged security on account of rent or additional rent, on behalf of the Lessee or otherwise, shall not constitute a waiver of the aforesaid provision.

8

18. (a) The Lessee shall take possession of the apartment and its appurtenances and fixtures "as is" as of the commencement of the term hereof. Subject to the provisions of Paragraph 4 hereof, the Lessee shall keep the interior of the apartment (including interior walls, floors and ceilings, but excluding windows, window panes, window frames, sashes, sills, entrance and terrace doors, frames and saddles) in good repair, shall do all of the painting and decorating required for his apartment, including the interior of window frames, sashes and sills, and shall be solely responsible for the maintenance, repair and replacement of plumbing, gas and heating fixtures and equipment and such refrigerators, dishwashers, removable and through-the-wall air conditioners, washing machines, ranges and other appliances, as may be in the apartment. Plumbing, gas and heating fixtures as used herein shall include exposed gas, steam and water pipes attached to fixtures, appliances and equipment and the fixtures, appliances and equipment to which they are attached, and any special pipes or equipment which the Lessee may install within the wall or ceiling, or under the floor, but shall not include gas, steam, water or other pipes or conduits within the walls, ceilings or floors or air conditioning or heating equipment which is part of the standard building equipment. The Lessee shall be solely responsible for the maintenance, repair and replacement of all lighting and electrical fixtures, appliances and equipment, and all meters, fuse boxes or circuit breakers and electrical wiring and conduits from the junction box at the riser into and through the Lessee's apartment and any and all equipment of all types and kinds installed by the Lessee or any previous proprietary lessee in the apartment. Any ventilator or air conditioning device which shall be visible from the outside of the building shall at all times be painted by the Lessee in a standard color which the Lessor may select for the building.

*Repairs by Lessee*

(b) The Lessee shall not permit unreasonable cooking or other odors to escape into the building. The Lessee shall not permit or suffer any unreasonable noises or anything which will interfere with the rights of other lessees or their permitted subtenants or guests or which will unreasonably annoy them or obstruct the public halls, stairways or fire escapes.

*Odors and Noises*

(c) If, in the Lessor's sole judgment, any of the Lessee's equipment or appliances shall result in damage to the building or poor quality or interruption of service to other portions of the building, or overloading of, or damage to facilities maintained by the Lessor for the supplying of water, gas, electricity or air conditioning to the building, or if any such appliances visible from the outside of the building shall become rusty or discolored, the Lessee shall promptly, on notice from the Lessor, remedy the condition and, pending such remedy, shall cease using any appliance or equipment which may be creating the objectionable condition.

*Equipment and Appliances*

(d) The Lessee shall comply with all the requirements of the Board of Fire Underwriters, insurance authorities and all governmental authorities and with all laws, ordinances, rules and regulations with respect to the occupancy or use of the apartment. If any mortgage or ground lease affecting the buildings or the land on which they stand shall contain any provisions pertaining to the right of the Lessee to make changes or alterations in the apartment, or to remove any of the fixtures, appliances, equipment or installations, the Lessee herein shall comply with the requirements of such mortgage or mortgages or ground lease relating thereto. Upon the Lessee's written request, the Lessor will furnish the Lessee with copies of applicable provisions of each and every such mortgage and ground lease.

*Rules and Regulations and Requirements of Mortgagee*

9

**Lessor's Right to Remedy Lessee's Defaults**

19. If the Lessee shall fail for 30 days after notice to make repairs to any part of the apartment, its fixtures or equipment as herein required, or shall fail to remedy a condition which has become objectionable to the Lessor for reasons above set forth, or if the Lessee or any person dwelling in the apartment shall request the Lessor, its agents or servants to perform any act not hereby required to be performed by the Lessor, the Lessor may make such repairs, or arrange for others to do the same, or remove such objectionable condition or equipment, or perform such act, without liability to the Lessor; provided, however, that, if the condition requires prompt action, notice of less than 30 days may be given or, in case of emergency, no notice need be given. In all such cases the Lessor, its agents, servants and contractors shall, as between the Lessor and the Lessee, be conclusively deemed to be acting as agents of the Lessee and all contracts therefor made by the Lessor shall be so construed whether or not made in the name of the Lessee. If the Lessee shall fail to perform or comply with any of the other covenants or provisions of this lease within the time required by a notice from the Lessor (not less than five days), then the Lessor may, but shall not be obligated to, comply therewith, and for such purpose may enter upon the apartment of the Lessee. The Lessor shall be entitled to recover from the Lessee all expenses actually incurred or for which it has contracted hereunder and shall actually pay such expenses to be payable by the Lessee on demand as additional rent.

**Increase in Rate of Fire Insurance**

20. The Lessee shall not permit or suffer anything to be done or kept in the apartment which will increase the rate of fire insurance on the building or the contents thereof. If, by reason of the occupancy or use of the apartment by the Lessee, the rate of fire insurance on the building or an apartment or the contents of either shall be increased, the Lessee shall (if such occupancy or use continues for more than 30 days after written notice from the Lessor specifying the objectionable occupancy or use) become personally liable for the additional insurance premiums incurred by the Lessor or any lessee or lessees of apartments in the building on all policies so affected, and the Lessor shall have the right to collect the same for its benefit or the benefit of any such lessees as additional rent for the apartment due on the first day of the calendar month following written demand therefor by the Lessor (and, in the latter case, to remit such amount to the lessees so affected).

**Alterations**

21. (a) The Lessee shall not, without first obtaining the written consent of the Lessor, which consent shall not be unreasonably withheld or delayed, make in the apartment or the building, or on any roof, penthouse, terrace or balcony appurtenant thereto, any alteration, enclosure or addition or any alteration of or addition to the water, gas or steam risers or pipes, heating or air conditioning system or units, electrical conduits, wiring or outlets, plumbing fixtures, intercommunication or alarm system or any other installation or facility in the apartment or building. The performance by the Lessee of any work in the apartment shall be in accordance with any applicable rules and regulations of the Lessor and governmental agencies having jurisdiction thereof. The Lessee shall not in any case install any appliances which would overload the existing wires or equipment in the building. Anything contained herein or in subparagraph (b) hereinbelow to the contrary notwithstanding, the written consent of the Lessor shall not be required for any of the foregoing alterations, enclosures or additions, or the removal of any additions, improvements or fixtures from the apartment by the Sponsor or a holder of Unsold Shares.

10

(b) Without the Lessor's written consent, the Lessee shall not remove any fixtures, appliances, additions or improvements from the apartment except as hereinafter provided. If the Lessee, or a prior lessee, shall have heretofore placed, or the Lessee shall hereafter place in the apartment, at the Lessee's own expense, any additions, improvements, appliances or fixtures, including, but not limited to, fireplace mantels, lighting fixtures, refrigerators, air conditioners, dishwashers, washing machines, ranges, woodwork, wall paneling, ceilings, special doors or decorations, special cabinet work, special stair railings or other built-in ornamental items, which can be removed without structural alterations or permanent damage to the apartment, then title thereto shall remain in the Lessee and the Lessee shall have the right, prior to the termination of this lease, to remove the same at the Lessee's own expense, provided that: (i) the Lessee at the time of such removal shall not be in default in the payment of rent or in the performance or observance of any other covenants or conditions of this lease; (ii) prior to any such removal, the Lessee shall give written notice thereof to the Lessor; (iii) the Lessee shall, at the Lessee's own expense, prior to the termination of this lease, repair all damage to the apartment which shall have been caused by either installation or removal of any of such additions, improvements, appliances or fixtures; (iv) if the Lessee shall have removed from the apartment any articles or materials owned by the Lessor or its predecessor in title, or any fixtures or equipment necessary for the use of the apartment, the Lessee shall either restore such articles, materials, fixtures and equipment and repair any damage resulting from their removal and restoration, or replace them with others of a kind and quality customary in comparable buildings and satisfactory to the Lessor; and (v) if any mortgagee had acquired a lien on any such property prior to the execution of this lease, the Lessor shall have first procured from such mortgagee its written consent to such removal, and any cost and expense incurred by the Lessor in respect thereof shall have been paid by the Lessee.

**Removal of Fixtures**

(c) On the expiration or termination of this lease, the Lessee shall surrender to the Lessor possession of the apartment with all additions, improvements, appliances and fixtures then included therein, except as hereinabove provided. Any additions, improvements, fixtures or appliances not removed by the Lessee on or before such expiration or termination of this lease shall, at the option of the Lessor, be deemed abandoned and shall become the property of the Lessor and may be disposed of by the Lessor without liability or accountability to the Lessee. Any other personal property not removed by the Lessee at or prior to the termination of this lease may be removed by the Lessor to any place of storage and stored for the account of the Lessee without the Lessor in any way being liable for trespass, conversion or negligence by reason of any acts of the Lessor or of the Lessor's agents, or of any carrier employed in transporting such property to the place of storage, or by reason of the negligence of any person in caring for such property while in storage.

**Surrender on Expiration of Term**

22. This lease is and shall be subject and subordinate to all present and future ground or underlying leases and to any mortgages now or hereafter liens upon such leases or on the building, or buildings, and the land on which it stands, and to any and all extensions, modifications, consolidations, renewals and replacements thereof. This clause shall be self-operative and no further instrument of subordination shall be required by any such mortgagee or ground or underlying lessee. In confirmation of such subordination the Lessee shall at any time, and from time to time, on demand, execute any instruments that may be required by any

**Lease Subordinate to Mortgages and Ground Leases**

11

mortgagee ground or underlying lessee or by the Lessor for the purpose of more formally subjecting this lease to the lien of any such mortgage or mortgages or ground or underlying leases, and the duly elected officers, for the time being, of the Lessor are and each of them is hereby irrevocably appointed the attorney-in-fact and agent of the Lessee to execute the same upon such demand, and the Lessee hereby ratifies any such instrument hereafter executed by virtue of the power of attorney hereby given.

In the event that a ground or underlying lease is executed and delivered to the holder of a mortgage or mortgages on such ground or underlying lease or to a nominee or designee of or a corporation formed by or for the benefit of such holder, the Lessee hereunder shall attorn to such mortgagee or the nominee or designee of such mortgagee or to any corporation formed by or for the benefit of such mortgagee.

**Mechanic's Lien**

23. In case a notice of mechanic's lien against the building shall be filed purporting to be for labor or material furnished or delivered at the building or the apartment to or for the Lessee, or anyone claiming under the Lessee, the Lessee shall forthwith cause such lien to be discharged by payment, bonding or otherwise; and if the Lessee shall fail to do so within ten days after notice from the Lessor, then the Lessor may cause such lien to be discharged by payment, bonding or otherwise, without investigation as to the validity thereof or of any offsets or defenses thereto, and shall have the right to collect, as additional rent, all amounts so paid and all costs and expenses paid or incurred in connection therewith, including reasonable attorneys' fees and disbursements, together with interest thereon from the time or times of payment.

**Cooperation**

24. The Lessee shall always in good faith endeavor to observe and promote the cooperative purposes for the accomplishment of which the Lessor is incorporated.

**Right of Entry**

25. The Lessor and its agents and their authorized workmen shall be permitted to visit, examine or enter the apartment and any storage space assigned to Lessee at any reasonable hour of the day upon notice, or at any time and without notice in the case of emergency, to make or facilitate repairs in any part of the buildings or to cure any default by the Lessee and to remove such portions of the walls, floors and ceilings of the apartment and storage space as may be required for any such purpose, but the Lessor shall thereafter restore the apartment and storage space to its proper and usual condition at the Lessor's expense if such repairs are the obligation of the Lessor, or at the Lessee's expense if such repairs are the obligation of the Lessee or are caused by the act or omission of the Lessee or any of the Lessee's family, guests, agents, employees or permitted subtenants. In order that the Lessor shall at all times have access to the

**Key**

apartment or storage space for the purposes provided for in this lease, the Lessee shall provide the Lessor with a key to each lock providing access to the apartment or the storage space, and if any such lock shall be altered or new lock installed, the Lessee shall provide the Lessor with a key thereto immediately upon installation. If the Lessee shall not be personally present to open and permit an entry at any time when an entry therein shall be necessary or permissible hereunder and shall not have furnished a key to Lessor, the Lessor or the Lessor's agents (but, except in an emergency, only when specifically authorized by an officer of the Lessor or an officer of the managing agent) may forcibly enter the apartment or storage space without liability for damages by reason thereof (if during such entry the Lessor shall accord reasonable care to the Lessee's property), and without in any manner affecting the obligations and covenants of this lease. The

12

right and authority hereby reserved do not impose, nor does the Lessor assume by reason thereof, any responsibility or liability for the care or supervision of the apartment, or any of the pipes, fixtures, appliances or appurtenances therein contained, except as herein specifically provided.

26. The failure of the Lessor to insist, in any one or more instances, upon a strict performance of any of the provisions of this lease, or to exercise any right or option herein contained, or to serve any notice, or to institute any action or proceeding, shall not be construed as a waiver, or a relinquishment for the future, of any such provisions, options or rights, but such provision, option or right shall continue and remain in full force and effect. The receipt by the Lessor of rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by the Lessor of any provision hereof shall be deemed to have been made unless in a writing expressly approved by the Directors. **Waivers**

27. Any notice by or demand from either party to the other shall be duly given only if in writing and sent by certified or registered mail, return receipt requested: if by the Lessee, addressed to the Lessor at the address indicated on page one hereof, with a copy sent by regular mail to the Lessor's managing agent; if to the Lessee, addressed to the building. Either party may by notice served in accordance herewith designate a different address for service of such notice or demand. Notices or demands shall be deemed given on the date when mailed, except notices in respect of a change of address shall be deemed given when received. **Notices**

28. If the Lessee shall at any time be in default hereunder and the Lessor shall incur any expense (whether paid or not) in performing acts which the Lessee is required to perform, or in instituting any action or proceeding based on such default, or defending, or asserting a counterclaim in, any action or proceeding brought by the Lessee, the expense thereof to the Lessor, including reasonable attorneys' fees and disbursements, shall be paid by the Lessee to the Lessor, on demand, as additional rent. **Reimbursement of Lessor's Expenses**

29. (a) The Lessor shall not be liable, except by reason of the Lessor's negligence, for any failure or insufficiency of heat, air conditioning (where air conditioning is supplied or air conditioning equipment is maintained by the Lessor), water supply, electric current, gas, telephone, elevator service or other service which may be supplied by the Lessor hereunder, or for interference with light, air, view or other interests of the Lessee. No abatement of rent or other compensation or claim of eviction shall be made or allowed because of the making or failure to make or delay in making any repairs, alterations or decorations to the building, or to any fixtures or appurtenances therein, or for space taken to comply with any law, ordinance or governmental regulation, or for interruption or curtailment of any service agreed to be furnished by the Lessor, due to accidents, alterations or repairs, or for difficulty or delay in securing supplies or labor or other cause beyond the Lessor's control, unless due to the Lessor's negligence. **Lessor's Immunities**

(b) If the Lessor shall furnish to the Lessee any storage bins or space, the use of any laundry facilities, or any facility outside the apartment, including, but not limited to, a television antenna, the same shall be deemed to have been furnished gratuitously by the Lessor under a revocable license. The Lessee shall not use such storage space for the storage of valuable or perishable property and any such storage space assigned to the Lessee shall be kept by the Lessee clean and **Storage Space and Laundry**

13

free of combustibles. If washing machines or other equipment are made available to the Lessee, the Lessee shall use the same on the understanding that such machines or equipment may or may not be in good order and repair and that the Lessor is not responsible for such equipment, nor for any damage caused to the property of the Lessee resulting from the Lessee's use thereof, and that any use that the Lessee may make of such equipment shall be at his own cost, risk and expense.

**Automobiles and Other Property**

(c)  The Lessor shall not be responsible for any loss of, or damage to, any automobile or other vehicle left in the care of any employee of the Lessor by the Lessee, and the Lessee hereby agrees to hold the Lessor harmless from any liability arising from any injury to person or property caused by or with such automobile or other vehicle while in the care of such employee. The Lessor shall not be responsible for any property left with or entrusted to any employee of the Lessor, or for the loss of or damage to any property within or without the apartment by theft or otherwise.

**Window Cleaning**

30.  The Lessee shall not require, permit, suffer or allow the cleaning of any window in the premises from the outside (within the meaning of Section 202 of the New York Labor Law) unless such cleaning is undertaken by or through the Lessor or the equipment and safety devices required by law, ordinance, rules and regulations, including, without limitation, Section 202 of the New York Labor Law, are provided and used, and unless the Industrial Code of the State of New York is fully complied with; and the Lessee hereby agrees to indemnify the Lessor and its employees, other lessees and the managing agent, for all losses, damages or fines suffered by them as a result of the Lessee's requiring, permitting, suffering or allowing any window in the premises to be cleaned from the outside in violation of the requirements of the aforesaid laws, ordinances, regulations and rules.

**Termination of Lease by Lessor**

31.  If upon, or at any time after, the happening of any of the events mentioned in subparagraphs (a) to (j) inclusive of this Paragraph 31, the Lessor shall give to the Lessee a notice stating that the term hereof will expire on a date at least five days thereafter, the term of this lease shall expire on the date so fixed in such notice as fully and completely as if it were the date herein definitely fixed for the expiration of the term, and all right, title and interest of the Lessee hereunder shall thereupon wholly cease and expire, and the Lessee shall thereupon quit and surrender the apartment to the Lessor, it being the intention of the parties hereto to create hereby a conditional limitation, and thereupon the Lessor shall have the right to re-enter the apartment and to remove all persons and personal property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law or in equity, or by force or otherwise, and to repossess the apartment in its former state as if this lease had not been made, and no liability whatsoever shall attach to the Lessor by reason of the exercise of the right of re-entry, repossession and removal herein granted and reserved:

**Lessee Ceasing to Own Accompanying Shares**

(a)  if the Lessee shall cease to be the owner of the shares to which this lease is appurtenant, or if this lease shall pass or be assigned to anyone who is not then the owner of all of said shares;

14

(b) if at any time during the term of this lease (i) the then holder hereof shall be adjudicated a bankrupt under the laws of the United States; or (ii) a receiver of all of the property of such holder or of this lease shall be appointed under any provision of the laws of the State of New York, or under any statute of the United States, or any statute of any state of the United States and the order appointing such receiver shall not be vacated within 30 days; or (iii) such holder shall make a general assignment for the benefit of creditors; or (iv) any of the shares owned by such holder to which this lease is appurtenant shall be duly levied upon under the process of any court whatever, unless such levy shall be discharged within 30 days; or (v) this lease or any of the shares to which it is appurtenant shall pass by operation of law or otherwise to anyone other than the Lessee herein named or a person to whom such Lessee has assigned this lease in the manner herein permitted, but this subsection (v) shall not be applicable if this lease shall devolve upon the executors or administrators of the Lessee and provided that within eight months (which period may be extended by the Diretors) after the death of the Lessee said lease and shares shall have been transferred to any assignee in accordance with Paragraph 16 hereof; or (vi) this lease or any of the shares to which it is appurtenant shall pass to anyone other than the Lessee herein named by reason of a default by the Lessee under a pledge or security agreement or a leasehold mortgage made by the Lessee (other than as provided for in Paragraph 39(c) hereof);

*Lessee Becoming a Bankrupt; Appointment of Receiver; Assignment for Creditors; Levy On Shares; Transfer by Operation of Law; Transfer Pursuant to Pledge, Mortgage or Security Agreement*

(c) subject to the provisions of Paragraphs 38 and 39 hereof, if there be an assignment of this lease, or any subletting hereunder, without full compliance with the requirements of Paragraphs 15 or 16 hereof; or if any person not authorized by Paragraph 14 hereof shall be permitted to use or occupy the apartment and the Lessee shall fail to cause such unauthorized person to vacate the apartment within ten days after written notice from the Lessor;

*Assignment, Subletting or Unauthorized Occupancy*

(d) if the Lessee shall be in default for a period of one month in the payment of any rent or additional rent or of any installment thereof and shall fail to cure such default within ten days after written notice from the Lessor;

*Default in Rent*

(e) if the Lessee shall be in default in the performance of any covenant or provision hereof, other than the covenant to pay rent, and such default shall continue for 30 days after written notice from the Lessor; provided, however, that if said default consists of the failure to perform any act the performance of which requires any substantial period of time, then if within said period of 30 days such performance is commenced and thereafter diligently prosecuted to conclusion without delay and interruption, the Lessee shall be deemed to have cured said default;

*Default in Other Covenants*

(f) if at any time the Lessor shall determine, upon the affirmative vote of the record holders of at least two-thirds of its then issued and outstanding shares, at a shareholders' meeting duly called for that purpose, that because of objectionable conduct on the part of the Lessee, or of a person dwelling or visiting in the apartment, repeated after written notice from the Lessor, the tenancy of the Lessee is undesirable (it being understood, without limiting the generality of the foregoing, that repeatedly to violate or disregard the House Rules hereto attached or hereafter established in accordance with the provisions of this

*Objectionable Conduct*

15

lease, or to permit or tolerate a person of dissolute, loose or immoral character to enter or remain in the building or the apartment, shall be deemed to be objectionable conduct);

**Lessee's Default under Security Agreement**

(g) if the Lessee shall default in the payment or performance of any of the Lessee's obligations under any pledge or other security agreement (the "Security Agreement") given a Secured Party (who has complied with the provisions of Paragraph 39 hereof), and written notice of such default is given to the Lessor by the Secured Party or its counsel;

**Termination of All Proprietary Leases**

(h) if at any time the Lessor shall determine, upon the affirmative vote of two-thirds of its then Board of Directors at a meeting of such Directors duly called for that purpose, and the affirmative vote of the record holders of at least 80% of its then issued and outstanding shares, at a shareholders' meeting duly called for that purpose, to terminate all proprietary leases;

**Destruction of Building**

(i) if any building or buildings shall be destroyed or damaged and the shareholders shall decide not to repair or rebuild as provided in Paragraph 4 hereof; and

**Condemnation**

(j) if at any time any building or buildings or a substantial portion thereof shall be taken by condemnation proceedings.

**Lessor's Rights After Lessee's Default**

32. (a) In the event the Lessor resumes possession of the apartment, either by summary proceedings, action of ejectment or otherwise, because of default by the Lessee in payment of any rent or additional rent hereunder, or on the expiration of the term pursuant to a notice given as provided in Paragraph 31 hereof upon the happening of any event specified in subparagraphs (a) to (g), inclusive, of Paragraph 31 hereof, the Lessee shall continue to remain liable for payment of a sum equal to the rent which would have become due hereunder and shall pay the same in installments at the time such rent would be due hereunder. No suit brought to recover any installment of such rent or additional rent shall prejudice the right of the Lessor to recover any subsequent installment. After resuming possession, the Lessor may, at its option, from time to time (i) relet the apartment for its own account, or (ii) relet the apartment as the agent of the Lessee, in the name of the Lessee or in its own name, for a term or terms which may be less than or greater than the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent, in its discretion. Any reletting of the apartment shall be deemed for the account of the Lessee, unless within ten days after such reletting the Lessor shall notify the Lessee that the apartment has been relet for the Lessor's own account. The fact that the Lessor may have relet the apartment as agent for the Lessee shall not prevent the Lessor from thereafter notifying the Lessee that it proposes to relet the apartment for its own account. If the Lessor relets the apartment as agent for the Lessee, it shall, after reimbursing itself for its expenses in connection therewith, including leasing commissions and a reasonable amount for attorneys' fees and expenses, and decorations, alterations and repairs in and to the apartment, apply the remaining avails of such reletting against the Lessee's continuing obligations hereunder. There shall be a final accounting between the Lessor and the Lessee upon the earliest of the four following dates: (A) the date of expiration of the term of this lease as stated on page 1 hereof; (B) the date as of which a new proprietary lease covering the apartment shall have become effective; (C) the date the Lessor gives written notice to the Lessee that it has relet the apartment for its own account; and (D) the date upon which all proprietary leases of the Lessor

16



terminate. From and after the date upon which the Lessor becomes obligated to render a final accounting to the Lessee, as above provided, the Lessor shall have no further duty to account to the Lessee for any avails of reletting and the Lessee shall have no further liability for sums thereafter accruing hereunder, but such termination of the Lessee's liability shall not affect any liabilities theretofore accrued.

(b) If the Lessee shall at any time sublet the apartment and shall default in the payment of any rent or additional rent, the Lessor, at its option, so long as such default shall continue, may demand and receive from the subtenant the rent due or becoming due from such subtenant to the Lessee, and apply the amount to pay sums due and to become due from the Lessee to the Lessor. Any payment by a subtenant to the Lessor shall constitute a discharge of the obligation of such sub-tenant to the Lessee, to the extent of the amount so paid. The acceptance of rent from any subtenant shall not be deemed a consent to or approval on the part of the Lessor of any subletting or assignment by the Lessee, or a release or discharge of any of the obligations of the Lessee hereunder. **Collecting of Rent from Subtenants**

(c) Upon the termination of this lease under the provisions of subparagraphs (a) to (g), inclusive, of Paragraph 31 hereof, the Lessee shall surrender to the Lessor this lease, together with the certificate for the shares of the Lessor owned by the Lessee to which this lease is appurtenant. Whether or not this lease, together with said certificate are surrendered, the Lessor may issue a new proprietary lease for the apartment and issue a new certificate for the shares of the Lessor owned by the Lessee and allocated to the apartment when a purchaser therefor is obtained, provided that the issuance of such shares and such lease to such purchaser is authorized by a resolution of the Directors, or by a writing signed by a majority of the Directors or by lessees owning, of record, at least a majority of the shares of the Lessor then issued and outstanding. Upon such issuance this lease and the certificate owned or held by the Lessee shall be automatically cancelled and rendered null and void. The Lessor shall apply the proceeds received for the issuance of such lease and shares first, towards the payment of the Lessee's indebtedness hereunder, including interest, attorneys' fees and other expenses incurred by the Lessor, and second, if said termination shall result pursuant to subparagraph (g) of Paragraph 31 hereof by reason of a default under the Security Agreement, towards the payment of the Lessee's indebtedness under the Security Agreement (including all costs, expenses and charges claimed by the Secured Party to be payable by the Lessee thereunder), and third, if the proceeds are sufficient to pay the same, the Lessor shall pay over any surplus to the Lessee, but, if insufficient, the Lessee shall remain liable for the balance of the indebtedness. Upon the issuance of any such new proprietary lease and certificate, the Lessee's liability hereunder shall cease and the Lessee shall only be liable for rent and expenses accrued to that time. The Lessor shall not, however, be obligated to sell such shares and appurtenant lease or otherwise make any attempt to mitigate damages. **Sale of Shares**

33. The Lessee hereby expressly waives any and all right of redemption in case the Lessee shall be dispossessed by judgment or warrant of any court or judge. The words "enter", "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. **Waiver of Right of Redemption**

34. Upon the termination of this lease under the provisions of subparagraphs (a) to (g), inclusive, of Paragraph 31 hereof, the Lessee shall remain liable as provided in Paragraph 32 of **Surrender of Possession**

17

this lease. Upon the termination of this lease under any other of its provisions, the Lessee shall be and remain liable to pay all rent, additional rent and other charges due or accrued and to perform all covenants and agreements of the Lessee up to the date of such termination. On or before any such termination, the Lessee shall vacate the apartment and surrender possession thereof to the Lessor or its assigns, and upon demand of the Lessor or its assigns, shall execute, acknowledge and deliver to the Lessor or its assigns any instrument which may reasonably be required to evidence the surrendering of all estate and interest of the Lessee in the apartment, or in the building of which it is a part.

**Lessee's Option to Cancel**

35. (a) Subject to the provisions of Paragraph 38(e) hereof, this lease may be cancelled by the Lessee on any September 30th after the third anniversary of the consummation of the Offering Plan—A Plan to Convert to Cooperative Ownership Premises known as Skyview-on-the-Hudson, Riverdale, New York (the "Plan"), pursuant to which proprietary leases were originally issued, upon complying with all the provisions hereinafter set forth. Irrevocable written notice of intention to cancel must be given by the Lessee to the Lessor on or before April 1 in the calendar year in which such cancellation is to occur. At the time of the giving of such notice of intention to cancel there must be deposited with the Lessor by the Lessee:

**Deposits Required**

(i) the Lessee's original counterpart of this lease with a written assignment in form required by the Lessor, in blank, effective as of October 1st of the year of cancellation, free from all subleases, tenancies, liens, encumbrances, pledges, security interests and other charges whatsoever (except rights of occupancy of third parties existing on the date the Lessor acquired title to the buildings);

(ii) the Lessee's certificate for his shares of the Lessor, endorsed in blank for transfer and with all necessary transfer tax stamps affixed and with payment of any transfer taxes due thereon; and

(iii) a written statement setting forth in detail those additions, improvements, fixtures or equipment which the Lessee has, under the terms of this lease, the right to and intends to remove.

**Removal of Fixtures**

(b) All additions, improvements, appliances and fixtures which are removable under the terms of this lease and which are enumerated in the statement made as provided in subdivision (iii) above shall be removed by the Lessee prior to October 1st of the year of cancellation, and on

**Possession**

or before said October 1st the Lessee shall deliver possession of the apartment to the Lessor in good condition with all required equipment, fixtures and appliances installed and in proper operating condition and free from all subleases and tenancies, liens, encumbrances, pledges, security interests and other charges (except as aforesaid) and pay to the Lessor all rent, additional rent and other charges which shall be payable under this lease up to and including the September 30th following the notice to cancel.

**Permission to Show and Occupy Apartment**

(c) The Lessor and its agents may show the apartment to prospective lessees, contractors and architects at reasonable times after notice of the Lessee's intention to cancel. After October 1st or the earlier vacating of the apartment, the Lessor and its agents, employees and lessees may enter the apartment, occupy the same and make such alterations and additions therein as the

18

Lessor may deem necessary or desirable without diminution or abatement of the rent due hereunder.

(d) If the Lessee is not otherwise in default hereunder and if the Lessee shall have timely complied with all of the provisions of subparagraphs (a) and (b) hereof, then this lease shall be cancelled and all rights, duties and obligations of the parties hereunder shall cease as of the September 30th fixed in said notice, and the shares of the Lessor previously owned by the Lessee shall become the absolute property of the Lessor; provided, however, that the Lessee shall not be released from any indebtedness owing to the Lessor on said last mentioned date. **Effective Date of Cancellation**

(e) If the Lessee shall give the notice but fail to comply with any of the other provisions of this Paragraph 35, the Lessor shall have the option at any time prior to September 30th (i) of returning to the Lessee this lease, the certificate for shares and other documents deposited, and thereupon the Lessee shall be deemed to have withdrawn the notice of intention to cancel this lease, or (ii) of treating this lease as cancelled as of the September 30th named in the notice of intention to cancel as the date for the cancellation of such lease, and bringing such proceedings and actions as it may deem best to enforce the covenants of the Lessee hereinabove contained and to collect from the Lessee the payments which the Lessee is required to make hereunder, together with reasonable attorneys' fees and expenses. **Rights on Lessee's Default**

36. (a) If on April 1st in any year the total number of shares owned by lessees holding proprietary leases for apartments in the buildings, who have given notice pursuant to Paragraph 35 hereof of intention to cancel such proprietary leases on September 30th of said year, shall aggregate 10% or more of the Lessor's then issued and outstanding shares, then the Lessor shall, prior to April 30th in such year, give a written notice to the holders of all issued and outstanding shares of the Lessor, stating the total number of shares then issued and outstanding and in its treasury and the total number of shares owned by lessees holding proprietary leases who have given notice of intention to cancel. In such case the proprietary lessees to whom such notice shall have been given shall have the right to cancel their leases in compliance with the provisions of Paragraph 35 hereof, provided only that written notice of the intention to cancel such leases shall be given on or before July 1st instead of April 1st. **Extension of Option to Cancel**

(b) If lessees owning at least 80% of the then issued and outstanding shares of the Lessor shall exercise the option to cancel their leases in one year, then this and all other proprietary leases shall thereupon terminate on the September 30th of the year in which such options shall have been exercised, as though every lessee had exercised such option. In such event none of the lessees shall be required to surrender his shares to the Lessor and all certificates for shares delivered to the Lessor by those who had, during that year, served notice of intention to cancel their leases under the provisions hereof, shall be returned to such lessees. **Right of Lessees to Cancel**

37. No later than 30 days after the termination of all proprietary leases for space in the buildings, whether by expiration of their terms or otherwise, a special meeting of shareholders of the Lessor shall take place to determine whether (a) to continue to operate the buildings as residential apartment buildings, (b) to alter, demolish or rebuild the buildings or any part thereof, or (c) to sell the buildings and liquidate the assets of the Lessor, and the Directors shall carry out the determination made by the holders of two-thirds of the shares of the Lessor then issued and **Continuance of Coopera- tive Management of Buildings After All Leases Terminated**

outstanding at said meeting of shareholders of the Lessor, and all of the holders of the then issued and outstanding shares of the Lessor shall have such rights as inure to shareholders of corporations holding title to real estate.

**Unsold Shares**

38. (a) The term "Unsold Shares" means and has exclusive reference to the shares of the Lessor which have been issued or transferred either to the Sponsor or individual designee(s) of the Sponsor, as provided in the section of the Plan entitled "Shares Unsold Prior to Closing". The term "holder of Unsold Shares" wherever used herein shall include a "purchaser of Unsold Shares", such terms being used interchangeably in this lease.

**Subletting Apartment and Sale of Shares**

(b) Neither the subletting of the apartment nor the assignment of this lease, by the Lessee who is the holder of Unsold Shares allocated thereto, shall require the consent of the Directors or shareholders, as provided for in Paragraphs 1S and 16(a)(vi) of this lease; and a holder of Unsold Shares shall not be required to pay any sums for expenses of the Lessor and its managing agent set forth in Paragraph 16(a)(iv) hereof.

(c) Anything in this lease or the By-Laws of the Lessor to the contrary notwithstanding, the holder or holders of Unsold Shares shall have the absolute right, without payment of any fee or charge of whatsoever nature, to change the size and layout of any apartment owned by them, or any of them, into two or more apartments or to combine all or any portion of any such apartments into one or any desired number of apartments. The reallocation of shares shall be based upon the fair market value of the equity in the property (including the buildings) attributable to the subdivided or combined apartments, but in any event, the total number of shares so reallocated shall remain the same. Upon the surrender of the share certificate or certificates and proprietary lease or leases affected by such subdivision or combination, the Directors shall issue a new share certificate or certificates and accompanying proprietary lease or leases covering the subdivided or combined apartments (as the case may be) in accordance with the foregoing.

Any dispute under this subparagraph (c) concerning the number of shares to be reallocated shall be resolved by the real estate expert (if any shall have been selected as aforesaid, or if none, then managing agent of the buildings), whose determination shall be final and conclusive.

**Change in Form of Lease**

(d) Without the consent of a holder of Unsold Shares, no change in the form, terms or conditions of this lease, as permitted by Paragraph 6 hereof, shall (1) adversely affect the rights of the holder of Unsold Shares allocated to the apartment or to sublet the apartment or to assign this lease, as hereinbefore provided in this Paragraph 38, or (2) eliminate or modify any other rights, privileges or obligations of such holder of Unsold Shares.

**Restriction on Cancellation**

(e) A holder of Unsold Shares shall not be entitled to cancel this lease pursuant to Paragraph 35 hereof (although this provision shall not apply in the event of a sale of the Unsold Shares to a party who is not another holder of Unsold Shares together with an assignment of his interest hereunder). Notwithstanding the foregoing, a holder of Unsold Shares shall be entitled to cancel this lease if (i) the owners of a majority of the Lessor's then issued and outstanding shares (other than Unsold Shares) have elected to cancel their leases, or (ii) the Unsold Shares constitute 15% or less of the Lessor's then issued and outstanding shares, at least five years have elapsed since the

20

Closing Date (as defined in the Plan) and on the effective date of cancellation the holder of Unsold Shares pays to the Lessor a sum equal to the then current monthly maintenance charge for the apartment(s) being surrendered multiplied by 24.

(f) Anything contained in this lease and the House Rules annexed hereto to the contrary notwithstanding, the Lessor shall not prevent nor unreasonably impede or interfere with the sale of any block of Unsold Shares or the subletting of an apartment to which a block of Unsold Shares is allocated and agrees that a holder of Unsold Shares shall have the right to display "For Sale" and "For Rent" signs and similar promotional signs and material on or about the exterior of the buildings, the elevators, the lobby and apartments leased by a holder of Unsold Shares. In addition, prospective purchasers of Unsold Shares shall be given access to the public areas of the Property, including (without limitation) the parking areas (if any), lobbies, elevators and hallways, for purposes of ingress and egress, without being subject to any charge or fee therefor. No discriminatory charge or fee may be imposed on any lessee who is a holder of Unsold Shares.

**Non-interference with Marketing Unsold Shares**

39. (a) The Lessor agrees that it shall give to any holder of a security interest in the shares of the Lessor specified in the recitals of this lease or mortgagee of this lease who so requests (any such holder being hereinafter referred to as a "Secured Party"), a copy of any notice of default which the Lessor gives to the Lessee pursuant to the terms of this lease, and if the Lessee shall fail to cure the default specified in such notice within the time and in the manner provided for in this lease, then the Secured Party shall have an additional period of time, equal to the time originally given to the Lessee, to cure said default for the account of the Lessee or to cause same to be cured, and the Lessor shall not act upon said default unless and until the time in which the Secured Party may cure said default or cause same to be cured as aforesaid, shall have elapsed, and the default shall not have been cured.

**Rights of a Secured Party**

(b) If this lease is terminated by the Lessor as provided in Paragraph 31 or 35 of this lease, or by agreement with the Lessee, (i) the Lessor promptly shall give notice of such termination to the Secured Party and (ii) upon request of the Secured Party made within 30 days of the giving of such notice, the Lessor (A) shall commence and prosecute a summary dispossess proceeding to obtain possession of the apartment, at the expense of the Secured Party and (B) shall, within 60 days of its receipt of the aforesaid request by the Secured Party, if the Secured Party is a "lending institution", as such term is used in Section 216(b) of the Internal Revenue Code (a "Lending Institution"), reissue the aforementioned shares, to, and (with respect to any termination other than under Paragraph 36 hereinabove) shall enter into a new proprietary lease for the apartment with any individual designated by the Secured Party, or the individual nominee of the individual so designated by the Secured Party, all without the consent of the Directors or the shareholders to which reference is made in Paragraphs 16(a)(vi) and 32(c) hereof, but with the consent only of the Lessor's then managing agent which shall not be unreasonably withheld or delayed; provided, however, that the Lessor shall have received payment, on behalf of the Lessee, of all rent, additional rent and other sums owed by the Lessee to the Lessor under this lease for the period ending on the date of reissuance of the aforementioned shares of the Lessor including, without limitation, sums owed under Paragraphs 32(a) and (c) of this lease.

(c) If the purchase by the Lessee of the shares allocated to the apartment was financed by a loan made by the Sponsor, a holder of Unsold Shares or a Lending Institution and a default or an

21

event of default shall have occurred under the terms of the security agreement-leasehold mortgage, or either of them, entered into between the Lessee and the Secured Party, and if (i) notice of said default or event of default shall have been given to the Lessor, (ii) an individual designated by the Secured Party, or the individual nominee of the individual so designated by the Secured Party, shall be entitled to become the owner of the shares and the lessee under this lease pursuant to the terms of said security agreement-leasehold mortgage, or either of them, (iii) not less than five days' written notice of an intended transfer of the shares and this lease shall have been given to the Lessor and the Lessee, (iv) there has been paid, on behalf of the Lessee, all rent, additional rent and other sums owed by the Lessee to the Lessor under this lease for the period ending on the date of transfer of the aforementioned shares as hereinafter provided, and (v) the Lessor shall be furnished with such affidavits, certificates and opinions of counsel, in form and substance reasonably satisfactory to the Lessor, indicating that the foregoing conditions (i) through (iv) have been met, then (A) a transfer of the shares and the proprietary lease shall be made to such individual, upon request, and without the consent of the Directors or the shareholders to which reference is made in Paragraph 16(a)(vi) hereof and (B) the individual to whom such transfer is made (if and as long as such individual (by himself or a member of his family) does not actually occupy the apartment) shall have all of the rights provided for in this Paragraph 39 as if he were a Secured Party and a Lending Institution.

(d) Without the prior written consent of any Secured Party who has requested a copy of any notice of default as hereinbefore provided in subparagraph (a) of this Paragraph 39, (i) the Lessor and the Lessee will not enter into any agreement modifying or cancelling this lease, (ii) no change in the form, terms or conditions of this lease, as permitted by Paragraph 6 hereof, shall eliminate or modify any rights, privileges or obligations of a Secured Party as set forth in this Paragraph 39, (iii) the Lessor shall not terminate or accept a surrender of this lease, except as provided in Paragraphs 31 or 35 of this lease and in subparagraph (b) of this Paragraph 39, (iv) the Lessee shall not assign this lease or sublet the apartment, (v) any modification, cancellation, surrender, termination or assignment of this lease or any sublease of the apartment not made in accordance with the provisions hereof shall be void and of no effect, (vi) the Lessor shall not consent to any further mortgage on this lease or security interest created in the shares, (vii) the Lessee shall not make any further mortgage or create any further security interest in the shares or this lease, and (viii) any such further mortgage or security interest shall be void and of no effect.

(e) Any designee of a Secured Party to whom a transfer of a lease shall have been made pursuant to the terms of subparagraphs (b) and (c) hereof may cancel this lease under the terms of Paragraph 35 hereof; except that such designee (i) may cancel this lease at any time after the designee acquires this lease and the shares appurtenant hereto due to foreclosure of the security agreement-leasehold mortgage; (ii) need give only 30 days' notice of its intention to cancel; and (iii) may give such notice at any time during the calendar year.

(f) A Secured Party claiming or exercising any of the rights and privileges granted it pursuant to the provisions of this subparagraph (b) shall be deemed to have agreed to indemnify the Lessor for all loss, liability or expense (including reasonable attorneys' fees) arising out of claims by the Lessee, or his successors or assigns, against the Lessor or the Secured Party, or their respective successors or assigns, for acts or omissions to act on the part of either the Lessor or

22

the Secured Party, or their respective successors or assigns, pursuant to this subparagraph (b). The Lessor will give the Secured Party written notice with reasonable promptness of any such claim against the Lessor and the Secured Party may contest such claim in the name and on behalf of the Lessor with counsel selected by the Secured Party at the Secured Party's sole expense. The Lessor shall execute such papers and do such things as are reasonably necessary to implement the provisions of this subparagraph (f).

(g) Upon the Lessee's final payment under the loan given by the Secured Party or upon prepayment of said loan, the Secured Party will give the Lessor notice of such final payment or prepayment (as the case may be).

(h) Upon request of the holder of Unsold Shares (referred to in Paragraph 38 of this lease), the Lessor shall enter into an agreement (commonly known as a "Recognition Agreement") with a Secured Party pursuant to which the Lessor will acknowledge and agree that the foregoing provisions of this subparagraphs (b) and (c) shall inure to the benefit of, and apply to, the Secured Party, whether or not such Secured Party is a Lending Institution. The Recognition Agreement may contain such additional or different provisions as the Secured Party may request and the Lessor shall execute and deliver same to the Secured Party provided only that such additional or different provisions are approved by counsel to the Lessor (which approval may not be unreasonably withheld or delayed and shall be given or deemed given if same are of substantially similar tenor to the provisions of subparagraph (b) hereof). All costs and expenses incurred by the Lessor in connection with such Recognition Agreement (including legal fees) shall be borne entirely by the Lessor, and no charge therefor may be assessed to said holder of Unsold Shares, or his successors or assigns, including the individual acquiring this lease and the appurtenant shares from the holder of Unsold Shares. The provisions of this subparagraph (h) shall not apply to a lessee who is not a holder of Unsold Shares.

(i) Subject to the provisions of subparagraph (h) above, a Recognition Agreement between a Secured Party and the Lessor may contain such additional or different provisions as the Lessor and said Secured Party may agree to.

40. Notwithstanding anything to the contrary contained in this lease, if any action shall be instituted to foreclose any mortgage on the land or the buildings or the leasehold of the land or the buildings, the Lessee shall, on demand, pay to the receiver of the rents appointed in such action rent, if any, owing hereunder on the date of such appointment and shall pay thereafter to such receiver in advance, on the first day of each month during the pendency of such action, as rent hereunder, the rent for the apartment as last determined and established by the Directors prior to the commencement of said action, and such rent shall be paid during the period of such receivership, whether or not the Directors shall have determined and established the rent payable hereunder for any part of the period during which such receivership may continue. The provisions of this Paragraph are intended for the benefit of present and future mortgagees of the land or the buildings or the leasehold of the land or the buildings and may not be modified or annulled without the prior written consent of any such mortgage holder. **Foreclosure— Receiver of Rents**

41. The references herein to the Lessor shall be deemed to include its successors and assigns, and the references herein to the Lessee or to a shareholder of the Lessor shall be **To Whom Covenants Apply**

deemed to include the executors, administrators, legal representatives, legatees, distributees and assigns of the Lessee or of such shareholder; and the covenants herein contained shall apply to, bind and inure to the benefit of the Lessor and its successors and assigns, and the Lessee and the executors and administrators, legal representatives, legatees, distributees and assigns of the Lessee, except as hereinabove stated.

**Waiver of Trial by Jury**

42. To the extent permitted by law, the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease, the Lessee's use or occupancy of the apartment, or any claim of damage resulting from any act or omission of the parties in any way connected with this lease or the apartment.

**Lessor's Additional Remedies**

43. In the event of a breach or threatened breach by the Lessee of any provision hereof, the Lessor shall have the right of injunction and the right to invoke any remedy at law or in equity, as if re-entry, summary proceedings and other remedies were not herein provided for, and the election of one or more remedies shall not preclude the Lessor from any other remedy.

**Lessee More Than One Person**

44. If more than one person is named as the Lessee hereunder, the Lessor may require the signatures of all such persons in connection with any notice to be given or action to be taken by the Lessee hereunder, including, without limiting the generality of the foregoing, the surrender or assignment of this lease, or any request for consent to assignment or subletting. Each person named as the Lessee shall be jointly and severally liable for all of the Lessee's obligations hereunder. Any notice by the Lessor to any person named as the Lessee shall be sufficient, and shall have the same force and effect, as though given to all persons named as the Lessee.

**Notice to Lessor Before Action or Counterclaim**

45. The Lessee may not institute an action or proceeding against the Lessor or defend or make a counterclaim in any action by the Lessor related to the Lessee's failure to pay rent, if such action, defense or counterclaim is based upon the Lessor's failure to comply with its obligations under this lease or any law, ordinance or governmental regulation unless such failure shall have continued for 30 days after the giving of written notice hereof by the Lessee to the Lessor.

**Unity of Shares and Lease**

46. The shares of the Lessor held by the Lessee and allocated to the apartment have been acquired and are owned subject to the following conditions agreed upon with the Lessor and with each of the other proprietary lessees for their mutual benefit:

(a) the shares represented by each certificate are transferable only as an entirety and only in connection with a simultaneous transfer of this lease; and

(b) the shares shall not be sold except to the Lessor or to an assignee of this lease after compliance with all of the provisions of Paragraph 16 of this lease relating to assignments.

**Charges for Gas and Electricity**

47. If at any time or times during the term of this lease the consumption of gas or electricity, or both, in the apartment is measured by a meter which also measures consumption outside the apartment, the Lessor may determine from time to time by resolution of the Directors, the charges, if any, to be paid by the Lessee on account of such consumption of gas or electricity, or both, and any such charges shall be payable monthly in advance or in such payments or installments as shall be required by the Directors, and at such times as shall be provided in such resolution.

24

Such charges may be determined in the proportion that the number of shares of the Lessor allocated to the apartment bears to all shares of the Lessor then issued and outstanding, or in the approximate proportion that the floor area of the apartment bears to all floor areas measured by such meter, or such other equitable method as may be determined by the Directors.

48. Neither the Lessor nor the Lessee shall discriminate against any person because of his race, creed, religion, color, national origin, sex or ancestry when exercising any right reserved to it in this lease.

**No Discrimination**

49. Supplementing and modifying Paragraph 1(c) of this lease, unless shareholders owning at least 75% of the then issued and outstanding shares of the Lessor approve same in writing or by vote, in person or by proxy at a duly constituted meeting called for such purpose, the Directors will not, until the third anniversary of the Closing Date, (i) engage employees in addition to the employees referred to in the Schedule of Projected Receipts and Expenses for the First Year of Cooperative Operation set forth in Schedule B of the Plan ("Schedule B") or provide services or equipment or make capital improvements with respect to the premises in excess of those contemplated in Schedule B, except if, and to the extent that, additional services or equipment may be required by law or by a mortgagee invoking a "repair" or "default" clause or other provision of its mortgage encumbering the premises or by a work order or notice issued by an insurance company; (ii) increase the amount of the mortgage indebtedness of the Lessor, extend, refinance or in any other way alter the terms of the Mortgage (as defined in the section of the Plan entitled "Mortgage Indebtedness") or enter into any new mortgage with respect to the premises; or (iii) increase, in any year, the amount of the reserve for contingencies (or other reserves) over the amount allowed therefor set forth in Schedule B, provided that any unused portion of such reserve for any year may be added to the reserve for the following years.

**Certain Limitations on Lessor's Right to Increase Requirements**

Notwithstanding the foregoing, the Lessor may take any of the actions enumerated in clauses (i) through (iii) above, if the cost of such actions, when added to all other budgeted expenses of the Lessor, shall not result in increasing the cash requirements for any year of operation by more than 5% above the previous year's cash requirements.

50. Non-purchasing tenants in occupancy on the presentation date, as defined in the Plan may not be evicted by the Lessee for purposes of owner occupancy. This right is intended for the benefit of such non-purchasing tenants and is not intended to abrogate any rights of the owner of the unit as against the Lessor. Non-purchasing tenants who reside in dwelling units subject to government regulation as to rentals and continued occupancy prior to the conversion to cooperative ownership shall continue to be subject thereto. Rentals of any such non-purchasing tenants who reside in dwelling units not subject to government regulation as to rentals and continued occupancy and such non-purchasing tenants who reside in dwelling units with respect to which government regulation as to rentals and continued occupancy is eliminated or becomes inapplicable after the Plan has been accepted for filing by the Department of Law shall not be subject to unconscionable increases beyond ordinary rentals for comparable apartments during the period of their occupancy. Eviction proceedings may be commenced for non-payment of rent, illegal use or occupancy of the premises, refusal of access to the owner or a similar breach by such non-purchasing tenant of his obligations to the landlord. This Paragraph 50 may not be subsequently amended or deleted.

**Rights of Non-Purchasing Tenants**

**Effect of Partial Invalidity**

51. If any clause or provision herein contained shall be adjudged invalid, the same shall not affect the validity of any other clause or provision of this lease, or constitute any cause of action in favor of either party as against the other.

**Marginal Headings**

52. The marginal headings of the several paragraphs of this lease shall not be deemed a part of this lease, nor used as evidence of the intent of the parties.

**Shareholders Agreement; Execution in Counterparts**

53. Each Lessee acknowledges that this agreement contains various provisions governing matters relative to the interest of the Lessee as a shareholder in the Lessor, including, without limitation, Paragraphs 38 and 39 hereof, that all other lessees will be signing comparable leases with the same provisions, and that this Lease constitutes a shareholders agreement for such purpose. To the extent that this agreement so constitutes a shareholders agreement, it may be executed in two or more counterparts, each of which should be deemed an original, but all of which together shall constitute one and the same instrument.

**Purchasers for Investment or Resale**

54. A purchaser for investment or resale or other non-occupant purchaser (other than a holder of Unsold Shares) (as defined in the Plan), shall irrevocably appoint the managing agent for the Lessor as his or her agent to perform for the account and at the expense of such purchaser for investment or resale all services required to be furnished or performed by a landlord under the non-purchasing tenant's lease and the applicable laws and regulations affecting such apartment that are not to be provided by the Lessor under this lease, including, but not limited to, interior repairs and apartment painting. Such purchaser for investment or resale shall deposit with the managing agent of the Lessor upon purchase of the apartment a sum not less than an amount equal to two months' rent to be used as working capital to furnish services required under the non-purchasing tenant's lease and the applicable laws and regulations. Upon notice by the managing agent of the Lessor that said deposit has been diminished, the purchaser for investment or resale shall replenish said funds within 30 days.

**Governing Law**

55. The provisions of this lease shall be governed by and construed in accordance with the laws of the State of New York, and may not be changed, amended, discharged, waived or terminated orally.

IN WITNESS WHEREOF, the parties have executed this lease.

Skyview Owners Corporation,

Lessor.

By: _____
Mitchell H. Gordon, Vice President

5700-5800-5900 Arlington Avenue Associates
By: Coronet Capital Company, a General Partner
By: Tower Realty Associates, General Partner
By: Tower Realty Corporation, General Partner

By: _____
Gloria Dansker, President

Lessee.

27

STATE OF NEW YORK        )
                         )    ss.:
COUNTY OF NEW YORK       )

On the 6 day of December, in the year 1987, before me personally appeared Mitchell H. Gordon, to me known, who being by me duly sworn, did depose and say that he resides at 400 East 77th Street, New York, New York; that he is the Vice President of Skyview Owners Corporation, the corporation described in and which executed the foregoing instrument; and that he signed his name thereto by order of the Board of Directors of said corporation.

*Beth E Karp*

Notary Public

BETH E. KARP
Notary Public, State of New York
No. 31-4933045
Qualified in New York County
Commission Expires Oct. 17, 1990

STATE OF NEW YORK        )
                         )    ss.:
COUNTY OF NEW YORK       )

On the 6 day of December, 1988 before me personally came Gloria Dansker, to me known to be the person who executed the foregoing instrument, and who being duly sworn by me, did depose and say that she is the President of Tower Realty Corporation, the General Partner of Tower Realty Associates, the General Partner of Coronet Realty Company, a General Partner of 5700-5800-5900 Arlington Avenue Associates and that she executed the foregoing instrument in the firm name of 5700-5800-5900 Arlington Avenue Associates, and that she had authority to sign the same, and she acknowledged to me that she executed the same as the act and deed of 5700-5800-5900 Arlington Avenue Associates for the uses and purposes therein mentioned.

*Beth E Karp*

Notary Public

BETH E. KARP
Notary Public, State of New York
No. 31-4933045
Qualified in New York County
Commission Expires Oct. 17, 1990

28

## HOUSE RULES

(1) The public halls and stairways of the building shall not be obstructed or used for any purpose other than ingress to and egress from the apartments in the building, and the fire towers and balconies shall not be obstructed in any way.

(2) No patient of any doctor who has offices in the building shall be permitted to wait in the lobby.

(3) Children shall not play in the public halls, courts (including the planting areas therein), stairways, fire escapes or towers or elevators and shall not be permitted on the roof unless accompanied by a responsible adult.

(4) No public hall of the building shall be decorated or furnished by any Lessee in any manner without the prior consent of all of the Lessees to whose apartments such hall serves as a means of ingress and egress; in the event of disagreement among such Lessees, the Board of Directors shall decide.

(5) No Lessee shall make or permit any disturbing noises in the building or do anything or permit anything to be done therein which will interfere with the rights, comfort or convenience of other Lessees. No Lessee shall play upon or suffer to be played upon any musical instrument or permit to be operated a phonograph or a radio or television loud speaker in such Lessee's apartment between the hours of 11:00 p.m. and the following 8:00 a.m. if the same shall disturb or annoy other occupants of the building. No construction or repair work or other installation involving noise shall be conducted in any apartment except on weekdays (not including legal holidays) and only between the hours of 8:30 a.m. and 5:00 p.m.

(6) No article shall be placed in the halls or on the staircase landings or fire escapes or towers, nor shall anything be hung or shaken from the doors, windows, terraces or balconies or placed upon the window sills of the building.

(7) No awnings, window air conditioning units or ventilators shall be used in or about the building except such as shall have been expressly approved by the Lessor or the managing agent of the Lessor, nor shall anything be projected out of any window of the building without similar approval. The Lessor or the managing agent shall not unreasonably withhold its consent to the installation of air conditioning units or ventilators, provided: that standard building equipment is used; the contractor installing such equipment is one approved by the Lessor or the managing agent; the electrical wiring involved is sufficient to support the air conditioner or ventilator (if electric) involved; and the Lessee agrees to abide by any rules or regulations of the Lessor and the managing agent in respect of such installation and the use thereof.

(8) No sign, notice, advertisement or illumination shall be inscribed or exposed on or at any window or other part of the building, except such as shall have been approved in writing by the Lessor or the managing agent.

(9) Garbage and refuse from the apartments shall be disposed of only at such times and in such manner as the superintendent or the managing agent may direct.

29

(10) Messengers and tradespeople shall use such means of ingress and egress as shall be designated by the Lessor.

(11) Kitchen supplies, market goods and packages of every kind are to be delivered only at the service entrance of the building and through the service elevator to the apartments, when such elevator is in operation.

(12) Trunks and heavy baggage shall be taken in or out of the building through the service entrance.

(13) No velocipedes, bicycles, scooters, baby carriages or similar vehicles shall be allowed to stand in the public halls, passageways, areas or courts of the building.

(14) Water closets and other water apparatus in the building shall not be used for any purposes other than those for which they were constructed, nor shall any sweepings, rubbish, rags or any other article be thrown into the water closets. The cost of repairing any damage resulting from misuse of any water closets or other apparatus shall be paid for by the Lessee in whose apartment it shall have been caused.

(15) No Lessee shall send any employee of the Lessor out of the building on any private business of a Lessee.

(16) No bird or animal shall be kept or harbored in the building unless the same in each instance be expressly permitted in writing by the Lessor; such permission shall be revocable by the Lessor. In no event shall dogs be permitted on elevators or in any of the public portions of the building unless carried or on leash. No pigeons or other birds or animals shall be fed from the window sills, terraces, balconies or in the yard, court spaces or other public portions of the building, or on the sidewalk or street adjacent to the building.

(17) No radio or television aerial shall be attached to or hung from the exterior of the building without the prior written approval of the Lessor or the managing agent.

(18) The Lessee shall use available laundry facilities, if any, only upon such days and during such hours as may be designated by the Lessor or the managing agent.

(19) The Lessor shall have the right from time to time to curtail or relocate any space devoted to storage or laundry purposes.

(20) Unless expressly authorized by the Board of Directors in each case, the floors of each apartment must be covered with rugs or carpeting or equally effective noise-reducing material, to the extent of at least 80% of the floor area of each room excepting only kitchens, pantries, bathrooms, maid's rooms, closets and foyers.

(21) No group tour or exhibition of any apartment or its contents shall be conducted, nor shall any auction sale be held in any apartment without the consent of the Lessor or its managing agent.

(22) The Lessee shall keep the windows of the apartment clean or shall arrange for such cleaning by the Lessor if Lessor provides such service. In case of refusal or neglect of the Lessee during ten days after notice in writing from the Lessor or the managing agent to clean the

windows, such cleaning may be done by the Lessor, which shall have the right, by its officers or authorized agents, to enter the apartment for the purpose and to charge the cost of such cleaning to the Lessee.

(23) The passenger and service elevators, unless of automatic type and intended for operation by a passenger, shall be operated only by employees of the Lessor, and there shall be no interference whatsoever with the same by Lessees or members of their families or their guests, employees or permitted subtenants.

(24) Complaints regarding the service of the building shall be made in writing to the managing agent of the Lessor.

(25) Any consent or approval given under these House Rules by the Lessor shall be revocable at any time.

(26) If there be a garage in the building, the Lessee will abide by all arrangements made by the Lessor with the garage operator with regard to the garage and the driveways thereto.

(27) No Lessee shall install any plantings on any terrace, balcony or roof without the prior written approval of the Lessor. Plantings shall be contained in boxes of wood lined with metal or other material impervious to dampness and standing on supports at least two inches from the terrace, balcony or roof surface, and if adjoining a wall, at least three inches from such wall. Suitable weep holes shall be provided in the boxes to draw off water. In special locations, such as a corner abutting a parapet wall, plantings may be contained in masonry or hollow tile walls which shall be at least three inches from the parapet and flashing, with the floor of drainage tiles and suitable weep holes at the sides to draw off water. It shall be the responsibility of the Lessee to maintain the containers in good condition, and the drainage tiles and weep holes in operating condition.

(28) The following rules shall be observed with respect to incinerator or compactor equipment:

(i) All wet debris is to be securely wrapped or bagged in small package size to fit easily into the hopper panel.

(ii) Debris should be completely drip-free before it leaves the apartment and carried to the incinerator closet in a careful manner and in a drip-proof container; then placed into the flue hopper so it will drop into the flue for disposal.

(iii) No bottles or cans shall be dropped down the flue before 10:00 a.m. or after 5:00 p.m., but shall be left in a neat manner in service elevator area, or other area designated by the managing agent, if such items must be disposed of before 10:00 a.m. or after 5:00 p.m.

(iv) Cartons, boxes, crates, sticks of wood or other solid matter shall not be stuffed into hopper opening. Small items of this nature may be left in a neat manner on the incinerator closet floor or as otherwise directed by the managing agent. Bulky items should be left at service elevator area, or other area designated by the managing agent, between 10:00 a.m. and 6:00 p.m. and service employee summoned to dispose of them by way of the service elevator.

31

(v) Under no circumstances should carpet sweepings containing naphthalene, camphor balls or flakes, floor scrapings, plastic wrappings or covers, oil soaked rags, empty paint or aerosol cans or any other inflammable, explosive, highly combustible substances or lighted cigarettes or cigar stubs be thrown into the incinerator flue.

(vi) Vacuum cleaner bags must never be emptied into the flue. Such dust, dirt, etc. should be wrapped in a securely tied bag or package and then be placed through hopper door panel into flue.

(vii) The superintendent shall be notified of any drippings or moist refuse appearing on incinerator closet floor and corridors.

(29) No vehicle belonging to a Lessee or to a member of the family or guest, permitted subtenant or employee of a Lessee shall be parked in such manner as to impede or prevent ready access to any entrance of the building by another vehicle.

(30) The agents of the Lessor, and any contractor or workman authorized by the Lessor, may enter any apartment at any reasonable hour of the day for the purpose of inspecting such apartment to ascertain whether measures are necessary or desirable to control or exterminate any vermin, insects or other pests and for the purpose of taking such measures as may be necessary to control or exterminate any such vermin, insects or other pests. If the Lessor takes measures to control or exterminate carpet beetles, the cost thereof shall be payable by the Lessee, as additional rent.

(31) These House Rules may be added to, amended or repealed at any time by resolution of the Board of Directors of the Lessor, provided that such resolution is adopted by the affirmative vote of not less than two-thirds of the Directors then in office.